**Western / Southern District of Ohio**
**United States District Court**
**100 East Fifth Street**
**Cincinnati, Ohio 45202**

Dennis C. Maynard
6545 Market Ave.
North, STE 100,
North Canton, OH,
44721, USA

**HONORABLE JUDGE:**
**MAGISTRATE:**
Case No. 1 : 2 3 C V 7 8 4 .

Plaintiff,

J. BARRETT   M.J. BOWMAN

BEL REAL ESTATE ADVISORS, LLC.   DBA
GREYSTONE BEL REAL ESTATE ADVISORS
7035 Orchard Lake Road, Suite 150
West Bloomfield, MI 48322
Phone: 248. 394. 0000
Fax 734.471.0200

Cary Belovicz,
7035 Orchard Lake Road, Suite 150
West Bloomfield, MI 48322
cary@greystonebel.com | o: 248.394.0000 x252 m: 734.564.3833
Fax 734.471.0200

AAA. C/o
Sara Faulkingham
1301 Atwood Avenue, Suite 211N
Johnston, RI 02919
Direct Dial: (401)431-4721
Sarafaulkingham@ adr.org

John and Jane Doe's (1-20) "Names Unknown"
Unknown Agents, Employees, Investors, Associations
and/or Independent Contractors of Defendants

Against all defendant's oaths, fiduciary responsibility bonds
And all insurance providers and companies.

Defendants, jointly
and severally.

**VERIFIED;**
**COMPLAINT FOR DAMAGES UNDER 18 U.S.C. § 1962 RICO**
**ORC 2923.31 AND ORC 2913**

**WITH TRIAL BY JURY DEMAND**

Now comes Plaintiff, Dennis Clyde Maynard in my pro per position, not as an Attorney and not well versed in law, I, Dennis Clyde Maynard, demanding my rights at all times and refusing no rights at any time request that if this complaint is insufficient in any manner, or if Plaintiff needs assistants of legal counsel this Honorable Court would allow leave to obtain proper counsel and Plaintiff be allowed time to amend any deficiencies and hereby sue, Plaintiff stating as follows:

**JURISDICTION AND VENUE**

1. Always based upon Plaintiff's information and belief and relevant hereto, Defendant, BEL REAL ESTATE ADVISORS LLC under the assumed name of GREYSTONE BEL REAL ESTATE ADVISORS., here in after, known as "BEL", who was and is doing business under the registered name of BEL REAL ESTATE ADVISORS., And the assumed name of GREYSTONE BEL REAL ESTATE ADVISORS., Acting as a broker whose business address is 7035 Orchard Lake Road Ste, 150, West Bloomfield MI. 48322 Oakland County Michigan.

2. Cary Belovicz, acting as the broker managing partner for GREYSTONE BEL REAL ESTATE ADVISORS., An entity within the State of Michigan.

3. LG Capital LLC. Steve layman managing member LG Capital LLC.

4. 2108 Wildflower Ln Milford, MI 48380

5. At all times, relevant hereto Defendants owned, operated, managed, maintained, possessed, invested, and/or otherwise controlled a business known BEL REAL

ESTATE ADVISORS., herein after known as "BEL" And the assumed name of GREYSTONE BEL REAL ESTATE ADVISORS., herein after known as "BEL" doing business within the State of Michigan Acting as a broker whose business address is 7035 Orchard Lake Road Ste, 150, West Bloomfield MI. 48322 Oakland County Michigan.

6. Dennis Clyde Maynard, 6545 Market Ave. North , STE 100, North Canton, OH. 44721,.

7. American Arbitration Association Northeast Case Management Center 1301 Atwood Avenue, Suite 211 RI 02919

8. Jurisdiction is proper and this court pursuant to ORC § 2913 As used in this chapter, unless the context requires that a term be given a different meaning: (A) "Deception" means knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact.(B) "Defraud" means to knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another.(C) "Deprive" means to do any of the following:(1) Withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration;(2) Dispose of property so as to make it unlikely that the owner will recover it;(3) Accept, use, or appropriate money, property, or services, with purpose not to give proper consideration in return for the

money, property, or services, and without reasonable justification or excuse for not giving proper consideration.(D) "Owner" means, unless the context requires a different meaning, any person, other than the actor, who is the owner of, who has possession or control of, or who has any license or interest in property or services, even though the ownership, possession, control, license, or interest is unlawful.(E) "Services" include labor, personal services, professional services, rental services, public utility services including wireless service as defined in division (F)(1) of section 128.01 of the Revised Code"Theft offense" means any of the following:(1) A violation of section 2911.01, 2911.02, 2911.11, 2911.12, 2911.13, 2911.31, 2911.32, 2913.02, 2913.03, 2913.04, 2913.041, 2913.05, 2913.06, 2913.11, 2913.21, 2913.31, 2913.32, 2913.33, 2913.34, 2913.40, 2913.42, 2913.43, 2913.44, 2913.45, 2913.47, 2913.48, former section 2913.47 or 2913.48, or section 2913.51, 2915.05, or 2921.41 of the Revised Code;(2) A violation of an existing or former municipal ordinance or law of this or any other state, or of the United States, substantially equivalent to any section listed in division (K)(1) of this section or a violation of section 2913.41, 2913.81, or 2915.06 of the Revised Code as it existed prior to July 1, 1996;(3) An offense under an existing or former municipal ordinance or law of this or any other state, or of the United States, involving robbery, burglary, breaking and entering, theft, embezzlement, wrongful conversion, forgery, counterfeiting, deceit, or fraud;(4) A conspiracy or attempt to commit, or complicity in committing, any offense under division (K)(1), (2), or (3) of this section.(L)

9. BEL REAL ESTATE ADVISORS LLC and GREYSTONE BEL REAL ESTATE ADVISORS as a registered office of the defendant is located in 7035 Orchard Lake Road Ste, 150, West Bloomfield MI. 48322 Oakland County Michigan.

10. Jurisdiction is proper and that this court pursuant to 18 U.S.C. § 1962 RICO As the amount and this dispute exceeds $25,000 exclusive of attorney's fees and costs and plaintiff seeks equitable relief as well.

11. Jurisdiction is proper under 18 U.S.C. § 1962 RICO, ORC 2923.31 AND ORC 2913.

12. All parties and Defendants are named in their personal capacity, official capacity, against any oaths, any fiduciary responsibility bonds, and any and all insurance, conspiring as an enterprise. Insurance companies, bond companies etc., shall be determined through interrogatories, depositions and productions of documents.

13. At all times, relevant hereto, each Defendant named in this complaint was and is engaged in the conduct of business in the State of Michigan and Ohio.

14. At all times, relevant hereto, Plaintiff and his company, J&M Investment Holdings LLC. a owner of real property in connection with the alleged contract with the Defendants', is located: Head Quarter 293 Township Road 1345, South Point, OH 45680,

15. Registered Agent 6545 Market Ave North, STE 100, North Canton, OH, 44721, USA

16. American Arbitration Association, Northeast Case Management Center is located at 1301 Atwood Avenue, Suite 211 RI 02919

17. The true names of John and Jane does', 1 through 20, and their capacities with their individual or corporate are unknown to Plaintiff. John and Jane does', 1 through 20, at all times, relevant to this action, or employees, agents, partners, associations,

subsidiaries, suppliers, consultants, designers, investors, and/or independent contractors of the Defendants', or were entities that were joined with the Defendants are engaged in a business design, formulate, produce, our collaborate to defraud the Plaintiff and/or Plaintiffs company. All John and Jane does' will be determined through discovery, interrogatories, and production of documents.

18. The Jurisdiction in this Court is established by citizenship and damages in excess of Seventy-Five Thousand Dollars ($75,000.00) pursuant to 28 USC §1332 by virtue of the fact, that at all times, relevant hereto, Plaintiff was registered and continued to be registered in the State of Michigan. And domiciled in the State of Ohio The Defendants were and continue to be, residents of and have their principal place of business in the State of Michigan.

19. The venue is established in this district under 28 USC §1391(a), 18 U.S.C. § 1962 RICO, ORC 2923.31 AND ORC 2913 as a substantial part of the events, given rise to this claim, occurred in the district; to wit, the establishment of an alleged contract between Plaintiff and Defendants' "BEL". The Defendants' breach of contract, breach of warranties, express or implied, and the Defendants' negligence pertaining to the sale, and fraudulent deception, Plaintiff retailing my property for sale herein as **Exhibit 1**.

20. This Honorable Court has diversity jurisdiction due to the alleged contract being consummated in Ohio and all-party Defendants being residents of Michigan and Plaintiff being a resident of Ohio.

## FACTS COMMON TO ALL COUNTS

21. There are pending cases within the Circuit Court for the County of Tuscola Michigan CASE NO. 22-31854-CK and CASE NO. 01-22-0004-7535 before the American Arbitration Association Defendants alleged contract is totally void on it face due to the frauds and conspiring by all parties to defraud.

## INJUNCTION

22. Plaintive is now requesting injunctive relief within the Circuit Court for the County of Tuscola Michigan CASE NO. 22-31854-CK and CASE NO. 01-22-0004-7535 be stayed and/or consolidated any further proceedings until this case can be heard and adjudicated. All cases being relevant to the same issues and will not delay or hinder in any way Plaintiff now request for judicial and injunctive relief.

23. UNIFORM ARBITRATION ACT (EXCERPT) Act 371 of 2012 691.1687 Order to compel or stay arbitration. Sec. 7. (1) On motion of a person showing an agreement to arbitrate and alleging another person's refusal to arbitrate under the agreement, the court shall do both of the following: (a) If the refusing party does not appear or does not oppose the motion, order the parties to arbitrate. (b) If the refusing party opposes the motion, proceed summarily to decide the issue and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate. (2) On motion of a person alleging that an arbitration proceeding has been initiated or threatened but that there is no agreement to arbitrate, the court shall proceed summarily to decide the issue

24. The contract was created out of fraud and deception and is totally void on its face. Plaintive has never personally volunteered nor agreed to arbitration.

25. The arbitration board was noticed of the frauds and criminal activity moving forward without jurisdiction over the subject matter nor can the obtain jurisdiction over the subject matter when there are criminal actions involved.

## CONSOLIDATION

26. Plaintive request that this honorable court CONSOLADATE the above-mentioned actions Circuit Court for the County of Tuscola Michigan Court CASE NO. 22-31854-CK and CASE NO. 01-22-0004-7535 four Rico violations and violations under ORC 2923.31 and ORC 2913 the issues and matters all being the same.

## STATEMENT OF FACTS

27. On about July 28, 2020, Plaintiff and Defendant allegedly entered into a listing agreement for a period of time with Greystone Bel Real Estate Advisors signed by Cary Belovicz, Austin Hull agents for Greystone Bel Real Estate Advisors "BEL" in which all the contents of the contract were not disclosed the agents acted fraudulently, in order to conspire to defraud.

28. Greystone Bel Real Estate Advisors being an assumed name. All contracts, sales agreements listings and claims of commercial real estate broker's Lien were done in a fictitious name. Plaintiff was allegedly contracted by the Defendant "BEL" to secure a Bona fide purchaser for Plaintiffs 32-unit apartment complex under the terms of the agreement, if the property was sold, Defendant was entitled to a tiered percentage commission tied to the sale date. However, as a condition precedent, Defendant was only entitled to a commission if the property was sold, or otherwise conditions precedent, in the contract were met.

29. The agreement did contain an additional provision that the commission would be owed whether the (1) property be sold, or whether (2) the property be withdrawn from sale, or (3) the property be made unmarketable by the defendant. The poppy was never sold, and Defendant never withdrew the property from sale, nor made this property unmarketable. As such there was no satisfaction of either condition precedent necessary to activate Plaintiffs' duty to tender any commission.

30. In the spring of 2020 Plaintiff end Defendant negotiated the alleged agreement ultimately, there were several changes made before the parties executed the agreement.

31. The original bond and executed the agreement contained the following term which Plaintiff wanted removed some say sickly with regards to furnishing route statements.

> Seller agrees to furnish and make available to prospective buyers all Financial Data and rent statements concerning the property seller represents and wants that seller shall hold agent harmless from any and all liability, damages, causes of action and any other claims arising from our asserted in connection with any incorrect are inaccurate information supplied by seller, or any information which seller has failed to supply. **See Exhibit 2** Original Listing Agreement

32. Get Defendant "Bel" removed this terms and condition that in an e-mail containing the Agreement. **See Exhibit 3. Austin Hull Email Dated July 16th, 2020.**

33. On July 20th, 2020, the parties executed the agreement under which "Bel" would act as Plaintiffs agent in obtaining purchasers for the property for a purchase price of $1,275,000 the agreement had the term of six months, terminating on January 20th, 2021. **See Exhibit 1. Listing Agreement.**

34. That agreement stated, in relevant part, as follows:

> If Agent, Seller or anyone else obtains a Buyer for the Property during the Term of this Listing Agreement at the Purchase Price and on the terms stated and a Listing Agreement, **or at any other price or terms acceptable to Seller,** then Seller agrees to pay to Agent a commission (the "Commission") equal 8% of the purchase price *if the property sells* on or before the first 60 days of the executed listing agreement, the real estate commission will be reduced to 7% of the purchase price *if the property sells* in between the 61st day and the 120th day of the executed listing agreement, if the *property Sells after* 120 days of the executed listing agreement the real estate commission will be reduced to 6% of the sales price for the bank remainder of the listing agreement. Commission shall be due and payable *whether the property be sold or whether the property be withdrawn from sale, are made unmarketable by Seller.* [Emphasis added].

35. To date, the property has not been sold, nor has Plaintiff withdrawn the property from sale are otherwise made the property unmarketable.

37. In fact, Plaintiff is still interested in selling the property, and, on the information and belief, Defendant "Bel" withdrew the property from sale at the expiration of the agreement.

38. Further, Defendant did not allege that the property had been sold, nor that Plaintiff withdrew the property from sale or otherwise made the property on unmarketable.

39. Instead, Defendant "Bel" states that the "Plaintiff refused to execute the Listing Agreement or otherwise agreed to sell the property." However, this is untrue.

40. On July 22ND, 2020 almost immediately after entering the agreement, Defendant Bel found a willing purchaser who offered $1,075,000 for the property. **See Exhibit 4. LG Capital LLC July letter of intent.**

41. After that time, Plaintiff became concerned that the Property was undervalued, and reached out to the Defendant "Bel" requested that the numbers be reevaluated. **See Exhibit 5. Dennis Maynard email dated July 29-30th, 2020.**

42. Without addressing Plaintiffs concerns are even attempting to gain clarification, Defendant "Bel" sent another, slightly larger offer in response to Plaintiffs concerns.

43. After receiving no reply, Defendant "Bel" called Plaintiff, who advised to Plaintiff that they would not change the place in the agreement, as the contract had already been executed.

44. Further, Defendant "Bel" began asking plaintiff to furnish documents for potential buyers, ignoring plaintiffs' clear wishes that were communicated by removing the term requiring he produced the requested documents from the agreement. **See Exhibit 6 Emails Requesting Documents and Rent Statements.**

45. Plaintiff' again advised that he wanted to reevaluate the acceptable terms of any potential purchase agreement again, Plaintiff was ignored.

46. Naturally, Plaintiff was concerned that Defendant "Bel" did not have his best interests in mind but felt that he was unable to do anything but a tent to get a better deal through negotiations with any potential buyers.

47. Nearly 3 weeks later, on August 18th, 2020, Defendant "Bel" advise Plaintiff they had received a full price offer from LG Capital LLC. **See Exhibit 8. Cary Belovicz Email Dated August 18TH, 2020 and Exhibit 9. LG Capital LLC letter of intent.**

48. Importantly, LG's letter of intent was not affirmatively offer to purchase the property, but rather states, in relevant part, "This letter outlines some of the terms and provisions under which we (the buyer) would be *willing to consider* the purchase of the apartments from the existing owner" [emphasis added].

49. Plaintiff countered on September 18th, 2020, accepting the offer price, with the added condition that the buyer pay property taxes, and $50,000 to be applied to plaintiffs'

capital gains tax and Defendants commission. **See Exhibit 10. Manor Ridge Letter of Intent**.

50. No further communication between the parties ever addressed plaintiff's counteroffer.

51. On information and belief, Defendant "Bel" never communicated counteroffer to LG and as such, Defendant breached their fiduciary duty and their responsibilities as Plaintiffs agent.

52. Despite the allegations there is no provision guaranteeing a commission for defendants simply locating a potential buyer, and certainly no provision guaranteeing a commission for locating a buyer who only provides some of the terms under which they would be willing to consider purchasing the property.

53. In order to earn a commission, as stated in the agreement, the property needed to either be sold, or, after finding a willing buyer, Plaintiff would have had to withdraw from sale, or otherwise have made the title unmarketable. Here, no such condition presented was ever met the defendant does not claim that any such condition was met. Therefore, defendant was never entitled two commission well defendant clearly intended to include stronger guarantees on their entitlement to commission, no such guarantees exist.

54. Further defendant purports that defendant secured a purchase, however as exhibits show, that LG letter of intent does not offer to purchase the property, but at best expresses a potential interest, outlying "some" of the terms under which LG "would be willing to consider purchase" of the Property not only is a clear no condition presented was ever met, but Defendant's breach of contract claim also contends no allegations that any condition precedent was ever met.

55. Defendant filed the claim of commercial real estate broker's Lien within the register of deeds clouding plaintiffs title causing immense damage to plaintive prematurely even if there was a arbitration clause in the contract before having any arbitration hearings or judicial hearings interfering with the sale of the property.

## COUNT ONE

56. Plaintiff hereby realleges and restates all of the above allegations set forth and paragraphs 1 through 54, inclusive, as if same or set forth herein.

57. Plaintiff, therefore, alleges, that each Defendants', jointly and severally, in some manner, acted intentionally, willfully, wantonly, recklessly, and with otherwise gross neglect and acted with conscious disregard and/or malice, as well as negligently, and, therefore, are legally responsible for the damages arising out of the events and happenings alleged in this complaint suffered by Plaintiff and the company for the below-described injuries, losses, and damages.

58. Plaintiff made several attempts to have the problem corrected always acting honorably.

## COUNT TWO

59. Plaintiff hereby realleges and restates all of the above allegations set forth and paragraphs 1 through 57, inclusive, as if same or set forth herein.

60. Plaintiff may bring a private civil action for violations of the Racketeer Influenced and Corrupt Organization Act (RICO) *See* 18 U.S.C. §1964(c). The RICO statute prohibits four types of activities. (1) investing, (2) acquiring, or (3) conducting or participating in an enterprise with income derived from a pattern of racketeering activity or collection of an unlawful debt, or (4) conspiring to commit any of the first three types of activity. 18 U.S.C. § 1962(a)-(d). RICO and MLC ORGANIZED RETAIL CRIME

ACT 455 of 2012. was" intended to combat organized crime, not to provide a federal cause of action and treble damages for every tort, however, the statute is to "be liberally construed to affect to effectuate its remedial purposes" *Odom v. Microsoft Corp,* 486 F. 3d 541. 546 (9th Cir 2007).

61. Defendants and their investors participated in acquiring properties of individuals unlawfully by predicate acts and participated in an enterprise driven from one pattern of racketeering activity.

62. Defendants on an ongoing basis acted with intent to do theft of properties from individuals and companies by promising to at frivolously and sell properties with the intent to get the best price on my behalf, and instead never got a proper appraisal on what the value of the property was worth, having knowledge or should have had knowledge being a licensed broker and doing this type of business, instead trying a lowball figure in order to defraud, when in fact, the whole intent was to do theft of the Plaintiffs, and numerous other individuals and companies' properties, to be shown through discovery, interrogatories, and production of documents.

63. Defendants on an ongoing basis would list properties and undervalue the properties for listing, which will be shown through discovery, interrogatories, and production of documents as to the actual purchasing and sale process, and sue to allege a loss, with a pattern of activity by the enterprise.

64. Defendants always had a fiduciary responsibility, knowingly or unknowingly participated in RICO-type activity.

65. ("It is apparent that an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and

longevity sufficient to permit these associates to pursue the enterprise's purpose."). Defendants in RICO actions must have had "some knowledge of the nature of the enterprise . . . to avoid an unjust association of the defendant[s] with the crimes of others," but the requirement of a common purpose may be met so long as the defendants were "each aware of the essential nature and scope of [the] enterprise and intended to participate in it." *United States v. Christensen*, 801 F.3d 970, 985 (9th Cir. 2015). A RICO enterprise is not defeated even when some of the enterprise's participants lack detailed knowledge of all of the other participants or their activities. Instead, "it is sufficient that the defendant knows the general nature of the enterprise and know that the enterprise extends beyond his individual role." *Id.* In particular cases, "the evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise" may overlap. *Boyle*, 556 U.S. at 947. However, "enterprise" and "conduct" are two separate and necessary elements of a civil RICO claim. *Odom*, 486 F.3d at 549 ("The 'enterprise' is the actor, and the 'pattern of racketeering activity' is an activity in which that actor engages.").

66. A Defendant can be held liable for a RICO conspiracy if the evidence shows that he or she "knowingly agree[d] to facilitate a scheme which includes the operation or management of a RICO enterprise." *United States v. Fernandez*, 388 F.3d 1199, 1229-30 (9th Cir. 2004). There is no requirement that the defendant have actually conspired to operate or manage the enterprise himself or herself. *Id.* (affirming conviction under § 1962(d) of defendant who collected money on behalf of member of enterprise, facilitated communications between conspirators and accepted payment for drugs sold through enterprise). Defendants may or may not have sold drugs through their

organization to create funds, but they enticed investors to participate in this type of activity.

67. LG Capital LLC. Steve layman managing member participated in this elaborate scheme to defraud myself and J&M Investment Holdings LLC into retailing my properties and a great loss in order to profit in act within the enterprise to be shown through discovery interrogatories and production of documents.

## COUNT THREE

68. Plaintiff hereby realleges and restates all of the above allegations set forth in paragraphs 1 through 66, inclusive as if same were set forth herein.

69. Defendants filed a claim of commercial real estate broker Lien on behalf of Greystone Bel Real Estate Advisors on about January 15, 2021, within the Tuscola County register of deeds attached hereto and incorporated herein as **Exhibit 11.** causing a loss of the sale of my property for $1.785,823 Dollars.

70. Plaintiff's loss of contracts cost my company a loss of millions of dollars, due to the fraudulent Lien causing emotional stress, anxiety, and loss of well-being.

71. But as a result of the aforesaid wrongful acts and/or omissions of Defendants' and/or agents, Plaintiff suffered losses and damages as described above.

## COUNT FOUR

72. Plaintiff hereby realleges and restates all of the above allegations set forth and paragraphs 1 through 70, inclusive, as if same or set forth herein. At all times relevant hereto, Defendants' "BEL" and/or all Defendants' including John and Jane does' 1 through 20 participated in an elaborate scheme to defraud, which will be shown through interrogatories production of documents and discovery.

73. Defendants' "BEL" and/or all defendants' including John and Jane does' 1 through 20 knew or had reason to know, that Defendants' "BEL" and/or all Defendants' including John and Jane does' 1 through 20 expressly and/or implied invited consumers, patrons and/or business invites like Plaintiff to list properties.

74. Defendants' "BEL" and/or all Defendants' including John and Jane doe's 1 through 20 negligently, recklessly, willfully, wantonly, and with gross neglect participated within these actions.

## COUNT FIVE

75. Plaintiff hereby realleges and restates all of the above allegations set forth and paragraphs 1 through 73, inclusive, as if same were set forth herein.

76. As the direct and proximate result of Defendants' failure to warn Plaintiff and/or Plaintiff's company of the dangerous condition of the alleged listing agreement and their breaches of said Defendants' duties, jointly and severally, defined by Sections 388 and 390 of the Restatement Second of Torts, and for Rico violations Plaintiff, individually and collectively, received the injuries and damages described herein above for all of which said Defendants', jointly it severally, are liable.

## COUNT SIX

77. Plaintiff hereby realleges and restates all of the above allegations set forth and paragraphs 1 through 75, inclusive, as if same were set forth herein.

78. Defendants', jointly and severally, are strictly liable to Plaintiff for the injuries, losses, and damages they suffered as a direct result of the injuries sustained by Plaintiff for loss of use of the sale of the property loss of business damages. Attached hereto and incorporated herein sales agreement as **Exhibit 12.** Plaintiff is entitled to punitive

damages in an amount determined by a jury for more than TWO MILLION

DOLLARS ($2,000,000.00).

## COUNT SEVEN

79. Plaintiff hereby realleges and restates all of the above allegations set forth and
paragraphs 1 through 77, inclusive, as if same were set forth herein.

80. Defendants', jointly and severally, damaged the general public, including, but not
limited to the Plaintiff, as the result of the acts perpetrated by the defendants.

81. As a result of the above-described wrongful acts and/or omissions, Defendants', jointly
and severally, breached their express and/or implied warranties to Plaintiff which
breaches caused all of Plaintiff's injuries, losses, and damages as are more fully
described above.

## COUNT EIGHT

82. Plaintiff hereby realleges and restates all of the above allegations set forth and
paragraphs 1 through 80, inclusive, as if same were set forth herein.

83. Defendants' jointly and severally, acted and otherwise conducted themselves as alleged
herein maliciously, fraudulently, oppressively, with a conscience disregard and/or
malice for Plaintiffs rights, and acted with an improper motive amounting to malice for
which an award of punitive damages in an amount and increase of three times the
amount of compensatory damages. Plaintiff was caused to suffer by said wrongful and
illegal conduct by Defendants', jointly and severally all to be determined at trial.
Defendants acted with actual malice and commanded intentional, reckless, wanted
willful acts which caused injury to Plaintiffs, businesses, and property.

84. Plaintiff has attached hereto and incorporated herein criminal reports that were sent to the necessary agencies in regard to this matter, as **Exhibit 13,** and my affidavit of truth as **Exhibits 14, and 15.**

85. The Plaintiff gave notice to all parties of my right to rescind any and all alleged contracts, signatures and/or agreements due to the criminal acts and the fraud.

86. American Arbitration Association had been noticed on several occasions that plaintive did not want to participate, agree or consent to jurisdiction over the subject matter, challenge arbitration jurisdiction as **Exhibit 16.**

87. WHEREFORE, Plaintiff and his company, J&M Investment Holdings, LLC., demand judgment against Defendants', jointly and severally, for their compensatory damages in an amount in excess of Seventy-Five Thousand and 00/100 Dollars ($75,000.00), punitive damages and an amount to be determined at trial in the amount of One Million, Seven Hundred Eighty Five Thousand, Eight Hundred Twenty Three and 00/100 Dollars ($1,785,823.00), but in excess of Seventy-Five Thousand and 00/100 Dollars ($75,000.00), that the court award Plaintiff the opportunity to amend or modify the provisions of this complaint as necessary or appropriate after additional Defendants are further discovered through discovery in this matter, for any and all Attorney Fees as necessary, and after all appropriate parties have been served; and any and all other relief to which they may be entitled and that this Honorable Court deems just proper for a circumstance such as this.

## COUNT NINE

88. Plaintiff realleges and restates the foregoing jurisdictional allegations and general factual allegations.

89. This Case began being about fraud and when you think it can't get worse it does.

90. The case takes a destructive turn directly against the very foundation of what this Great Nation of ours, the United States of America's Legal System stands for, justice for all the rich and poor alike.

91. Cary Belovicz, the defendant, abused the legal system by breaching his contracts arbitration clause and placing a fraudulent lien on my property and bringing a deceitful claim in the Civil Court legal system seeking a financial judgment against me for personal gain.

92. Cary Belovicz, the defendant, planned to place a broker's lien in order to cloud my property in the hopes that I would not respond so he would be awarded a judgment.

93. This would position Cary Belovicz in a strong position in the eyes of the legal court system and create for me an uphill legal battle to have the lien removed.

94. If Cary Belovicz, the defendant, was unable to win an award in the Civil Court System, his backup plan was to take me to arbitration in the American Arbitration Association and be awarded a judgment in arbitration. (The American Arbitration Association has been plagued with corruption and there is a house resolution bill trying to resolve the issues, **see Exhibit 13.**

95. Cary Belovicz, the defendant, after placing me in Civil Court at the Summary Judgment Hearing, his attorney quoted statues and case law and motioned to move the case to arbitration. The Summary Judgment hearing was plagued with discrepancies. The civil Court case file and transcript **will not** reflect the video-hearing see case Civil Court case file **Exhibit 17,** At the present time, I have been denied my FOIA requests

for a video copy of the hearing as proof and evidence, with the use of discovery I will be able to prove my allegation.

96. Cary Belovicz, the defendant, deviant plan was to work using a fraudulent claim in the legal system with inside help, (conspiracy).

97. I, Dennis Clyde Maynard, Plaintiff, have been injured and harmed by the actions of the defendant's abuse of the legal system for personal gain and I am seeking compensation in order to be made whole.

98. WHEREFORE Dennis Clyde Maynard Plaintiff moves this Honorable Court to enter an Order for money damages against the Defendants together with such other and further relief as circumstance and demands of justice may warrant.

## COUNT TEN

99. Plaintiff realleges and restates the foregoing Jurisdictional allegations and general factual allegations.

100. After being Abandoned by my legal team, in AAA, (American Arbitration Association), Asked me how my paper work should read.

101. I Informed AAA that my paper work should read, I never Volunteered to arbitration, I never consented to arbitration, and in addition my case paper work should read fraud.

102. I challenged AAA, jurisdiction and demanded my constitutional right for a trial by jury. **See Exhibit 13.**

103. AAA and Defendants, continue to falsely imprison me in arbitration denying me my constitutional right for a trial by jury.

104. WHEREFORE Dennis Clyde Maynard Plaintiff moves this Honorable Court to enter an Order for money damages against the Defendants together with such other and further relief as circumstance and demands of justice may warrant.

RFAs

105. 1, You have been correctly named in this case insofar as your legal name is concerned.

106. 2. You have been properly served as a party defendant.

107. 3. Process is sufficient with regard to you in this case.

108. 4. Service of process is sufficient with regard to you.

109. 5. This Court has jurisdiction over the subject matter of this case.

110. 6. This Court has personal jurisdiction over you in this case.

111. 7. Venue is proper in this Court.

**ROGs**

112. 1. Do you contend someone or some entity other than you and/or Plaintiff was negligent? If so, please I dentify each person or entity you claim as negligent and state all facts presently known to.

113. UNDER PENALTIES OF PERJURY, I affirm the facts alleged in the foregoing are

true and correct according to the best of my own personal knowledge.

All rights reserved.
Respectfully submitted,

Date **28 Nov 2023**

Dennis C. Maynard
6545 Market Ave.
North, STE 100,
North Canton, OH,
44721, USA
Phone, 304.617.1509,
E-mail, den_is2c@yahoo.com

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues trial-able thereto if in the above-styled action.

All rights reserved
Respectfully submitted,

Date **28 Nov 2023**

Dennis C. Maynard
6545 Market Ave.
North, STE 100,
North Canton, OH,
44721, USA
Phone, 304.617.1509,
E-mail, den_is2c@yahoo.co

## VERIFIED

State of Ohio
County of hamilton

BEFORE ME, personally appeared Dennis Clyde Maynard who being by me first duly affirm, executed the foregoing in my presence and stated to me under penalties of perjury that the facts alleged therein are true and correct according to the best of his own personal knowledge.

Date 11-28-23

Notary Public.
My commission expires: 08-29-77



# Exhibit 1

Signed Contract
w/ Doc Removed

Pg 3 of 3

DocuSign Envelope ID: F89EBDEF-6B08-4C07-BB0B-92EC89C67787



GREYSTONE BEL REAL ESTATE ADVISORS
7035 Orchard Lake Road, Suite 150
West Bloomfield, MI 48322
Phone: 248.394.0000
Fax: 734.471.0200
www.greystonebel.com

In consideration of the services to be rendered by Greystone Bel Real Estate Advisors ("Agent"), the undersigned ("Seller"), hereby employs Agent ("Listing Agreement") for the period of time beginning July 20th, 2020 and terminating at midnight on January 20th, 2021 (the "Termination Date"), subject to extension as provided in Paragraph 6 below, to obtain a purchaser ("Buyer") for the following real property, together with all improvements thereon, located in the City of **Vassar,** County of **Tuscola,** State of **Michigan,** more particularly described as follows (the "Property"):

### Manor Ridge Apartments - 32 units
### 690 Welsh Blvd, Vassar, MI 48768

1. **AUTHORITY TO OFFER.** Seller hereby grants to Agent the sole, exclusive and irrevocable right and authority to offer the Property for sale during the Term defined herein for, and agrees to accept, an offer containing the following sales price (the "Purchase Price") upon the terms and conditions set forth in this Listing Agreement:

    **PURCHASE PRICE: $1,275,000 Terms:** cash or new mortgage.

2. **INSPECTION OF PREMISES:** It is agreed that Agent and/or its representatives shall have the right to enter upon the Property and all portions thereof (including exterior and interior) with prospective Buyers at all reasonable times.

3. **COMMISSION TO BE PAID:** If Agent, Seller, or anyone else obtains a Buyer for the Property during the Term of this Listing Agreement at the Purchase Price and on the terms stated in this Listing Agreement, or at any other price or terms acceptable to Seller, then Seller agrees to pay to Agent a commission (the "Commission") equal to **8%** of the Purchase Price if the property sells on or before the first 60 days of the executed listing agreement, the real estate commission will be reduced to 7% of the purchase price if the property sells in between the 61st day and 120th day of the executed listing agreement, if the property sells after 120 days of the executed listing agreement the real estate commission will be reduced to 6% of the sales price for the remainder of this lisitng agreement. Commission shall be due and payable whether the property be sold or whether the property be withdrawn from sale, or made unmarketable by Seller. Following the expiration of the Term in the event that (a) said Buyer, either directly or indirectly, is a person or entity with whom Agent negotiated in earnest for such sale or who received complete marketing information and (b) Agent has furnished Seller with a written list stating the names of any persons described in item (a) above by certified mail, facsimile, email transmission, or in person no later than ten business days after the expiration of the Term. Seller expressly acknowledges its obligation to pay Agent's Commission upon any such closing regardless whether any cash is available through escrow or otherwise in connection with said closing. During the Term, Seller agrees to refer to Agent all inquiries Seller may receive concerning the Property.

4. **PURCHASE DEPOSIT:** In the event a prospective Buyer's deposit is forfeited and retained by Seller fifty percent of the retained deposit shall be paid to Agent and fifty percent to Seller; provided, however, that Agent's share under this Paragraph 7 shall not exceed the amount of the Commission that would have been due to Agent pursuant to Paragraph 5 of this Listing Agreement

Pg 1 of 3

DocuSign Envelope ID: F89EBDEF-6B08-4C07-BB0B-92EC89C67787

if the sale had closed. Payment to Agent under this paragraph 7 is independent of any Commission due to Agent pursuant to Paragraph 5 of this Listing Agreement.

5. **TITLE:** Seller represents and warrants to Agent that fee simple indefeasible title to the property is fully vested in Seller, that Seller is duly authorized and empowered (either in Seller's individual capacity or on behalf of others) to execute this Listing Agreement, and that execution hereof will not result in any breach of, or constitute a default under, any contract or other agreement to which Seller is a party.

6. **PERSONAL PROPERTY:** Fixtures, furniture, furnishings and other personal property belonging to Seller located on the Property are included in the total purchase price and will be conveyed to Buyer free and clear of all liens and encumbrances by Bill of Sale at the close of escrow. Seller agrees to provide Buyer with a full and complete inventory of all personal property within five (5) business days after mutual acceptance of a written purchase agreement for the Property.

7. **DUE DILIGENCE:** Agent agrees to use due diligence in attempting to sell the Property.

8. **MARKETING:** In its efforts to best represent Seller, Agent reserves the right to cooperate or not cooperate with other licensed real estate agents. Agent reserves this right in an effort to minimize unnecessary disclosures and unauthorized showings of the Property. If Agent does elect to cooperate with other agents, it will work only with those agents that Agent believes are qualified to best represent the interests of Seller. Seller acknowledges that Agent may make marketing material created for Seller's property available for access from Agent's internet website (www.greystonebel.com).

9. **OTHER BROKERS/AGENTS:** Seller agrees that in the event there is any broker/agent involved in the disposition of the Property other than Agent, then said other broker/agent shall not be Seller's agent nor the sub-agent of Agent but shall be the agent, if at all, of the Buyer.

10. **ADDENDA:** Any addendum attached hereto and either signed or initialed by the parties shall be deemed a part hereof. This Listing Agreement, including addenda if any, expresses the entire agreement of the parties. There are no other understandings, oral or written, which in any manner alter or enlarge its terms. This Listing Agreement supersedes any and all agreements between the parties hereto regarding the Property which are prior in time to this Listing Agreement.

11. **ASSIGNMENT:** This Listing Agreement may not be assigned by Agent without the express written consent of Seller.

12. **ARBITRATION:** If a controversy arises with respect to the subject matter of this Listing Agreement or any provision hereof, Seller and Agent agree that such controversy shall be settled by final, binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.

Pg 2 of 3

DocuSign Envelope ID: F89EBDEF-6B08-4C07-BB0B-92EC89C67787

WE, THE UNDERSIGNED, HAVE READ THIS DOCUMENT, UNDERSTAND THE SAME AND AGREE TO THE ABOVE TERMS AND CONDITIONS THEREOF, AND ACKNOWLEDGE RECEIPT THEREOF. THIS DOCUMENT CONSTITUTES A LEGAL CONTRACT. BEFORE EXECUTION HEREIN, *IT IS RECOMMENDED THAT SELLER HAVE THIS DOCUMENT REVIEWED BY AN ATTORNEY OF SELLER'S SELECTION.*

**SELLER: Je & Mea Investment Holdings Llc**

By: *Dennis C Maynard*
A3C0D08E2B59499
Dennis Maynard

Date: 7/20/2020

Address:690 Welsh Blvd, Vassar, MI 48768

Telephone: 304-617-1509
Email: den_is2c@yahoo.com


**AGENT: Greystone Bel Real Estate Advisors**

By: *Cary Belovicz*
Cary Scott Belovicz

Its: Managing Partner
252

Cell:

Date: 7/20/2020

Address: 7035 Orchard Lake Road Suite 150
West Bloomfield, MI 48322
Telephone: 248.394.0000 Ext.

734.564.3833

Email: cary@greystonebel.com


**AGENT: Greystone Bel Real Estate Advisors**

By: *Austin Hull*
AE40C25AA1FA470
Austin Hull

Its: Associate Director
254

Cell:

Date: 7/20/2020

Address: 7035 Orchard Lake Road Suite 150
West Bloomfield, MI 48322
Telephone: 248.394.0000 Ext.

734.812.4508

Email: austin@greystonebel.com

# Exhibit 2

contract
w/ DOC
Pg 3 of 3

In consideration of the services to be rendered by Greystone Bel Real Estate Advisors ("Agent"), the undersigned ("Seller"), hereby employs Agent ("Listing Agreement") for the period of time beginning July 2nd, 2020 and terminating at midnight on December 31st, 2020 (the "Termination Date"), subject to extension as provided in Paragraph 6 below, to obtain a purchaser ("Buyer") for the following real property, together with all improvements thereon, located in the City of **Vassar,** County of **Tuscola,** State of **Michigan,** more particularly described as follows (the "Property"):

**Manor Ridge Apartments - 32 units**
**690 Welsh Blvd, Vassar, MI 48768**

1. **AUTHORITY TO OFFER.** Seller hereby grants to Agent the sole, exclusive and irrevocable right and authority to offer the Property for sale during the Term defined herein for, and agrees to accept, an offer containing the following sales price (the "Purchase Price") upon the terms and conditions set forth in this Listing Agreement:

    **PURCHASE PRICE: $1,275,000 Terms:** cash or new mortgage.

1. **RECORDS AND FINANCIAL DATA:** Seller agrees to furnish and make available to prospective Buyers all financial data and rent statements concerning the Property. Seller represents and warrants that Seller shall hold Agent harmless from any and all liability, damages, causes of action and any other claims arising from or asserted in connection with any incorrect or inaccurate information supplied by Seller, or any information which Seller has failed to supply.

2. **INSPECTION OF PREMISES:** It is agreed that Agent and/or its representatives shall have the right to enter upon the Property and all portions thereof (including exterior and interior) with prospective Buyers at all reasonable times.

3. **ATTORNEYS FEES:** In case of any action, arbitration or proceeding to compel compliance with, or for a breach of, any agreement, covenant, warranty, representation, term or condition hereof or otherwise arising out of or under this Listing Agreement, whether for declaratory or other relief, the prevailing party is entitled to recover from the losing party all costs of such action, arbitration or proceeding, including, but not limited to, reasonable attorneys' fees, which shall be payable whether or not such action, arbitration or proceeding is prosecuted to judgment.

4. **COMMISSION TO BE PAID:** If Agent, Seller, or anyone else obtains a Buyer for the Property during the Term of this Listing Agreement at the Purchase Price and on the terms stated in this Listing Agreement, or at any other price or terms acceptable to Seller, or if a contract for sale of the Property is entered into during the Post-Term Period as set forth in the following sentence, then Seller agrees to pay to Agent a commission (the "Commission") equal to **7%** of the Purchase Price, which Commission shall be due and payable whether the property be sold, transferred, conveyed, or whether the property be withdrawn from sale, or made unmarketable by Seller. Without limiting the foregoing, the Commission will be due under a sale agreemententered into within 60 days (the "Post-Term Period") following the expiration of the Term in the event that (a) said Buyer, either directly or indirectly, is a person or entity with whom Agent negotiated in

earnest for such sale or who received complete marketing information and (b) Agent has furnished Seller with a written list stating the names of any persons described in item (a) above by certified mail, facsimile, email transmission, or in person no later than ten business days after the expiration of the Term. Seller expressly acknowledges its obligation to pay Agent's Commission upon any such closing regardless whether any cash is available through escrow or otherwise in connection with said closing. During the Term, Seller agrees to refer to Agent all inquiries Seller may receive concerning the Property.

5. **EXTENSION:** In the event a purchase agreement is executed by Seller and a Buyer for the sale of the Property, and such purchase agreement is terminated or canceled by mutual agreement of such Seller and Buyer or by breach or default of either Seller or Buyer, the Term will be extended beyond the Termination Date set forth above by an additional period of time equal to the number of days between the effective date of such purchase agreement and the date of termination or cancellation thereof, but in no event will any such extended Term expire more than 270 days after the Termination Date set forth above. All other terms of this Listing Agreement will remain in full force and effect during any such extended Term, and any other timing requirements under this Listing Agreement will be likewise extended. The term of this Listing Agreement, including any extension pursuant to this Paragraph 6, is referred to in this Listing Agreement as the "Term."

6. **PURCHASE DEPOSIT:** In the event a prospective Buyer's deposit is forfeited and retained by Seller fifty percent of the retained deposit shall be paid to Agent and fifty percent to Seller; provided, however, that Agent's share under this Paragraph 7 shall not exceed the amount of the Commission that would have been due to Agent pursuant to Paragraph 5 of this Listing Agreement if the sale had closed. Payment to Agent under this paragraph 7 is independent of any Commission due to Agent pursuant to Paragraph 5 of this Listing Agreement.

7. **TITLE:** Seller represents and warrants to Agent that fee simple indefeasible title to the property is fully vested in Seller, that Seller is duly authorized and empowered (either in Seller's individual capacity or on behalf of others) to execute this Listing Agreement, and that execution hereof will not result in any breach of, or constitute a default under, any contract or other agreement to which Seller is a party.

8. **PERSONAL PROPERTY:** Fixtures, furniture, furnishings and other personal property belonging to Seller located on the Property are included in the total purchase price and will be conveyed to Buyer free and clear of all liens and encumbrances by Bill of Sale at the close of escrow. Seller agrees to provide Buyer with a full and complete inventory of all personal property within five (5) business days after mutual acceptance of a written purchase agreement for the Property.

9. **DUE DILIGENCE:** Agent agrees to use due diligence in attempting to sell the Property.

10. **MARKETING:** In its efforts to best represent Seller, Agent reserves the right to cooperate or not cooperate with other licensed real estate agents. Agent reserves this right in an effort to minimize unnecessary disclosures and unauthorized showings of the Property. If Agent does elect to cooperate with other agents, it will work only with those agents that Agent believes are qualified to best represent the interests of Seller. Seller acknowledges that Agent may make marketing material created for Seller's property available for access from Agent's internet website (www.greystonebel.com).

©2014 Greystone & Co, Inc. All rights Reserved. References to the term "Greystone," "we," "us," and "our" refer to Greystone & Co., Inc. and/or its affiliated companies, as applicable. Loan products are offered through Greystone Funding Corporation, Greystone Servicing Corporation, Inc. and/or Greystone affiliated companies. For more information please visit our website www.greyco.com or contact information@greyco.com.

pg 2 of 3

11. **OTHER BROKERS/AGENTS:** Seller agrees that in the event there is any broker/agent involved in the disposition of the Property other than Agent, then said other broker/agent shall not be Seller's agent nor the sub-agent of Agent but shall be the agent, if at all, of the Buyer.

12. **ADDENDA:** Any addendum attached hereto and either signed or initialed by the parties shall be deemed a part hereof. This Listing Agreement, including addenda if any, expresses the entire agreement of the parties. There are no other understandings, oral or written, which in any manner alter or enlarge its terms. This Listing Agreement supersedes any and all agreements between the parties hereto regarding the Property which are prior in time to this Listing Agreement.

13. **ASSIGNMENT:** This Listing Agreement may not be assigned by Agent without the express written consent of Seller.

14. **ARBITRATION:** If a controversy arises with respect to the subject matter of this Listing Agreement or any provision hereof, Seller and Agent agree that such controversy shall be settled by final, binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.

WE, THE UNDERSIGNED, HAVE READ THIS DOCUMENT, UNDERSTAND THE SAME AND AGREE TO THE ABOVE TERMS AND CONDITIONS THEREOF, AND ACKNOWLEDGE RECEIPT THEREOF. THIS DOCUMENT CONSTITUTES A LEGAL CONTRACT. BEFORE EXECUTION HEREIN, *IT IS RECOMMENDED THAT SELLER HAVE THIS DOCUMENT REVIEWED BY AN ATTORNEY OF SELLER'S SELECTION.*

**SELLER:  J & M Investment Holdings Llc**

By: _____     Address:690 Welsh Blvd, Vassar, MI 48768
      Dennis Maynard

                                                          Telephone: 304-617-1509
Date: _____     Email: den_is2c@yahoo.com

**AGENT:  Greystone Bel Real Estate Advisors**

By: _____     Address: 7035 Orchard Lake Road Suite 150
      Cary Scott Belovicz                                   West Bloomfield, MI 48322
Its:  Managing Partner                                    Telephone: 248.394.0000 Ext. 252
                                                          Cell:            734.564.3833

Date: _____     Email: cary@greystonebel.com

**AGENT:  Greystone Bel Real Estate Advisors**

By: _____      Address: 7035 Orchard Lake Road Suite 150
      Austin Hull                                          West Bloomfield, MI 48322
Its:  Associate Director                                  Telephone: 248.394.0000 Ext. 254
                                                          Cell:            734.812.4508

Date: _____     Email: austin@greystonebel.com



# Exhibit 3

Austin Hall Email
Remove Doc
16 July 2020

Pg 1 of 1

## Updated listing

**Austin Hull** <austin@greystonebel.com>

To: den_is2c@yahoo.com

Cc: Cary Belovicz

Thu, Jul 16, 2020 at 3:41 PM

Dennis,

Per our conversation, please see the attached updated listing agreement for your review with the below changes added in:

1. Took out the paragraph about seller furnishing documents
2. Changed commission structure to what we talked about over the phone
3. Took out the "transfer/conveyed" part of the commission paragraph
4. Took out the extension paragraph.
5. I also updated the dates

Other than that, everything is exactly the same, I will go ahead and send you the exact same version via DocuSign as well. Looking forward to working with you!

**Austin Hull** | **Associate Director**
Greystone Bel | www.greystonebel.com
7035 Orchard Lake Rd, Suite 150, West Bloomfield, MI 48322
Austin@greystonebel.com | o: 248.800.0151 m: 734.812.4508

a Joint Venture between Greystone Real Estate Advisors, Inc. & Bel Real Estate Advisors (fka: Commercial Property Advisors)

This transmission is intended solely for its intended recipients and may contain information that is confidential or privileged. If you are not an intended recipient, please be advised that any reproduction, distribution, or disclosure of any part of this transmission is strictly prohibited. If you received this transmission in error, please advise Greystone Bel Real Estate Advisors by reply email and then delete the transmission from your computer without copying it. Thank you.

# Exhibit 4

LG Capital LOI
7.22.2020
Pag 1 of 1

DocuSign Envelope ID: C9685A35-91C7-427D-98EB-CE90ED3F5519

# **LETTER OF INTENT**

7/22/2020

---

Greystone Bel Real Estate Advisors
7035 Orchard Lake Road Suite 150
West Bloomfield, MI 48322

> RE: Manor Ridge- 690 Welsh Blvd Vassar, MI 48768- 32 Units

Dear Austin:

This letter outlines some of the terms and provisions under which we (the "Buyer") would be willing to consider the purchase of the Apartments from the existing owner (the "Seller"). The terms are as follows:

1. Purchase Price. The purchase **price shall be $1,075,000**

2. Earnest Money. Within 3 days after the execution and delivery of a written purchase agreement (the "Contract"), the Buyer will deposit **$20,000,** which shall be held by the escrow agent named in the Contract in accordance with the terms thereof. Earnest Money deposit shall be non-refundable after removal of due diligence and financing period.

3. Due Diligence. Buyer shall have 30 days from the date of the executed purchase agreement to conduct its due diligence. Seller will provide buyer will all property inspection reports in their possession pertaining to subject property.

4. Financing. Buyer shall have 45 days from the expiration of the due diligence period to obtain adequate financing.

5. Closing. Closing will take place 15 days after expiration of the financing period.

6. Expenses and Prorations. Seller shall bear the following: its legal counsel's fees, transfer taxes and title commitment issuance costs and premiums. Buyer shall bear the following: its legal counsel's fees, and its due diligence expenses. Property taxes, water bills, assessments, and other similar customary items shall be paid by seller at closing.

7. Contract. Upon execution of this letter by the buyer, the buyer's attorney will prepare the initial draft of the Contract unless otherwise agreed upon.

Sincerely,

BUYER: LG Capital, LLC

*Steve Lyman*

By: Steve Lyman
Its: Managing Member
Date: 7/22/2020

SELLER: Dennis Maynard

_____

By:_____

Date:_____

Pg 1 of 1

# Exhibit 5

EMAIL RAW NUMBERS
G.H DOWN
LOW LISTING PRICE

Pg 1 oF 1

**From:** dennis maynard <den_is2c@yahoo.com>
**Sent:** Thursday, July 30, 2020 9:25 AM
**To:** Austin Hull <austin@greystonebel.com>; Cary Belovicz <cary@greystonebel.com>
**Cc:** BUB / MANOR - RIDGE@OUTLOOK> COM <manor-ridge@outlook.com>
**Subject:** Re: MANOR RIDGE APARTMENTS

GOOD MORNING ALL:

GUYS CAN YOU PLEASE RUN THE NUMBERS FOR EVALUATION ON MANOR RIDGE AND EMAIL THEM

TO ME TO LOOK AT. I WOULD LIKE TO GO OVER THEM WITH YOU ALL.

THANKS

HAVE A GREAT DAY

DENNIS C. MAYNARD
J&M INVESTMENT HOLDINGS LLC.
MANOR RIDGE APARTMENTS
304-617-1509

On Wednesday, July 29, 2020, 10:15:23 PM EDT, dennis maynard <den_is2c@yahoo.com> wrote:

HI GUYS:

CARY, AUSTIN I THINK OUR ASKING PRICE IS OFF.

AUSTIN, USING THE SELL PER UNIT PRICE,, YOU GAVE, I THINK IS OFF LOW.

LOOKING AT THE NUMBERS, IM COMING UP WITH SOMETHING DIFFERENT, A HIGHER VALUE.

CAN YOU GUYS LOOK THEM OVER. RUN THE NUMBERS. LET US GUYS, SEAT DOWN AND COMPARE NOTE
S.

AS I SAID BEFORE IN 2015 AT THE BANK AUDIT, HE SAID MANOR RIDGE WAS VALUED AT 1.5M

HAVE A GREAT DAY.

THANKS
DENNIS C. MAYNARD
J&M INVESTMENT HOLDINGS LLC.
MANOR RIDGE APARTMENTS
304-617-1509


pg 1 of 1

# Exhibit 6

Email Registries
Numbers
8 Oct 2020
29 Jul 2020

Pg Ten

Pg 1-2

**Cary Belovicz** <cary@greystonebel.com>
To:Manor Ridge,dennis maynard
Cc:Paul Russo,Nick Kirby,Colin Soltis
Thu, Oct 8, 2020 at 1:37 PM

Dennis and Dan,

Could you please forward the current rent roll.

**Cary Belovicz | Executive Managing Director**
Greystone Bel | www.greystonebel.com
7035 Orchard Lake Rd, Suite 150, West Bloomfield, MI 48322
cary@greystonebel.com  | o: 248.394.0000 x252 m: 734.564.3833

a Joint Venture between Greystone Real Estate Advisors, Inc. & Bel Real Estate Advisors (fka: Commercial Property Advisors)

This transmission is intended solely for its intended recipients and may contain information that is confidential or privileged. If you are not an intended recipient, please be advised that any reproduction, distribution, or disclosure of any part of this transmission is strictly prohibited. If you received this transmission in error, please advise Greystone Bel Real Estate Advisors by reply email and then delete the transmission from your computer without copying it. Thank you.

**From:** Manor Ridge <manor-ridge@outlook.com>
**Sent:** Wednesday, September 2, 2020 11:31 AM
**To:** Cary Belovicz <cary@greystonebel.com>
**Subject:** Rent Roll

I went ahead and sent you this Qtrs. rent roll

Thank You,
Dan
989 823-8430
Manor Ridge Apartments

Pg 1 of 2

**Cary Belovicz** <cary@greystonebel.com>
To:den_is2c@yahoo.com
Cc:Paul Russo,Nick Kirby
Wed, Jul 29, 2020 at 9:47 AM
Dennis,

It was a pleasure speaking with you. Could you please forward the rent roll in addition to the financials as I was unable to locate the rent roll you previously sent.

Also, please reply all as Nick and Paul will be working on the team with myself.

# Exhibit 7

REQUESTING RENT ROLL

7-29-2020

10-8-2020

Pg 1 of 2

**Cary Belovicz** <cary @ greystonebel.com>
To: Manor Ridge,dennis maynard
Cc: Paul Russo,Nick Kirby,Colin Soltis
Thu, Oct 8, 2020 at 1:37 PM

Dennis and Dan,

Could you please forward the current rent roll.

**Cary Belovicz | Executive Managing Director**
Greystone Bel | www.greystonebel.com
7035 Orchard Lake Rd, Suite 150, West Bloomfield, MI 48322
cary@greystonebel.com | o: 248.394.0000 x252 m: 734.564.3833

a Joint Venture between Greystone Real Estate Advisors, Inc. & Bel Real Estate Advisors (fka: Commercial
Property Advisors)

This transmission is intended solely for its intended recipients and may contain information that is confidential or privileged. If you are not an intended
recipient, please be advised that any reproduction, distribution, or disclosure of any part of this transmission is strictly prohibited. If you received this
transmission in error, please advise Greystone Bel Real Estate Advisors by reply email and then delete the transmission from your computer without
copying it. Thank you.

**From:** Manor Ridge <manor-ridge@outlook.com>
**Sent:** Wednesday, September 2, 2020 11:31 AM
**To:** Cary Belovicz <cary@greystonebel.com>
**Subject:** Rent Roll

I went ahead and sent you this Qtrs. rent roll

Thank You,
Dan
989 823-8430
Manor Ridge Apartments

Pg 1 of 2

**Cary Belovicz** <cary@greystonebel.com>
To: den_is2c@yahoo.com
Cc: Paul Russo, Nick Kirby
Wed, Jul 29, 2020 at 9:47 AM

Dennis,

It was a pleasure speaking with you. Could you please forward the rent roll in addition to the financials as I was unable to locate the rent roll you previously sent.

Also, please reply all as Nick and Paul will be working on the team with myself.

Pg 2 of 2

# Exhibit 8



7-29-2020

REVALUATION, NO DOC, CARY PROFOMA, CARY FULL PRICE

29 Jul 2020
EMAIL

DAted 18 Aule 2020

EMAILS

4 Aug 2020

My letter @ LOI Counter

DCa My Email    asking about
EMial ~~~~~~~~~~~~~~~
Bank Require Doc's ?
Date    4 Aug 2020
No Doc Sales>

Pg 1 of 4

**Cary Belovicz** <cary@greystonebel.com>
To:dennis maynard
Cc:BUB / MANOR - RIDGE@OUTLOOK> COM,Paul Russo,Nick Kirby
Tue, Aug 18, 2020 at 4:26 PM
Dennis,

I have great news, we have a full price offer for Manor Ridge Apartments, see attached.

**Cary Belovicz** | **Executive Managing Director**
Greystone Bel | www.greystonebel.com
7035 Orchard Lake Rd, Suite 150, West Bloomfield, MI 48322
cary@greystonebel.com | o: 248.394.0000 x252 m: 734.564.3833

Pg 1 of 1

**dennis maynard** <den_is2c@yahoo.com>
To: austin@greystonebel.com,cary@greystonebel.com
Cc: BUB / MANOR - RIDGE@OUTLOOK> COM
Wed, Jul 29, 2020 at 10:15 PM

HI GUYS:

CARY, AUSTIN I THINK OUR ASKING PRICE IS OFF.

AUSTIN, USING THE SELL PER UNIT PRICE,, YOU GAVE, I THINK IS OFF LOW.

LOOKING AT THE NUMBERS, IM COMING UP WITH SOMETHING DIFFERENT, A HIGHER VALUE.

CAN YOU GUYS LOOK THEM OVER. RUN THE NUMBERS. LET US GUYS, SEAT DOWN AND COMPARE NO
TES.

AS I SAID BEFORE IN 2015 AT THE BANK AUDIT, HE SAID MANOR RIDGE WAS VALUED AT 1.5M

HAVE A GREAT DAY.

THANKS
DENNIS C. MAYNARD
J&M INVESTMENT HOLDINGS LLC.
MANOR RIDGE APARTMENTS
304-617-1509

**Cary Belovicz** <cary@greystonebel.com>
To: dennis maynard
Cc: BUB / MANOR - RIDGE@OUTLOOK> COM,Paul Russo,Nick Kirby
Tue, Aug 4, 2020 at 9:28 AM

Dennis,

Here is a summary of our proforma:

Annual Market Rent: $204,900 ($17,075 / monthly)
Less Vacancy: $-$10,245 "I know you are full but a lender will require this as a minimum)
Plus Laundry Income: $2,000
Total Income: $196,655
Less Expenses: -$103,667
NOI: $92,988 @ 7.45% Cap Rate = $1,250,000 value

Keep in mind a lender will need to see actual income or bank deposits showing monthly rental income.

Sincerely,

**Cary Belovicz** | **Executive Managing Director**
Greystone Bel | www.greystonebel.com
7035 Orchard Lake Rd, Suite 150, West Bloomfield, MI 48322
cary@greystonebel.com | o: 248.394.0000 x252 m: 734.564.3833

**dennis maynard** <den_is2c@yahoo.com>
To: Cary Belovicz
Cc: BUB / MANOR - RIDGE@OUTLOOK> COM,Paul Russo,Nick Kirby,den_is2c@yahoo.com
Tue, Aug 4, 2020 at 10:59 PM

HI CARY AND ALL YOUR TEAM:

THANK YOU FOR GETTING THIS OFFER, FROM LG CAPITAL.

SORRY NOT FEELING GOOD. I WAS LOOKING OVER INTENT AND PROFORMA. I AM NOT
SURE IF, WE HAVE A PROBLEM.
FROM THE START WE AGREED TO SELL MANOR RIDGE APTS PROFORMA, I STATED WE
HAD 3 BAD YEARS, AND THAT I WOULD NOT
BE PROVIDING FINANCIAL DOCS.
IN YOUR SUMMARY OF YOUR PROFORMA: YOU SAID KEEP IN MIND A LENDER WILL
NEED? I AM NOT EXACTLY SURE WHAT YOU MEAN?
PROFORMA, IS WITHOUT DOCS.
PLEASE CLARIFY I WANT TO BE ON SAME PAGE.
HAVE A GREAT DAY!

DENNIS C. MAYNARD, OWNER
J&M INVESTMENT HOLDINGS LLC.
MANOR RIDGE APARTMENTS
304-617-1509

**Cary Belovicz** <cary@greystonebel.com>
To: dennis maynard
Cc: BUB / MANOR - RIDGE@OUTLOOK> COM,Paul Russo,Nick Kirby
Tue, Aug 18, 2020 at 4:26 PM
Dennis,

I have great news, we have a full price offer for Manor Ridge Apartments, see attached.

**Cary Belovicz** | **Executive Managing Director**
Greystone Bel | www.greystonebel.com
7035 Orchard Lake Rd, Suite 150, West Bloomfield, MI 48322
cary@greystonebel.com | o: 248.394.0000 x252 m: 734.564.3833

Pg 3 of 4

**J&M INVESTMENT HOLDINGS LLC.**

Letter of Intent

Dear Cary:

Please find outlined below the general terms and provisions which I ( the Seller ) would be willing to accept for the purchase of Manor Ridge Apartments- 690 Welsh Blvd, Vassar Michigan 48768 - 32 Units. Please use in your negotiations on my behalf.

This is not a contract. Nor does this letter create any legally binding liability to ( the " Seller" } , { " the Buyer" }, or any interested parties . This letter, though not binding, is intended to serve as a basis For negotiation a final written agreement, which will contain material terms not mentioned in this letter. This letter does not create an exclusive right to negotiate or an obligation to negotiate in good faith. Either party may terminate negotiations at any time in their sole discretion. Partial performance by either party of the terms of of this letter, or the efforts by either party to perform due diligence or carry out other acts in contemplation of consummating this transaction. shall not be deemed evidence of intent by either party to be bound by the terms of this letter. The subsequent approval or acknowledgment of an agreement by email, text, or any other electronic communication service shall not be binding upon either party. The parties will not be bound to an agreement unless and until they review, approve, execute and deliver a final and definitive written agreement.

1. As Is.

2. No Warranties.

3. PURCHASE PRICE $1,275,000

4. Manager in apt. 7, has 30 days after date of sell close to vacate. However the office will be available to Buyer after close.

5. There is some tools and equipment that will remain with " Seller".

6. The { " Buyer" } shall bear the following: Its legal counsel's fees, and its due diligence expenses transfer taxes and title commitment issuance costs and premiums, Property taxes, $50,000 toward the " Sellers " Capital Gains tax, Broker Realtor fees and commissions. Water and electric bills shall be pro rated. The assessments, and other similar customary items shall be paid by buyer at closing.

7. 1031 Exchange

SELLER: J&M INVESTMENT HOLDINGS LLC.
Dennis C. Maynard
Owner / Member

# Exhibit 9

8-18-2020 LG LOI NO MENTION OF REALTOR FEE

LGS LOI
Terms + Provision
Consider buying
w/o seller paying Realtor
Fees

Pg 1 of 1

## LETTER OF INTENT

8/18/2020

Greystone Bel Real Estate Advisors
7035 Orchard Lake Road Suite 150
West Bloomfield, MI 48322

      **RE:** Manor Ridge- 690 Welsh Blvd Vassar, MI 48768- 32 Units

Dear Cary:

This letter outlines some of the terms and provisions under which we (the "Buyer") would be willing to consider the purchase of the Apartments from the existing owner (the "Seller"). The terms are as follows:

1.    Purchase Price. The purchase **price shall be $1,275,000**

2.    Earnest Money. Within 5 days after the execution and delivery of a written purchase agreement (the "Contract"), the Buyer will deposit **$12,500,** which shall be held by the escrow agent named in the Contract in accordance with the terms thereof. Earnest Money deposit shall be non-refundable after removal of due diligence and financing period.

3.    Due Diligence. Buyer shall have 30 days from the date of the executed purchase agreement to conduct its due diligence. Seller will provide buyer will all property inspection reports in their possession pertaining to subject property.

4.    Financing. Buyer shall have 45 days from the expiration of the due diligence period to obtain adequate financing.

5.    Closing. Closing will take place 15 days after expiration of the financing period.

6.    Expenses and Prorations. Seller shall bear the following: its legal counsel's fees, transfer taxes and title commitment issuance costs and premiums. Buyer shall bear the following: its legal counsel's fees, and its due diligence expenses. Property taxes will be prorated for their respective period. Water bills, assessments, and other similar customary items shall be paid by seller at closing.

7.    Contract. Upon execution of this letter by the buyer, the buyer's attorney will prepare the initial draft of the Contract unless otherwise agreed upon.

Sincerely,

BUYER: LG Capital, LLC                             SELLER: Dennis Maynard

_____          _____

By: Steve Lyman                             By:_____
Its: Managing Member
Date:____08/18/20_____         Date:_____

Pg 1 of 1

# Exhibit 10

EMAIL MY LOI Counter

Pg 101

J&M INVESTMENT HOLDINGS LLC.

                                    Letter of Intent

Dear Cary:

Please find outlined below the general terms and provisions which I ( the Seller ) would be willing to accept for the purchase of Manor Ridge Apartments- 690 Welsh Blvd, Vassar Michigan 48768 - 32 Units. Please use in your negotiations on my behalf.

This is not a contract. Nor does this letter create any legally binding liability to ( the " Seller" } , { " the Buyer" }, or any interested parties . This letter, though not binding, is intended to serve as a basis For negotiation a final written agreement, which will contain material terms not mentioned in this letter. This letter does not create an exclusive right to negotiate or an obligation to negotiate in good faith. Either party may terminate negotiations at any time in their sole discretion. Partial performance by either party of the terms of of this letter, or the efforts by either party to perform due diligence or carry out other acts in contemplation of consummating this transaction. shall not be deemed evidence of intent by either party to be bound by the terms of this letter. The subsequent approval or acknowledgment of an agreement by email, text, or any other electronic communication service shall not be binding upon either party. The parties will not be bound to an agreement unless and until they review, approve, execute and deliver a final and definitive written agreement.

1. As Is.

2. No Warranties.

3. PURCHASE PRICE $1,275,000

4. Manager in apt. 7, has 30 days after date of sell close to vacate. However the office will be available to Buyer after close.

5. There is some tools and equipment that will remain with " Seller".

6. The { " Buyer" } shall bear the following: Its legal counsel's fees, and its due diligence expenses transfer taxes and title commitment issuance costs and premiums, Property taxes, $50,000 toward the " Sellers " Capital Gains tax, Broker Realtor fees and commissions. Water and electric bills shall be pro rated. The assessments, and other similar customary items shall be paid by buyer at closing.

7. 1031 Exchange

SELLER: J&M INVESTMENT HOLDINGS LLC.
Dennis C. Maynard
Owner / Member

Pg 1 of 1

# Exhibit 11

1-15-21 cary broker lien

Signed listing Agreemt

Pg 1 of 7

Recorded 1/15/2021 3:08:24 PM
Tuscola County John Bishop
(Register of Deeds)
Receipt: 41264 Fee:$30.00

L- 01467 P- 01367 - 01373 (7)

RECEIVED IN TUSCOLA COUNTY
JANUARY 15, 2021 10:17:31 AM

## CLAIM OF COMMERCIAL REAL ESTATE BROKER'S LIEN

GREYSTONE BEL REAL ESTATE ADVISORS, *Broker-Claimant*

The Broker-Claimant named above, whose real estate license number is

_____6505405934_____, and whose business address is 7035 Orchard Lake Road,

Ste. 150, West Bloomfield, MI. 48322, Oakland County, MI., claims a commercial

real estate broker's lien under section 4 of the commercial real estate broker's lien act

and states:

   1.  The real property ("property") against which the lien is claimed is located at 690

Welsh Blvd., Vassar, MI. 48768, Tuscola County, MI., and is legally described on

**Exhibit A** attached to this claim. The record owner ("owner") of the property is J & M

Investment Holdings, LLC.

   2.  On July 20, 2020, the broker-claimant entered into a written agreement with the owner

obligating the owner to pay a commission to the broker-claimant. A legible copy of the

agreement is attached as **Exhibit B**.

   3.  The broker-claimant, by its agents, provided services for the owner and is in compliance

with the broker-claimant's obligations under the written agreement referred to in paragraph 2.

-1-

Pa 1 of 7

4. The amount of the commission or fee to which the broker-claimant is entitled is

$102,000.00.

5. The broker-claimant now claims a lien on the property and all improvements to the

property and against all persons interested in the property in the amount of $102,000.00.

6. The information contained in this Claim of Lien is true and accurate to the best

knowledge of the signer.

Greystone Bel Real Estate Advisors

Dated: January _/ ✓_ , 2021

By: Cary Belovicz, Managing Partner

Signed and sworn to before me in Oakland County, MI
on ___January 14___ , 2021

**Notary Public**

Oakland County, MI
My commission expires: ___May 8, 2024___

MICHELE K BRIKHO
Notary Public – State of Michigan
County of Oakland
My Commission Expires May 8, 2024
Acting in the County of Oakland

Prepared by: Philip A. Jaffe, Attorney
　　　　　　 PO Box 250902
　　　　　　 W. Bloomfield, MI. 48325
　　　　　　 (248) 224-1463

Return to: Greystone Bel Real Estate
　　　　　　 7035 Orchard Lake Rd. Ste 150
　　　　　　 W Bloomfield, MI. 48322

-2-

Pg 2 of 7

**EXHIBIT A**

*(Legal Description)*

*T1 ln R8e Com At Ne Cor Of Lot 2 Blk 1 (Sd Pt Also Nw Cor Of Merritt's Add) Th S 00 Deg 39' 21" Cor Of Welsh Est, Th N 90 Deg W 191.94 Ft, Th N 00 Deg 33' 30" Est, Th N 90 Deg W 128 Ft, Th N 00 Deg 40' 41" 529.86 Ft To N Ln Of Blk 1, Th N 88 Deg 54' 24" 32 0 Ft To Pob. (Part Of Lots 2 & 3 Blk 1) T North's Add To City Of Vassar*

**EXHIBIT B**
*(Listing Agreement)*

Pg 4 of 7

DocuSign Envelope ID: F89EBDEF-6B08-4C07-BB0B-92EC89C67787



GREYSTONE BEL REAL ESTATE ADVISORS
7035 Orchard Lake Road, Suite 150
West Bloomfield, MI 48322
Phone: 248.394.0000
Fax: 734.471.0200
www.greystonebel.com

In consideration of the services to be rendered by Greystone Bel Real Estate Advisors ("Agent"), the undersigned ("Seller"), hereby employs Agent ("Listing Agreement") for the period of time beginning July 20th, 2020 and terminating at midnight on January 20th, 2021 (the "Termination Date"), subject to extension as provided in Paragraph 6 below, to obtain a purchaser ("Buyer") for the following real property, together with all improvements thereon, located in the City of **Vassar**, County of **Tuscola**, State of **Michigan**, more particularly described as follows (the "Property"):

**Manor Ridge Apartments - 32 units**
**690 Welsh Blvd, Vassar, MI 48768**

1. **AUTHORITY TO OFFER.** Seller hereby grants to Agent the sole, exclusive and irrevocable right and authority to offer the Property for sale during the Term defined herein for, and agrees to accept, an offer containing the following sales price (the "Purchase Price") upon the terms and conditions set forth in this Listing Agreement:

   **PURCHASE PRICE: $1,275,000 Terms:** cash or new mortgage.

2. **INSPECTION OF PREMISES:** It is agreed that Agent and/or its representatives shall have the right to enter upon the Property and all portions thereof (including exterior and interior) with prospective Buyers at all reasonable times.

3. **COMMISSION TO BE PAID:** If Agent, Seller, or anyone else obtains a Buyer for the Property during the Term of this Listing Agreement at the Purchase Price and on the terms stated in this Listing Agreement, or at any other price or terms acceptable to Seller, then Seller agrees to pay to Agent a commission (the "Commission") equal to **8%** of the Purchase Price if the property sells on or before the first 60 days of the executed listing agreement, the real estate commission will be reduced to 7% of the purchase price if the property sells in between the 61st day and 120th day of the executed listing agreement, if the property sells after 120 days of the executed listing agreement the real estate commission will be reduced to 6% of the sales price for the remainder of this lisitng agreement. Commission shall be due and payable whether the property be sold or whether the property be withdrawn from sale, or made unmarketable by Seller. Following the expiration of the Term in the event that (a) said Buyer, either directly or indirectly, is a person or entity with whom Agent negotiated in earnest for such sale or who received complete marketing information and (b) Agent has furnished Seller with a written list stating the names of any persons described in item (a) above by certified mail, facsimile, email transmission, or in person no later than ten business days after the expiration of the Term. Seller expressly acknowledges its obligation to pay Agent's Commission upon any such closing regardless whether any cash is available through escrow or otherwise in connection with said closing. During the Term, Seller agrees to refer to Agent all inquiries Seller may receive concerning the Property.

4. **PURCHASE DEPOSIT:** In the event a prospective Buyer's deposit is forfeited and retained by Seller fifty percent of the retained deposit shall be paid to Agent and fifty percent to Seller; provided, however, that Agent's share under this Paragraph 7 shall not exceed the amount of the Commission that would have been due to Agent pursuant to Paragraph 5 of this Listing Agreement



DocuSign Envelope ID: F89EBDEF-6B08-4C07-BB0B-92EC89C67787

if the sale had closed.  Payment to Agent under this paragraph 7 is independent of any Commission due to Agent pursuant to Paragraph 5 of this Listing Agreement.

5. **TITLE:** Seller represents and warrants to Agent that fee simple indefeasible title to the property is fully vested in Seller, that Seller is duly authorized and empowered (either in Seller's individual capacity or on behalf of others) to execute this Listing Agreement, and that execution hereof will not result in any breach of, or constitute a default under, any contract or other agreement to which Seller is a party.

6. **PERSONAL PROPERTY:** Fixtures, furniture, furnishings and other personal property belonging to Seller located on the Property are included in the total purchase price and will be conveyed to Buyer free and clear of all liens and encumbrances by Bill of Sale at the close of escrow. Seller agrees to provide Buyer with a full and complete inventory of all personal property within five (5) business days after mutual acceptance of a written purchase agreement for the Property.

7. **DUE DILIGENCE:** Agent agrees to use due diligence in attempting to sell the Property.

8. **MARKETING:** In its efforts to best represent Seller, Agent reserves the right to cooperate or not cooperate with other licensed real estate agents. Agent reserves this right in an effort to minimize unnecessary disclosures and unauthorized showings of the Property. If Agent does elect to cooperate with other agents, it will work only with those agents that Agent believes are qualified to best represent the interests of Seller.  Seller acknowledges that Agent may make marketing material created for Seller's property available for access from Agent's internet website (www.greystonebel.com).

9. **OTHER BROKERS/AGENTS:** Seller agrees that in the event there is any broker/agent involved in the disposition of the Property other than Agent, then said other broker/agent shall not be Seller's agent nor the sub-agent of Agent but shall be the agent, if at all, of the Buyer.

10. **ADDENDA:** Any addendum attached hereto and either signed or initialed by the parties shall be deemed a part hereof. This Listing Agreement, including addenda if any, expresses the entire agreement of the parties. There are no other understandings, oral or written, which in any manner alter or enlarge its terms. This Listing Agreement supersedes any and all agreements between the parties hereto regarding the Property which are prior in time to this Listing Agreement.

11. **ASSIGNMENT:** This Listing Agreement may not be assigned by Agent without the express written consent of Seller.

12. **ARBITRATION:** If a controversy arises with respect to the subject matter of this Listing Agreement or any provision hereof, Seller and Agent agree that such controversy shall be settled by final, binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.



DocuSign Envelope ID: F89EBDEF-6B08-4C07-BB0B-92EC89C67787

WE, THE UNDERSIGNED, HAVE READ THIS DOCUMENT, UNDERSTAND THE SAME AND AGREE TO THE ABOVE TERMS AND CONDITIONS THEREOF, AND ACKNOWLEDGE RECEIPT THEREOF. THIS DOCUMENT CONSTITUTES A LEGAL CONTRACT. BEFORE EXECUTION HEREIN, *IT IS RECOMMENDED THAT SELLER HAVE THIS DOCUMENT REVIEWED BY AN ATTORNEY OF SELLER'S SELECTION.*

SELLER: John Maynard Investment Holdings Llc

By: *Dennis C Maynard*
Dennis Maynard

Date: 7/20/2020

Address:690 Welsh Blvd, Vassar, MI 48768

Telephone: 304-617-1509
Email: den_is2c@yahoo.com

AGENT: Greystone Bel Real Estate Advisors

By: *Cary Belovicz*
Cary Scott Belovicz

Its: Managing Partner
252

Cell:

Date: 7/20/2020

Address: 7035 Orchard Lake Road Suite 150
West Bloomfield, MI 48322

Telephone: 248.394.0000 Ext.

734.564.3833

Email: cary@greystonebel.com

AGENT: Greystone Bel Real Estate Advisors

By: *Austin Hull*
Austin Hull

Its: Associate Director
254

Cell:

Date: 7/20/2020

Address: 7035 Orchard Lake Road Suite 150
West Bloomfield, MI 48322

Telephone: 248.394.0000 Ext.

734.812.4508

Email: austin@greystonebel.com

# Exhibit 12

DARYl to Jamieson
Re Send offer to purchase
Mich Title INsurance Agency
Title Search

Pg 1 of 12

February 8, 2023

Mr. Dennis Clyde Maynard, Manager
J&M Investment Holdings, LLC
2222 W. Grand Blvd, Suite A
Okemos, MI 48864

Sent Via Email to: den_is2c@yahoo.com

RE: Manor Ridge Apartments, 680 Welsh Blvd., Vassar, MI 48768

Dear Mr. Maynard,

Pursuant to the offer to purchase the above referenced property, I am hereby notifying you
that I rescind my Offer to Purchase due to the Commercial Real Estate Broker's Lien as
listed in the Title Search prepared by Michigan Title Insurance Agency, Inc.

I do hereby request a refund of my earnest deposit in the amount of $10,000.00 and all fees
expended for said title search $1,050.00.

Thank you,

Daryl Jamieson
8964 Inkster Road
Romulus, MI 48174
(731-) 231-0738

Pg 1 of 12

# MICHIGAN TITLE INSURANCE AGENCY, INC.

9333 Telegraph Road, Suite 100
Taylor, Michigan 48180
Phone (313) 291-2323   FAX (313) 291-0064
www.michigantitle.com



*Notice: This document is only a summary of reminders of items needed for a successful closing. In no way does this summary reflect insurability or have any bearing on the provided Title Commitment or subsequent Final Title Policies. It is very important that all parties review the Title Commitment. Many closing delays can be prevented by reviewing the Title Commitment and notifying us of any issues.*

**Closing Date: Not scheduled**

**File Number: 32-300146**
**Property Address: 690 WELSH BLVD., VASSAR, MI  48768**
**Issued: 02/06/2023**

**IMPORTANT CLOSING ITEMS:**

**PLEASE CONTACT MUNICIPALITY <u>PRIOR TO CLOSING</u> FOR ANY REQUIREMENTS REGARDING CERTIFICATE OF OCCUPANCY.**

<u>**MORTGAGE(S) TO BE PAID IN FULL AND DISCHARGED:**</u>

Mortgage for the sum of $375,000.00, executed by J&M Investment Holdings, LLC, a Michigan Limited Liability Company to JPMorgan Chase Bank, NA, dated November 9, 2011 and recorded November 28, 2011 in Liber 1235, Page 1028.
> **Record proper discharge of the above mortgage or it will be shown on the final policy.**

<u>**LIENS TO BE PAID IN FULL AND RELEASED:**</u>

Claim of Commercial Real Estate Broker's Lien in favor of Greystone Bel Real Estate Advisors in the amount of $102,000.00, recorded January 15, 2021 in Liber 1467, Page 1367.
> **Record original release of the above lien.**

<u>**TITLE REQUIREMENTS:**</u>

Interest of HM Investment Holdings, LLC as set forth on the application.
> **Submit to the Company documentation how above party has interest in the chain of title.**

<u>**TITLE REQUIREMENTS:**</u>

> **Submit a copy of the Articles of Organization duly filed with the Michigan Department of Licensing and Regulatory Affairs establishing J&M Investment Holdings, LLC, a Wyoming Limited Liability Company. This commitment may be subject to such further requirements as deemed necessary after examination of the aforementioned document.**

*Page 1 of 2*

Submit a copy of the Operating Agreement of J&M Investment Holdings, LLC, a Wyoming Limited Liability Company, together with all amendments thereto. This commitment may be subject to such further requirements as deemed necessary after examination of the aforementioned document.

*JS*

# MICHIGAN TITLE INSURANCE AGENCY, INC.
9333 Telegraph Road, Suite 100
Taylor, MI 48180
313-291-2323

*Underwritten by:* **Stewart Title Guaranty Company**

| | |
|---|---|
| **Invoice Date:** 2/6/2023 | **File Number:** 32-300146 |
| **Owner Policy Liability:** **$1,785,823.00** | **Loan Policy Liability:** **$1,785,823.00** |
| **FOR SALE BY OWNER** | TO BE FURNISHED |
| | **Attention:** |

**Property Address: 690 WELSH BLVD., VASSAR, MI 48768**

| Description | Amount |
|---|---|
| Commercial Rate | $2,686.00 |
| Simultaneous Loan | $671.50 |

PAYMENTS/CREDITS

| - | - |
|---|---|
| | |

| | Total | $3,357.50 |
|---|---|---|

**If we do not close this transaction there is a $35.00 Recording Processing Fee due with any Recordings we submit.**

*Thank you, We Appreciate Your Business!*

Pg 4 of 12

*Transaction Identification Data for reference only:*

Issuing Office File Number: 32-300146
Property Address: 690 Welsh Blvd., Vassar, MI 48768
Loan ID Number:
**Issuing Agent: Michigan Title Insurance Agency, Inc.**
Issuing Office: 9333 Telegraph Road, Suite 100, Taylor, MI 48180
Issuing Office Phone: 313-291-2323
ALTA Universal ID: 1045778
Issue Date: 02/06/2023

**COMMITMENT FOR TITLE INSURANCE**
Issued by
*Stewart Title Guaranty Company*

**SCHEDULE A**

1. Commitment Date: **January 31, 2023 at 12:00 am**

2. Policy to be issued:

   (a) **2006 ALTA® Owner's Policy**

   Proposed Insured: **Daryl Jamieson**

   Proposed Policy Amount: **$1,785,823.00**

   (b) **2006 ALTA® Loan Policy**

   Proposed Insured: **TO BE FURNISHED**

   Proposed Policy Amount: **$1,785,823.00**

3. The estate or interest in the land described or referred to in this Commitment is **Fee Simple**.

4. The Title is, at the Commitment Date, vested in:

   **J&M Investment Holdings, LLC, a Wyoming Limited Liability Company**

5. The land referred to in this Commitment is described as follows:

   **SEE SCHEDULE C ATTACHED HERETO AND MADE A PART HEREOF**

**MICHIGAN TITLE INSURANCE AGENCY, INC.**

*Richard S. Smith*

_____

**Richard S. Smith, Authorized Signatory**

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions.*
**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All others are prohibited.

Page 1

File No: **32-300146**

## COMMITMENT FOR TITLE INSURANCE

Issued by

### *Stewart Title Guaranty Company*

#### SCHEDULE B
#### Requirements

All of the following Requirements must be met:

1. The Proposed Insured must notify the Company in writing of the name of any party not referred to in this Commitment who will obtain an interest in the Land or who will make a loan on the Land. The Company may then make additional Requirements or Exceptions.

2. Pay the agreed amount for the estate or interest to be insured.

3. Pay the premiums, fees, and charges for the Policy to the Company.

4. Documents satisfactory to the Company that convey the Title or create the Mortgage to be insured, or both, must be properly authorized, executed, delivered, and recorded in the Public Records.

5. Pay unpaid taxes and assessments unless shown as paid.

6. Notice: Due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

7. **The Company has no liability under this commitment until an endorsement is issued stating the amount and the names of the proposed insured. Once the proper amount and names are provided, the Company reserves the right to make additional requirements and/or exceptions.**

8. **Interest of HM Investment Holdings, LLC as set forth on the application.**
   **Submit to the Company documentation how above party has interest in the chain of title.**

9. **Submit to the Company satisfactory evidence that the property to be insured herein is not subject to either a Commercial or Industrial Facility Tax as established under Act 198 of Public Acts of 1974 or Act 255 of Public Acts of 1978. Should either tax apply, submit evidence satisfactory to the Company that all such taxes have been paid.**

10. **Submit a copy of the Articles of Organization duly filed with the Michigan Department of Licensing and Regulatory Affairs establishing J&M Investment Holdings, LLC, a Wyoming Limited Liability Company. This commitment may be subject to such further requirements as deemed necessary after examination of the aforementioned document.**

11. **Submit a copy of the Operating Agreement of J&M Investment Holdings, LLC, a Wyoming Limited Liability Company, together with all amendments thereto. This commitment may be subject to such further requirements as deemed necessary after examination of the aforementioned document.**

12. **Record Deed from J&M Investment Holdings, LLC, a Wyoming Limited Liability Company to Daryl Jamieson.**

13. **Record Mortgage executed by Daryl Jamieson to proposed lender.**

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions.*
**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All others are prohibited.

File No: **32-300146**

14. **Claim of Commercial Real Estate Broker's Lien in favor of Greystone Bel Real Estate Advisors in the amount of $102,000.00, recorded January 15, 2021 in** <u>Liber 1467, Page 1367</u>.
Record original release of the above lien.

15. **Mortgage for the sum of $375,000.00, executed by J&M Investment Holdings, LLC, a Michigan Limited Liability Company to JPMorgan Chase Bank, NA, dated November 9, 2011 and recorded November 28, 2011 in** <u>Liber 1235, Page 1028</u>.
Record proper discharge of the above mortgage or it will be shown on the final policy.

16. **TAXES: Parcel Identification Number: 79-051-500-501-0200-00**
**Prior years paid through 2022**
**2022 Winter Tax: $6,469.25 - Paid (includes $83.16 for Moore Drain)**
**2022 Summer Tax: $6,417.68 - Paid (includes $50.00 for Fire Svc Assesm, and $20.05 for Ambulance)**
**Special Assessments: None**
**Principal Residence Exemption: 0%**

THE AMOUNTS SHOWN MAY NOT INCLUDE COLLECTION FEES, PENALTIES, OR INTEREST, IF ANY.

NOTE: A current tax bill setting forth fees, interest, and penalties, if any, should be obtained from local taxing authorities prior to closing. No liability is assumed by the company for any tax increase occasioned by retroactive revaluation change in land usage or loss of Principal Residence Exemption (f/k/a Homestead Exemption) status for the insured premises.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions.*
**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All others are prohibited.

File No: **32-300146**

### SCHEDULE B, PART II
### Exceptions

THIS COMMITMENT DOES NOT REPUBLISH ANY COVENANT, CONDITION, RESTRICTION, OR LIMITATION CONTAINED IN ANY DOCUMENT REFERRED TO IN THIS COMMITMENT TO THE EXTENT THAT THE SPECIFIC COVENANT, CONDITION, RESTRICTION, OR LIMITATION VIOLATES STATE OR FEDERAL LAW BASED ON RACE, COLOR, RELIGION, SEX, SEXUAL ORIENTATION, GENDER IDENTITY, HANDICAP, FAMILIAL STATUS, OR NATIONAL ORIGIN.

The Policy will not insure against loss or damage resulting from the terms and provisions of any lease or easement identified in Schedule A, and will include the following Exceptions unless cleared to the satisfaction of the Company:

1.  Any defect, lien, encumbrance, adverse claim, or other matter that appears for the first time in the Public Records or is created, attaches, or is disclosed between the Commitment Date and the date on which all of the Schedule B, Part I-Requirements are met.

2.  Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or by making inquiry of persons in possession of the Land.

3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title including discrepancies, conflicts in boundary lines, shortage in area, or any other facts that would be disclosed by an accurate and complete land survey of the Land, and that are not shown in the Public Records.

5.  Any lien or right to lien for services, labor or material imposed by law and not shown by the Public Records.

6.  Taxes and assessments not due and payable at Commitment Date.

7.  The lien, if any, of real estate taxes, assessments, blight, civil fines, false alarm fees, sewer and/or water charges, not yet due and payable or that are not shown as existing liens in the records of any taxing authority that levies taxes or assessments on real property or in the Public Records; including the lien for taxes, assessments, and/or water and sewer charges, which may be added to the tax rolls or tax bill after the effective date. The Company assumes no liability for the tax increases occasioned by the retroactive revaluation or changes in the Land usage or loss of any homestead exemption status for the insured premises.

8.  Neither this policy nor any endorsement covers any loss or damage arising from any allegation that the use of the property lacks compliance with covenants, conditions or restrictions or federal or state law or ordinance regarding the cultivation, production or sale of hemp or hemp products.

9.  **Mortgage for the sum of $375,000.00, executed by J&M Investment Holdings, LLC, a Michigan Limited Liability Company to JPMorgan Chase Bank, NA, dated November 9, 2011 and recorded November 28, 2011 in Liber 1235, Page 1028.**

10. **Claim of Commercial Real Estate Broker's Lien in favor of Greystone Bel Real Estate Advisors in the amount of $102,000.00, recorded January 15, 2021 in Liber 1467, Page 1367.**

11. **Easements over the land as shown on the plat.**

12. **Terms, conditions and provisions of Release of Right of Way as disclosed by instrument recorded in Liber 595, Page 49.**

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions.*
**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All others are prohibited.



File No: **32-300146**

13. **Minerals of whatsoever kind, subsurface and surface substances, including but not limited to coal, lignite, oil, gas, uranium, clay, rock, sand and gravel in, on, under and that may be produced from the Land, together with all rights, privileges, and immunities relating thereto, whether or not appearing in the Public Records or listed in Schedule B. The Company makes no representation as to the present ownership of any such interests. There may be leases, grants, exceptions or reservations of interests that are not listed.**

14. **Loss, damage or injury resulting from the failure to properly comply with all inspection and occupancy requirements as required by the local municipality.**

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions.*
**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All others are prohibited.

Page 5

File No: **32-300146**

## SCHEDULE C

(The Tax Parcel Identification Number(s) and Property Address(es) are provided solely for informational purposes, without warranty as to accuracy or completeness and are not hereby insured)

The land referred to in this commitment is located in the **TOWNSHIP OF VASSAR, COUNTY OF TUSCOLA,** State of Michigan, is described as follows:

**That part of Lots 2 and 3, Block 1 of T. North's Addition to the Village (now City) of Vassar, according to the plat recorded in Liber 1 of Plats, Page 20, now being Page 21A, described as: Beginning at the Northeast corner of said Lot 2, Block 1, being the Northwest corner of Merritt's Addition according to the Plat recorded in Liber 1, Page 43, thence South 00 degrees 39 minutes 21 seconds West, 615.96 feet along the East line of said Lot 2, being the West line of said Merritt's Addition to the Northeast corner of Welsh Estates, according to the Plat recorded in Liber 3, Page 17;**
**thence North 90 degrees 00 minutes 00 seconds West, 191.94 feet along the North line of said Welch Estates;**
**thence North 00 degrees 33 minutes 30 seconds East, 80.00 feet along the East line of Lot 18 of said Welsh Estates to the Northeast corner of said Lot 18;**
**thence North 90 degrees 00 minutes 00 seconds West, 128.00 feet along the North line of Lots 18 and 17 of said Welsh Estates;**
**thence North 00 degrees 40 minutes 41 seconds East, 529.86 feet to a point on the North line of said Block 1 of T. North's Addition;**
**thence North 88 degrees 54 minutes 24 seconds East, 320.00 feet along the North line of said Block 1 to the point of beginning.**

**Tax Identification Number(s): 051-500-501-0200-00**

Commonly Known As: 690 WELSH BLVD., VASSAR, MI 48768

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions.*
**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All others are prohibited.



File No: **32-300146**

~~stewart title~~

## ALTA COMMITMENT FOR TITLE INSURANCE

ISSUED BY
STEWART TITLE GUARANTY COMPANY

NOTICE

IMPORTANT-READ CAREFULLY: THIS COMMITMENT IS AN OFFER TO ISSUE ONE OR MORE TITLE INSURANCE POLICIES. ALL CLAIMS OR REMEDIES SOUGHT AGAINST THE COMPANY INVOLVING THE CONTENT OF THIS COMMITMENT OR THE POLICY MUST BE BASED SOLELY IN CONTRACT.

THIS COMMITMENT IS NOT AN ABSTRACT OF TITLE, REPORT OF THE CONDITION OF THE TITLE, LEGAL OPINION, OPINION OF TITLE, OR OTHER REPRESENTATION OF THE STATUS OF TITLE, THE PROCEDURES USED BY THE COMPANY TO DETERMINE INSURABILITY OF THE TITLE, INCLUDING ANY SEARCH AND EXAMINATION, ARE PROPRIETARY TO THE COMPANY, WERE PERFORMED SOLELY FOR THE BENEFIT OF THE COMPANY, AND CREATE NO EXTRACONTRACTUAL LIABILITY TO ANY PERSON, INCLUDING A PROPOSED INSURED.

THE COMPANY'S OBLIGATION UNDER THIS COMMITMENT IS TO ISSUE A POLICY TO A PROPOSED INSURED IDENTIFIED IN SCHEDULE A IN ACCORDANCE WITH THE TERMS AND PROVISIONS OF THIS COMMITMENT. THE COMPANY HAS NO LIABILITY OR OBLIGATION INVOLVING THE CONTENT OF THIS COMMITMENT TO ANY OTHER PERSON.

COMMITMENT TO ISSUE POLICY

Subject to the Notice; Schedule B, Part I – Requirements; Schedule B, Part II – Exceptions; and the Commitment Conditions, STEWART TITLE GUARANTY COMPANY, a Texas corporation (the "Company"), commits to issue the Policy according to the terms and provisions of this Commitment. This Commitment is effective as of the Commitment Date shown in Schedule A for each Policy described in Schedule A, only when the Company has entered in Schedule A both the specified dollar amount as the Proposed Policy Amount and the name of the Proposed Insured.

If all of the Schedule B, Part I – Requirements have not been met within 6 months after the Commitment Date, this Commitment terminates and the Company's liability and obligation end.

Countersigned by:

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions.*
**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All others are prohibited.

Page 7

File No: **32-300146**



Matt Morris
President and CEO

Denise Carraux
Secretary

Richard S. Smith bs

_____

**Richard S. Smith, Authorized Signatory**
Michigan Title Insurance Agency, Inc.
9333 Telegraph Road, Suite 100
Taylor, MI 48180
313-291-2323   313-291-0064
For purposes of this form the "Stewart Title" logo featured above is the represented logo for the underwriter, Stewart Title Guaranty
Company.

This page is only a part of a 2016 ALTA® Commitment for Title Insurance.  This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions.
**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All others are prohibited.

# Exhibit 13

11 February23 pdf Affidavit of Criminal report
13 February 2023 SAP-H.R.963 Forced Arbitration

Pg 1 of 3



**EXECUTIVE OFFICE OF THE PRESIDENT**
OFFICE OF MANAGEMENT AND BUDGET
WASHINGTON, D.C. 20503

March 15, 2022
(House Rules)

# STATEMENT OF ADMINISTRATION POLICY

### H.R. 963 – Forced Arbitration Injustice Repeal (FAIR) Act of 2022
(Rep. Johnson, D-GA, and 203 cosponsors)

The Administration strongly supports passage of H.R. 963, the Forced Arbitration Injustice Repeal (FAIR) Act of 2022. This legislation would prohibit two common practices – the use of pre-dispute arbitration clauses that force arbitration of future employment, consumer, antitrust, or civil rights disputes; and waivers of the right to bring joint, class, or collective actions. These practices deprive workers and consumers of the ability to have their day in court when companies violate their rights, including their rights to minimum wage and overtime pay, workplaces free from discrimination, and the fair value of products and services they buy. The Administration is deeply committed to expanding access to justice and believes that no worker, business that wants to compete, or consumer should have to give up their access to the courts before a dispute has arisen.

Not only do these clauses prevent consumers and workers from having a fair shot at justice, they also hide companies' wrongdoing from other consumers who are choosing between products and workers who are deciding between jobs. Eliminating the use of these clauses would increase incentives for employers to prevent and remedy problems in the workplace and in their business practices.

The FAIR Act would make great strides to advance worker and consumer rights and expand access to justice – two critical priorities of the Administration. The Administration looks forward to working with Congress as the FAIR Act proceeds through the legislative process.

* * * * * * *

Recorded 2/10/2023 2:45:22 PM
Tuscola County Register of Deeds
Receipt: 69055 Fee:$30.00
L- 01525 P- 01415 - 01416 (2)

RECEIVED IN TUSCOLA COUNTY
FEBRUARY 10, 2023 02:22:05 PM

## *Affidavit of*
## *Legal Notice of Criminal activity*
### *by Greystone Bel Real Estate Advisors, Cary Belovicz and*
### *Demand for Action by the Witness & Victim*

10 February 2023 - DCM

This legal notice serves as notice to the principal is notice to the agent. Notice to the agent is notice to the principal. The people of the County of Tuscola have been put on Notice by way of this open and public forum.

i, Dennis Clyde Maynard, Owner/ Member of J&M Investment Holdings, LLC here in after known as your affiant, and victim and witness of crimes, whose mailing address is J&M Investment Holdings, LLC Northwest registered agent service INC, 2222 W. Grand River Ave Ste A Okemos MI.48864, states that Affiant is of legal age, competent to testify, has personal firsthand knowledge and believes that the truths and facts herein are true, correct, complete, certain, not misleading.

**Your affiant believes that because he knows of these facts which appear to be criminal activity it would**

**be unlawful for your Affiant not to report these facts to the proper authorities by way of this affidavit.**

1. On or about January 15, 2021 recorded in Tuscola County Register of Deeds in Liber 1467 Page 1367-1373, Greystone Bel Real Estate Advisors filed a claim of Commercial Real Estate Broker's and Cary Belovicz, managing partner filed a Lien within the Tuscola County Recorder's Register of Deeds, # 41264.

2. The alleged Lien was filed without lawful authority violating due process rights.

3. The alleged Lien was filed by the use of a void real estate contract.

4. The alleged Lien has not damaged your affiant by violating due process rights, constitutionally protected rights and statutory laws.

*Criminal Report – Page 1 of 2*

5. The alleged Lien has now clouded the Title of property located at 690 Welsh Blvd, Vassar, Tuscola County Michigan.

6. The alleged Lien has now interfered with the purchase of the property located at 690 Welsh Blvd, Vassar, Tuscola County Michigan.

7. The alleged Lien has cost your affiant over one million dollars in losses.

Further affiant saith naught.

Dennis Clyde Maynard, J&M Investment Holdings, LLC

Victim and Witness.

Before me a notary in the State of Michigan, Tuscola County, appeared the affiant, Dennis Clyde Maynard and after making himself known to this notary by virtue of pictured identification and after swearing to the truthfulness of his statements made in the criminal report herein, and being apprised of the penalties of perjury, did place his signature hereon in my presence on this 10th day of February, 2023.

Dawn M Tomlinson
Notary
Dawn M Tomlinson

**DAWN M TOMLINSON**
Notary Public - Michigan
Tuscola County
My Comm. Expires 01-03-2028

Seal: _____

Prepared by:
Dennis Clyde Maynard, J&M Holdings, LLC
Northwest registered agent service INC
2222 W. Grand River Ave Ste A
Okemos MI. 48864

*Criminal Report – Page 2 of 2*

# Exhibit 14

24 NOVEMBER2023
AFFIDAVIT OF TRUTH



Pg 1 of 10

### AFFIDAVIT OF TRUTH
**Dennis Clyde Maynard**

Western / Southern District of Ohio
United States District Court
100 East Fifth Street
Cincinnati, Ohio 45202

Dennis C. Maynard
6545 Market Ave.
North, STE 100,
North Canton, OH,
44721, USA

**HONORABLE JUDGE:**
**MAGISTRATE:**
Case No._____

    Plaintiff,

V.

BEL REAL ESTATE ADVISORS, LLC.
GREYSTONE BEL REAL ESTATE ADVISORS
7035 Orchard Lake Road, Suite 150
West Bloomfield, MI 48322
Phone: 248. 394. 0000
Fax 734.471.0200
www.greystonebel.com

Cary Belovicz,
7035 Orchard Lake Road, Suite 150
West Bloomfield, MI 48322
cary@greystonebel.com | o: 248.394.0000 x252 m: 734.564.3833
Fax 734.471.0200

American Arbitration Association
Northeast Case Management Center
1301 Atwood Avenue, Suite 211 RI 02919

John and Jane Doe's (1-20) "Names Unknown"
Unknown Agents, Employees, Investors, Associations
and/or Independent Contractors of Defendants

Against all defendant's oaths, fiduciary responsibility bonds
And all insurance providers and companies.

    Defendants, jointly
    and severally.

Date 11/24/ 2023

I, Dennis Clyde Maynard, having first been duly affirmed according to law and having first-hand knowledge of the facts herein and being competent to testify, do affirm that the facts herein are stated by me and are true, correct, complete and not misleading according to the best of my knowledge.

1. I, Dennis Clyde Maynard, contracted with Cary Belovicz and Austin Hull, to get me the most

2. money possible, for the sell of my property Manor Ridge Apartments.

3. I, Dennis Clyde Maynard, informed Cary Belovicz and Austin Hull, before I signed the listing contract, that I was not a businessman and that I was ignorant concerning Real Estate Investing, and any type of investing in general.

4. I, Dennis Clyde Maynard, informed Cary Belovicz and Austin Hull, I would be selling Manor Ridge Apartments, by proforma sells only.

5. I, Dennis Clyde Maynard, informed Cary Belovicz and Austin Hull, of the financial hardship I endured during the last three years do to my late Father's sickness, and for that reason, I would not be providing any documents to buyers or Banking Institutions.

6. Before I, Dennis Clyde Maynard, Cary Belovicz and Austin Hull signed the listing contract, we all agreed I would not be providing any documents to buyers or Banking Institutes,

7. Austin Hull, removed from the original listing contract, the clause where seller will provide financial documents.

8. Before signing the listing contract Austin Hull, briefly went over the listing contract with me.

9. Austin hall, informed me on big listing contracts like this one, the broker was allowed to be on the back end of the sells deal.

10. I, Dennis Clyde Maynard, informed Austin Hull, that I was not comfortable with Cary

Belovicz being in on the back end of the sell, do to the fact that it would create a conflict of interest.

11. I, Dennis Clyde Maynard, informed Austin Hull, that Reactors are allowed to represent both seller and buyer, however they must have sellers best interest first.

12. I, Dennis Clyde Maynard, informed Austin Hull, that as long as Cary Belovicz had my best interest first, and strive to get me the most money for my property, that he could be on the back end of the deal.

13. I, Dennis Clyde Maynard, informed Austin Hull, that I did not care who bought Manor Ridge Apartments, as long as I got the utmost value from the sell of my property.

14. At no time did Cary Belovicz, or Austin Hull, ever informed me, that they did not have my best interest first.

15. Cary Belovicz breached our listing contract by asking for financial and rent documents.

16. Cary Belovicz breached our listing contract by placing a broker's lien without first going to arbitration.

17. Cary Belovicz breached our listing contract by filing a lawsuit in civil court without first going to arbitration.

18. Cary Belovicz breached our listing contract by seeking a judgment against me in civil court without first going to arbitration.

19. Cary Belovicz, lied to me by saying that LG Capital, LLC., LOI was a full price offer.

20. Cary Belovicz, informed me that he knew Steve Lyman very well.

21. Cary Belovicz, informed me that he and Steve Lyman had done business together in the past.

22. Cary Belovicz, informed me that he and Steve Lyman had purchased an apartment building together in Marquette, Michigan .

23. Cary Belovicz, lied to me, when he told me that he knew Steve Lyman very well, and

that if I did not accept Steve Lyman's offer of one million, two hundred fifty thousand

dollars, ($1,250,000 dollars), Steve Lyman would walk away from the table, and never

come back.

24. Both Cary Belovicz, and Austin Hull asked me the value of my property Manor Ridge

apartments, I informed them both, that I did not know however, in 2015 the bank had

appraised my property at one million five hundred thousand dollars, ($1,500,000

dollars).

25. I, Dennis Clyde Maynard, informed Cary Belovicz that I could order a commercial

appraisal for Manor Ridge Apartments to determine the value of the apartments.

26. Cary Belovicz advised me not to order an appraisal for Manor Ridge Apartments, stating

it was not necessary and the buyer would still need to get a new appraisal.

27. I trusted Cary Belovicz that he had my best interest, so I took his advice.

28. Cary Belovicz and Austin Hull, requested my profit and loss statement, I informed them

that I did not know how to do a profit and loss statement, so Austin Hull sent me an

example via email.

29. Cary Belovicz ran the numbers, and priced my property Manor Ridge Apartments at

one million, two hundred fifty thousand dollars, ($1,250,000 dollars).

30. Cary Belovicz, said we should list My property Manor Ridge Apartments at one million,

two hundred seventy five thousand dollars, ( $ 1, 275,000 dollars), we did.

31. I questioned Cary Belovicz, why the devalue of my property from 2015, I never

received an acceptable answer.

32. I, Dennis Clyde Maynard, requested Cary Belovicz e-mail me the formula and numbers

he used in valuing Manor Ridge Apartments, he did.

33. I, Dennis Clyde Maynard, questioned Cary Belovicz why he was using fictitious

expenses when he had my actual expenses from the profit and losses statement I had

sent him.

34. Cary Belovicz, replied that the banks would require me to use his expense numbers.

35. I could not believe anything Cary Belovicz was telling me, none of it was making sense to me so I went and spoke to a few Commercial Bankers, and Realtors.

36. I, Dennis Clyde Maynard, asked several Commercial Banks how to valuating my property Manor Ridge Apartments, and if they would require me to use Cary Belovicz's fictitious expenses or my actual expenses?

37. Each Commercial Banker replied that they would use my actual expenses, and further stated that they would require three years of financial documentation to make a loan.

38. I, Dennis Clyde Maynard, used Cary Belovicz financial valuation formula, with my actual expenses, then asked each Commercial Banker, if they would agree that this was the true value of my property.

39. No Commercial Banker would confirm the value, they all replied either that the math looked right or that they were not a licensed Commercial Real Estate appraiser and by law could not place a value on the property.

40. I asked the same question to each Commercial Realtor and received the same answer.

41. Cary Belovicz, broke the law by practicing Commercial Real Estate Appraising, by placing a value on my property Manor Ridge Apartments.

42. I received a LOI from Steve Lyman, with some terms and conditions for consideration to purchase Manor Ridge Apartments. I countered with some terms and conditions of my own requesting (1) Steve Lyman pay some money towards the Realtor fee.

43. Carey Belovicz sent me an email stating he was confused because in my counter-offer to LG Capital's LOI, I requested the buyer to pay some Realtor fees. Cary Belovicz stated that in our contract the seller was to pay Realtor fees.

44. I stated to Cary Belovicz, yes there is confusion, you are supposed to be working for me

not for the buyer, and I contracted with you to get me the most money for my property.

45. I stated to Cary Belovicz, that if I can negotiate with the buyer to pay one dollar of Realtor fees that this is one more dollar in my pocket and he should be happy for me.

46. I further stated that our listing agreement is between Cary Belovicz and me, and not the buyer, for him not to worry, if I could not negotiate the buyer to pay any of the Realtor's fee, I would be paying them all, per our listing contract.

47. After this conversation, Cary Belovicz disclosed our contract to Steve Lyman.

48. Non of Steve Lyman's, previous LOI, mentioned seller paying Realtor fees, After my conversation with Cary Belovicz, Steve Lyman changed his LOI to include seller shall pay Realtor fees per listing contract, proving Steve Lyman and Cary Belovicz were working together against me.

49. Cary Belovicz breached our contract by not having my interest first.

50. Cary Belovicz never brought me a full offer.

51. Cary Belovicz never brought me a purchase agreement.

52. Cary Belovicz never sold Manor Ridge Apartments.

53. I Dennis Clyde Maynard, and my listing contract between myself and Cary Belovicz and Austin Hull expired without Manor Ridge Apartments selling.

54. My attorney Edward Gudeman, after looking over the lawsuit Cary Belovicz filled against me in Tuscola County Civil Court informed me, by saying the following:

    a) That he could get the lien removed.

    b) "The Claim was bogus," filed with a Non-Binding LOI, with some terms and conditions for consideration to purchase Manor Ridge Apartments.

    c) Cary Belovicz, first breached the listing contract by asking for financial paper work from me.

    d) Cary Belovicz breached the listing contract the second time by lying about a LOI,

being a full price offer.

e) Cary Belovicz breached the listing contract the third time, by placing a Broker Lien without first going to arbitration.

f) Cary Belovicz breached the listing contract the fourth time by filing a civil lawsuit without first going to arbitration.

g) Cary Belovicz breached the listing contract the fifth time by seeking a judgment in a Civil Court without first going to arbitration.

55. Cary Belovicz told me that he had been to Arbitration before and that it was no problem.

56. When Cary Belovicz made his first claim against me in AAA arbitration he lied and stated that he never breached the contract.

57. When Cary Belovicz made his first claim against me in AAA arbitration he lied and stated he did not have ties with Steve Lyman.

58. The fact that Cary Belovicz had a civil court case against me, before AAA arbitration is proof that Cary Belovicz lied and breached our listing contract, by not going to AAA arbitration first.

59. I requested information from Cary Belovicz, to explain in detail who the players were in LG Capitol trying to purchasing Manor Ridge Apartments, the second question was a financial question.

60. Cary Belovicz avoided answering my question to who all the players were in his email, by having Steve Lyman answer my financial question instead and neglecting to answer the question regarding to who all the players were in purchasing my property Manor Ridge Apartments.

61. Cary Belovicz, being a professional Broker could have easily answered my financial question

62. Cary Belovicz, never answered my question of who the buyers of my property were.

63. Cary Belovicz and Steve Lyman were using deceit in negotiating the purchase price of my property Manor Ridge Apartments.

64. I. Dennis Clyde Maynard, informed Cary Belovicz our asking price was low and asked him to sit down and go over the numbers together.

65. Cary Belovicz, refused to sit down together and go over the numbers, stating he had a signed listing contract and he was going to hold me to it.

66. If we would have raised the asking price for Manor Ridge Apartments, Cary Belovicz would have made a higher Realtor commission.

67. I, Dennis Clyde Maynard never agreed to Arbitration.

68. I, Dennis Clyde Maynard never Consented to arbitration.

69. I, Dennis Clyde Maynard, have always challenged arbitration.

70. I, Dennis Clyde Maynard, have always stated the Arbitration Board did not have subject matter or jurisdiction over the issues at hand.

71. I, Dennis Clyde Maynard, have always stated that for a Jurisdiction Challenge, it has to be decided by a Civil Court with Judicial powers.

72. I, Dennis Clyde Maynard, have always stated that the arbitration board has no judicial power to decide a Jurisdiction Challenge.

73. I, Dennis Clyde Maynard, have always requested a trial by jury, under Common Law.

74. I, Dennis Clyde Maynard, have always stated that my issues at hand per this AAA Case Number: 01-22-0004-7535 are criminal in nature.

75. I, Dennis Clyde Maynard, have filed a claim of criminal activity concerning this case number 01-22-0004-7535, with the State of Michigan Attorney General's office.

76. I, Dennis Clyde Maynard, previously challenged the Jurisdiction of the AAA Board on December 16th 2022 with Julie Molly and Philip Jaffe.

77. AAA, Philip Jaffe and Cary Belovicz are aware that Dennis Clyde Maynard legal team

has left him alone, on the battlefield, in the middle of the battle, without legal

representation .

78. I, Dennis Clyde Maynard,have always stated that I am not an attorney and I am ignorant

in legal matters.

79. I, Dennis Clyde Maynard has always claimed in the listing sell agreement contract,

concerning Case Number 01-22 - 0004 - 7535 , Per the Arbitration clause there is no

language prohibiting a party from seeking they're Constitutional right for a trial by Jury.

80. I, Dennis Clyde Maynard has always demanded  my Constitutional right for a trial by

Jury.

81. I, Dennis Clyde Maynard has previously requested to be Immediately released from

AAA's Arbitration Board.

82. AAA's Arbitration Board, Philip Jaffe and Cary Belovicz continues to hold and

wrongfully imprison Dennis Clyde Maynard, in AAA's Arbitration court.

83. AAA continues to deny  Dennis Clyde Maynard of his constitutional right for a trial by

Jury.

84. AAA is aware I, Dennis Clyde Maynard has no legal representation that will zealously

defend me in AAA's arbitration court.

85. After my legal team abandoned me in AAA's jurisdiction. Julie Molloy ask me (Dennis

Clyde Maynard) how my case paper work  should read.

86. I, Dennis Clyde Maynard informed Julie Molloy, my case paper work should read, including not limited to :.

a) I did not Volunteer to be in AAA"s Arbitration Court .

b) I do not consent to be in AAA's Arbitration Court.

c) my case was criminal.

d) I was challenging AAA's subject matter, jurisdiction over my Case.

e) I, Dennis Clyde Maynard was requesting that my AAA's case file reflect all my email Correspondence with Julie Molloy, Philip Jaffe and AAA's board along with my whole civil case file that Philip Jaffe had filed against me in Tuscola County Civil Court.

State of _____Ohio_____

County of _____hamilton_____

BEFORE ME, personally appeared, Dennis Clyde Maynard, who being by me first duly affirm, executed the foregoing in my presence and stated to me, under penalties of perjury, that the facts alleged therein are true and correct according to the best of his own personal knowledge.

_____ Date 28 Nov 2023
Dennis Clyde Maynard

Notary Public. _____Sinjin Collins_____ Date 11-28-23
My commission expires: _____08-29-27_____

Pg 10 of 10

# Exhibit 15

11-24-2023 Affidavit of Truth



### AFFIDAVIT OF TRUTH
**Dennis Clyde Maynard**

Western / Southern District of Ohio
United States District Court
100 East Fifth Street
Cincinnati, Ohio 45202

Dennis C. Maynard
6545 Market Ave.
North, STE 100,
North Canton, OH,
44721, USA

**HONORABLE JUDGE:**
**MAGISTRATE:**
Case No._____

     Plaintiff,

V.

BEL REAL ESTATE ADVISORS, LLC.
GREYSTONE BEL REAL ESTATE ADVISORS
7035 Orchard Lake Road, Suite 150
West Bloomfield, MI 48322
Phone: 248. 394. 0000
Fax 734.471.0200
www.greystonebel.com

Cary Belovicz,
7035 Orchard Lake Road, Suite 150
West Bloomfield, MI 48322
cary@greystonebel.com | o: 248.394.0000 x252 m: 734.564.3833
Fax 734.471.0200

American Arbitration Association
Northeast Case Management Center
1301 Atwood Avenue, Suite 211 RI 02919

John and Jane Doe's (1-20) "Names Unknown"
Unknown Agents, Employees, Investors, Associations
and/or Independent Contractors of Defendants

Against all defendant's oaths, fiduciary responsibility bonds
And all insurance providers and companies.

     Defendants, jointly
     and severally.

Date 11/24/ 2023

I, Dennis Clyde Maynard, having first been duly affirm according to law, having first-hand knowledge of the facts herein, and being competent to testify, do affirm that the facts herein are stated by me and are true, correct, complete and not misleading according to the best of my knowledge.

1. I, Dennis Clyde Maynard, never agreed to Arbitration.

2. I, Dennis Clyde Maynard, never Consented to arbitration.

3. I, Dennis Clyde Maynard, has always challenged arbitration.

4. I, Dennis Clyde Maynard, has always stated the Arbitration Board did not have subject matter or jurisdiction over the issues at hand.

5. I, Dennis Clyde Maynard, has always stated that for a Jurisdiction Challenge, it has to be decided by a Court with Judicial powers.

6. I, Dennis Clyde Maynard, has always stated that the arbitration board has no judicial power to decide a Jurisdiction Challenge.

7. I, Dennis Clyde Maynard, has always requested a trial by jury, under Common Law.

8. I, Dennis Clyde Maynard, has always stated that his issues at hand per this AAA Case Number: 01-22-0004-7535 are criminal in nature.

9. I, Dennis Clyde Maynard, has filed a claim of criminal activity concerning this case number 01-22-0004-7535, with the State of Michigan Attorney General's office.

10. I, Dennis Clyde Maynard, previously challenged the Jurisdiction of the AAA Board on December 16th 2022 with Julie Molly and Philip Jaffe.

11. AAA, Philip Jaffe are aware that Dennis Clyde Maynard legal team has left him alone, on the battlefield, in the middle of the battle, without legal representation .

12. I, Dennis Clyde Maynard, has always stated I am not an attorney and I am ignorant in legal matters.

Pg 2 0f 6

13. I, Dennis Clyde Maynard, has always claimed in the listing sell agreement contract, concerning Case Number 01-22 - 0004 - 7535 , Per the Arbitration clause there is no language prohibiting a party from seeking they're Constitutional right for a trial by Jury.

14. I, Dennis Clyde Maynard, has always demanded  my Constitutional right for a trial by Jury.

15. I, Dennis Clyde Maynard, has previously requested to be Immediately released from AAA's Arbitration Board.

16. AAA's Arbitration Board continues to hold and wrongfully imprison Dennis Clyde Maynard, in AAA's Arbitration court.

17. AAA continues to deny  Dennis Clyde Maynard of his constitutional right for a trial by Jury.

18. AAA is aware I, Dennis Clyde Maynard, have no legal representation that will zealously defend me in AAA's arbitration court.

19. After my legal team abandoned me in AAA's jurisdiction. Julie Molloy ask me (Dennis Clyde Maynard) how my case paper work  should read.

20. I, Dennis Clyde Maynard, informed Julie Molloy, my case paper work should read, including not limited to :.

21.        a) I did not Volunteer to be in AAA"s  Arbitration Court .

22.        b) I do not consent to be in AAA's  Arbitration Court.

23.        c) my case was criminal.

24.        d) I was challenging  AAA's subject matter, jurisdiction over my Case.

25.        e) I, Dennis Clyde Maynard, was requesting that my AAA's case file reflect all my email Correspondence with Julie Molloy, Philip Jaffe and AAA's  board along with my whole civil case file that Philip Jaffe had filed against me in Tuscola County Civil Court.

26. After asking me how my AAA"s case file should read, Julie Molloy  never fulfilled my wish.

Pg 3 0f 6

27. Julie Molloy, AAA's Arbitration Board by Initiating and asking me how I wanted my AAA's case file to read Implies:

28.        a) Julie Molloy, AAA's Arbitration Board Volunteered to make my AAA case file read according to my wishes.

29.        b) Julie Molloy, AAA's Arbitration Board had an obligation and responsibility to me to make my AAA's case file read according to my wishes.

30.        c) Julie Molloy, AAA's Arbitration Board had the power to me to make my AAA's case file read according to my wishes.

31.        d) I, Dennis Clyde Maynard, depended on Julie Molloy, AAA's Arbitration Board to make my AAA's case file read according to my wishes.

32.        e) A reasonable person would have expected Julie Molloy, AAA's Arbitration Board to make my AAA's case file read according to my wishes.

33. Julie Molloy, AAA's Arbitration Board breached their fiduciary duty to me by not making my AAA case file read according to my wishes.

34. Julie Molloy, AAA's Arbitration Board breached their Assumption of duty to me by not making my AAA case file read according to my wishes.

35. Collin Cegelka is an agent for AAA's Arbitration Board.

36. Collin Cegelka, asked me to submit paper work into my AAA's case file.

37. I, Dennis Clyde Maynard, informed Collin Cegelka, my AAA's case file was criminal and that I had filled a fraud case with the State of Michigan Attorney General office.

38. I, Dennis Clyde Maynard, Informed Collin Cegelka to the best of my knowledge AAA can not hear a criminal fraud case.

39. I, Dennis Clyde Maynard, and Collin Cegelka agreed (contracted), before I would submit any paper work into my AAA's case file he (Collin Cegelka) would check with Julie Molloy and AAA Board if they had subject matter, jurisdiction to hear a criminal fraud case, and report back to me.

40. Collin Cegelka, Julie Molloy and the AAA's Board never reported back to me whether or not AAA had subject matter and jurisdiction to hear a criminal fraud case.

41. By Collin Cegelka, Julie Molloy and AAA's Arbitration Board never reporting back to me whether or not AAA's Arbitration jurisdiction has subject matter and jurisdiction to hear my criminal fraud case they have: breached their contract, breached their Fiduciary duties, breached their Assumption of duties to me.

42. By Collin Cegelka, Julie Molloy and AAA's Arbitration Board breaching their contract with me, I, Dennis Clyde Maynard, concerning my case in the American Arbitration Association had/have no further legal obligation to file any paper work into my case that was filed by Philip Jaffe into the American Arbitration Association.

43. My case that was filed by Philip Jaffe into the American Arbitration Association was closed.

44. Philip Jaffe, AAA, continue to try and recontact with me, I do not Consent to recontact to AAA Arbitration.

45. Despite I, Dennis Clyde Maynard, Never: volunteering to arbitration, consenting to arbitration, a new open case file has been opened by Phillip Jaffe in AAA against me and my property J&M Investment Holdings, LLC.

46. I, Dennis Clyde Maynard, without my consenting someone from AAA or Gudeman & Associates, P.C., has been representing me by filing paper work on my behalf in AAA's new open case file.

Pg 5 0f 6

State of _____ Ohio _____

County of _____ hemilton _____

BEFORE ME, personally appeared Dennis Clyde Maynard who being by me first duly affirm, executed the foregoing in my presence and stated to me under penalties of perjury that the facts alleged therein are true and correct according to the best of his own personal knowledge.

_____ Date 28 Nov 2023
Dennis Clyde Maynard


Notary Public. _____ Sinjin Collins _____ Date 11-28-23

My commission expires: _____ 08-29-77 _____

SINJIN COLLINS - NOTARY PUBLIC
COMM EXP: AUG 29, 2027
STATE OF OHIO

Pg 6 0f 6

# Exhibit 16

16 DECEMBER 2022
CHALENGE ARBITRATION

Pg  1 of 3

ReplyReply AllForward DeleteSpam Actions Apply

den is2e a yahoo ... inbox

## RE: Greystone Bel Real Estate Advisors v. J & M Investment Holdings, LLC - Case 02-22-0004-7535

Dec 15 at 2:45 PM

PrintRaw message

**AAA Julie Molloy** juliemolloy a adr.org

To: Jon Silver jsilver a gudemanlaw.com ,dennis maynard den is2e a yahoo.com

Cc: AAA Julie Molloy juliemolloy a adr.org ,pjaff50@aol.com pjaff50 a aol.com

Thank you, Jon!

All the best and Happy Holidays and Happy New Year.

Mr. Maynard at this time can you please inform the AAA if you intend to retain counsel or if you will be proceeding Pro Se. Courtesy of a response is due on or before the end of the day **December 16, 2022.**

Collin Cegelka


To Julie, Collin, Philip, AAA Team Members

Good morning to all. It was morning when I started.

Concerning AAA Case number 01-22-0004-7535

Julie we spoke on the 15th December, 2022. You Informed me to:

First: deal with my Attorney relieving them of their direct duty to the arbitration board and my case, and to replace them with me. Which I have done, as your office is aware.

Second: send you emil, correcting errors on AAA's ARBITRATION ANSWERING STATEMENT AND COUNTERCLAIM OR JOINDER/CONSOLIDATION REQUEST. I took this to be the formal way of correcting the errors. If I need to fill out electronic form, please advise and I will.

Correcting the error's:

1) My counter Claim should read Criminal, not Commercial Civil.

2) The answer to the Claimant's demand's totally reads wrong. Julie on the 15th December, 2022, I told you the causes of action and criminal event's of my case, i.e. Abuse of the legal system, for personal profit, Practicing Commercial Appraising without a license. I believe there are more, however you only need one. Julie the verbiage I used to describe the crime, may not be the legal definition, which I can get for you if you need. However I do believe it describe's the Cause Of Action.

3) The question on: AAA's ARBITRATION ANSWERING STATEMENT AND COUNTERCLAIM OR JOINDER/CONSOLIDATION REQUEST.
In the box that read's: Please describe the qualification you seek for arbitrator(s) to be appointed to hear this dispute: First there is no Commercial Civil Dispute.

Pg 1 of 3

Julie, Collin, Philip, and AAA Team Members

I wish you all a Merry Christmas and a Happy New Year!!
wow can you believe it! 2023.
I will say a special blessing for all of you and your families.
Look for it.

Dennis

Foot note:
The principles necessary to decide this case are not new. They were set out by this Court over 25 years ago in a series of cases known as the _Steelworkers Trilogy: Steelworkers_ v. _American Mfg. Co., supra_; _Steelworkers_ v. _Warrior & Gulf Navigation Co., supra;_ and _Steelworkers_ v. _Enterprise Wheel & Car Corp.,_ 363 U. S. 593 (1960). These precepts have served the industrial relations community well, and have led to continued reliance on arbitration, rather than strikes or lockouts, as the preferred method of resolving disputes arising during the term of a collective-bargaining agreement. We see no reason either to question their continuing validity, or to eviscerate their meaning by creating an exception to their general applicability.

The first principle gleaned from the _Trilogy_ is that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." _Warrior & Gulf, supra,_ at 582; _American Mfg. Co., supra,_ at 570-571 (BRENNAN, J., concurring). This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration. _Gateway Coal Co._ v. _Mine Workers,_ 414 U. S. 368, 374 (1974).

The second rule, which follows inexorably from the first, is that the question of arbitrability — whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance — is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator. _Warrior & Gulf, supra,_ at 582-583. See _Operating Engineers_ v. _Flair Builders, Inc.,_ 406 U. S. 487, 491 (1972); _Atkinson_ v. _Sinclair Refining Co.,_ 370 U. S. 238, 241 (1962), overruled in part on other grounds, _Boys Markets, Inc._ v. _Retail Clerks,_ 398 U. S. 235 (1970). Accord, _Mitsubishi Motors Corp._ v. _Soler Chrysler-Plymouth, Inc.,_ 473 U. S. 614, 626 (1985).

pg 2 of 3

Second, Should read Criminal Law, **not** Arbitrator with experience in the areas of contract law and residential real estate transaction.

4)   The whole form is almost totally incorrect. Would need to be corrected.

5)   I never signed a contract with a arbitration cause, given my consent to AMERICAN ARBITRATION ASSOCIATION, to have subject matter and jurisdiction, and to rule over criminal causes of action.

6)   I never agreed to Mediation, nor do I consent to persue Mediation.

First Stand Alone  Question:

Does the AMERICAN ARBITRATION ASSOCIATION have Subject Matter and Jurisdiction to hear Criminal Cases? Please answer, Yes or No.

If no, why are we here? I ask or do I  Motion to Move the court to dismiss the case, and move it to the proper Court, without Prejudice. So that the Claimant and Respondent can seek Righteousness, Judgment, and Remedy. Along with any over payment to AAA, money I may have due me.

First Stand Alone Statement:

Concerning the contract between Greystone Bel Real Estate Advisors and J&M Investment Holdings, LLC. I'm challenging AMERICAN ARBITRATION ASSOCIATION, Jurisdiction solely based on the arbitration Clause in the contract. No reference, or consideration to a Commercial Dispute.  **Please see  Foot note at  bottom page.**

As  I previously stated I never signed or consented to a arbitration Clause allowing the AMERICAN ARBITRATION ASSOCIATION, to have Subject Matter, or Jurisdiction to rule over Criminal Cause of Action, i.e. offenses. Therefore I ask or I Motion to Move the court to dismiss the case, and move it to the proper Court, without Prejudice. So that the Claimant and Respondent can seek Righteousness, Judgment, and Remedy. Along with any over payment to AAA, money I may have due me.

Courtesy of a response is due on or before the end of the day **December 17, 2022.**

 Please see Attachment of my training schedule: I start back to training on the 15 December 2022 through 2 January 2023, that is my flight simulator training. There is a one day base meeting on the 9th January 2023, that you can not see on my schedule,
which I believe is part of my training, and new equipment. After the 9th January 2023, I will be totally free, that is if I don't have any problems in training. To pickup if there still is a need.

Per my conversation with Collin today the 16th December, 2022. This being the holiday season, everyone involved wanting to spend time with their family's. Stated not much would be getting done till sometime after New Year. Do to the fact I failed out of flight training once, because of dealing with these arbitration procedure's in the middle of my flight training. The fact I'am just starting flight training the second time. The fact it is the holiday season for you all, it is for me too but I'll be working. The fact not much would be getting done according to Collin. I'am asking for some mercy and grace from all. If a need still arises, I'am requesting a postponement till the 10th January, 2023 per the AAA Rule's R30,R41,R42. You can use the rule book or basic human kindness, mercy, and grace. I don't believe anyone here want's to hurt anyone. If this was to continue during my flight training it would jeopardize my job, ( I failed out once due to arbitration), hurt my family, potentially more financial loss to my employer. If a need should arise, I'am asking my request be approved.

Pg 3 of 3

# Exhibit 17

Civil Case file 19 January, 2022

Pg 1 — 77

11/29/2021

**JOHN BISHOP**
**Tuscola County Register of Deeds**
125 W. Lincoln Street, Suite 400
Caro, Michigan 48723
(989) 672-3840

## VISIT US ONLINE FOR COUNTY SERVICES @WWW.TUSCOLACOUNTY.ORG

To: _____     Fees returned: _____

## We regret that the document(s) you submitted is/are being returned without being recorded due to the following reasons:

___ Total value of the real property must be stated on the document or a valuation affidavit must be attached. [MCL 207.504, 207.525]

___ If the transfer is for consideration, the transfer tax must be paid, unless a valid exemption is stated on the document. [MCL 207.502, 207.511, 207.526, 207.533]

___ Fees or additional fees are required, i.e. $_____. Recording fees are $30.00 for each document, unlimited pages; $3.00 for each additional discharge or assignment liber and page; $3.00 for each additional liber and page to be indexed/posted. [MCL 600.2567]

___ THIS OFFICE WILL **NOT** FORWARD FUNDS/CHECKS FOR THE PAYMENT OF TAX CERTIFICATIONS OR REAL PROPERTY TAXES. PLEASE PAY DIRECTLY TO TREASURER'S OFFICE.

___ The county Treasurer's certificate that all taxes due have been paid for the preceding five years must appear on the document. [MCL211.135(1)(b)]

___ Signatures must be original; names must be typed or printed beneath signatures. [MCL 565.201(1)(a)]

___ No discrepancy may exist between names beneath the signatures and those in the acknowledgment. [MCL 565.201(1)(b)]

___ Addresses of the Grantee(s) are required. [MCL 565.201(1)(d)

___ To be recorded pages of the document must be: legible, in black ink, at least 10 point font, white 20 lb. paper, at least 8 ½" x 11" and no larger than 8 ½" x 14". The first page must have a blank 2 ½" top margin and ½" blank margins on the other sides and on all subsequent pages. [MCL 565.201(1)(e)] The first line of print on the first page must state the single recordable event being done. [MCL 565.201(1)(f) (ii)] The instrument purports to evidence more than one recordable event. [MCL 565.201(1)(f)(ii) or MCL 565.201(3)]

___ Name and address of the person who drafted the document is missing or invalid. [MCL 565.201(i)]

___ Court orders must affect or relate to the title of real property and be certified and sealed as a certified copy by the clerk of the court. [MCL 565.401, 565.411, 565.412]

___ A complete acknowledgment is required (including county and state , acknowledgment date, names of persons executing the document) (In addition, notary's signature, name of notary, notary statement re: state and county of commission, expiration statement and "Acting in the County of _____", if applicable). [MCL 565.47, 55.263(a), 55.287]

___ The _____ submitted for recording exhibits a social security number with more than 4 sequential digits. [MCL 565.201(g)]

___ The check you sent: ___Is not signed; ___Has an invalid date; ___Amount is not filled in; ___Is not payable for the correct amount; ___ Must show an account name and address; or ___Must be payable to the Register of Deeds.

___ The Certificate of Trust Existence does not meet recording requirements. [MCL 565.431, 565.434, or 700.7913]

___ A certified copy of the deceased joint owner's death certificate or other valid proof of death must be recorded as a separate document or if previously recorded in this county, must be referenced by liber and page on this document. [MCL 565.48]

___ A trust document presented for recording must be recorded as a separate document. [MCL 565.434]

___ An instrument, or a part thereof, in a language other than English must have an English translation attached to it. [MCL 565.201(1)(h)

___ The document should be recorded in the county where the real property is located.

___ The document must be dated.

___ A complete legal description of the real property is required, which includes the section, township and range, or plat name, block and lot.

___ Pages or attachments appear to be missing.

Recorded 1/15/2021  3:08:24 PM
Tuscola County  John Bishop
(Register of Deeds)
Receipt: 41264  Fee:$30.00

L- 01467  P- 01367 - 01373 (7)

RECEIVED IN TUSCOLA COUNTY
JANUARY 15, 2021 10:17:31 AM

## CLAIM OF COMMERCIAL REAL ESTATE BROKER'S LIEN

GREYSTONE BEL REAL ESTATE ADVISORS, *Broker-Claimant*

The Broker-Claimant named above, whose real estate license number is

___6505405934___, and whose business address is 7035 Orchard Lake Road,

Ste. 150, West Bloomfield, MI. 48322, Oakland County, MI., claims a commercial

real estate broker's lien under section 4 of the commercial real estate broker's lien act

and states:

1. The real property ("property") against which the lien is claimed is located at 690

Welsh Blvd., Vassar, MI. 48768, Tuscola County, MI., and is legally described on

**Exhibit A** attached to this claim. The record owner ("owner") of the property is J & M

Investment Holdings, LLC.

2. On July 20, 2020, the broker-claimant entered into a written agreement with the owner

obligating the owner to pay a commission to the broker-claimant. A legible copy of the

agreement is attached as **Exhibit B**.

3. The broker-claimant, by its agents, provided services for the owner and is in compliance

with the broker-claimant's obligations under the written agreement referred to in paragraph 2.

-1-

4. The amount of the commission or fee to which the broker-claimant is entitled is $102,000.00.

5. The broker-claimant now claims a lien on the property and all improvements to the property and against all persons interested in the property in the amount of $102,000.00.

6. The information contained in this Claim of Lien is true and accurate to the best knowledge of the signer.

Greystone Bel Real Estate Advisors

Dated: January /4 , 2021

By: Cary Belovicz, Managing Partner

Signed and sworn to before me in Oakland County, MI
on _Januarc 14 , 2021

**Notary Public**

Oakland County, MI
My commission expires: May 8, 2024

MICHELE K BRIKHO
Notary Public – State of Michigan
County of Oakland
My Commission Expires May 8, 2024
Acting in the County of Oakland

Prepared by: Philip A. Jaffe, Attorney
PO Box 250902
W. Bloomfield, MI. 48325
(248) 224-1463

Return to: Greystone Bel Real Estate
7035 Orchard Lake Rd. Ste 150
W Bloomfield, MI. 48322

-2-



**EXHIBIT A**

*(Legal Description)*

*T1 In R8e Com At Ne Cor Of Lot 2 Blk 1 (Sd Pt Also Nw Cor Of Merritt's Add) Th S 00 Deg 39' 21" Cor Of Welsh Est, Th N 90 Deg W 191.94 Ft, Th N 00 Deg 33' 30" Est, Th N 90 Deg W 128 Ft, Th N 00 Deg 40' 41" 529.86 Ft To N Ln Of Blk 1, Th N 88 Deg 54' 24" 32 0 Ft To Pob. (Part Of Lots 2 & 3 Blk 1) T North's Add To City Of Vassar*

**EXHIBIT B**
*(Listing Agreement)*

DocuSign Envelope ID: F89EBDEF-6B08-4C07-BB0B-92EC89C67787



GREYSTONE BEL REAL ESTATE ADVISORS
7035 Orchard Lake Road, Suite 150
West Bloomfield, MI 48322
Phone: 248.394.0000
Fax: 734.471.0200
www.greystonebel.com

In consideration of the services to be rendered by Greystone Bel Real Estate Advisors ("Agent"), the undersigned ("Seller"), hereby employs Agent ("Listing Agreement") for the period of time beginning July 20th, 2020 and terminating at midnight on January 20th, 2021 (the "Termination Date"), subject to extension as provided in Paragraph 6 below, to obtain a purchaser ("Buyer") for the following real property, together with all improvements thereon, located in the City of **Vassar**, County of **Tuscola,** State of **Michigan,** more particularly described as follows (the "Property"):

**Manor Ridge Apartments - 32 units**
**690 Welsh Blvd, Vassar, MI 48768**

1. **AUTHORITY TO OFFER.** Seller hereby grants to Agent the sole, exclusive and irrevocable right and authority to offer the Property for sale during the Term defined herein for, and agrees to accept, an offer containing the following sales price (the "Purchase Price") upon the terms and conditions set forth in this Listing Agreement:

    PURCHASE PRICE: $1,275,000 **Terms:** cash or new mortgage.

2. **INSPECTION OF PREMISES:** It is agreed that Agent and/or its representatives shall have the right to enter upon the Property and all portions thereof (including exterior and interior) with prospective Buyers at all reasonable times.

3. **COMMISSION TO BE PAID:** If Agent, Seller, or anyone else obtains a Buyer for the Property during the Term of this Listing Agreement at the Purchase Price and on the terms stated in this Listing Agreement, or at any other price or terms acceptable to Seller, then Seller agrees to pay to Agent a commission (the "Commission") equal to **8%** of the Purchase Price if the property sells on or before the first 60 days of the executed listing agreement, the real estate commission will be reduced to 7% of the purchase price if the property sells in between the 61st day and 120th day of the executed listing agreement, if the property sells after 120 days of the executed listing agreement the real estate commission will be reduced to 6% of the sales price for the remainder of this lisitng agreement. Commission shall be due and payable whether the property be sold or whether the property be withdrawn from sale, or made unmarketable by Seller. Following the expiration of the Term in the event that (a) said Buyer, either directly or indirectly, is a person or entity with whom Agent negotiated in earnest for such sale or who received complete marketing information and (b) Agent has furnished Seller with a written list stating the names of any persons described in item (a) above by certified mail, facsimile, email transmission, or in person no later than ten business days after the expiration of the Term. Seller expressly acknowledges its obligation to pay Agent's Commission upon any such closing regardless whether any cash is available through escrow or otherwise in connection with said closing. During the Term, Seller agrees to refer to Agent all inquiries Seller may receive concerning the Property.

4. **PURCHASE DEPOSIT:** In the event a prospective Buyer's deposit is forfeited and retained by Seller fifty percent of the retained deposit shall be paid to Agent and fifty percent to Seller; provided, however, that Agent's share under this Paragraph 7 shall not exceed the amount of the Commission that would have been due to Agent pursuant to Paragraph 5 of this Listing Agreement

DocuSign Envelope ID: F89EBDEF-6B08-4C07-BB0B-92EC89C67787

if the sale had closed. Payment to Agent under this paragraph 7 is independent of any Commission due to Agent pursuant to Paragraph 5 of this Listing Agreement.

5. **TITLE:** Seller represents and warrants to Agent that fee simple indefeasible title to the property is fully vested in Seller, that Seller is duly authorized and empowered (either in Seller's individual capacity or on behalf of others) to execute this Listing Agreement, and that execution hereof will not result in any breach of, or constitute a default under, any contract or other agreement to which Seller is a party.

6. **PERSONAL PROPERTY:** Fixtures, furniture, furnishings and other personal property belonging to Seller located on the Property are included in the total purchase price and will be conveyed to Buyer free and clear of all liens and encumbrances by Bill of Sale at the close of escrow. Seller agrees to provide Buyer with a full and complete inventory of all personal property within five (5) business days after mutual acceptance of a written purchase agreement for the Property.

7. **DUE DILIGENCE:** Agent agrees to use due diligence in attempting to sell the Property.

8. **MARKETING:** In its efforts to best represent Seller, Agent reserves the right to cooperate or not cooperate with other licensed real estate agents. Agent reserves this right in an effort to minimize unnecessary disclosures and unauthorized showings of the Property. If Agent does elect to cooperate with other agents, it will work only with those agents that Agent believes are qualified to best represent the interests of Seller. Seller acknowledges that Agent may make marketing material created for Seller's property available for access from Agent's internet website (www.greystonebel.com).

9. **OTHER BROKERS/AGENTS:** Seller agrees that in the event there is any broker/agent involved in the disposition of the Property other than Agent, then said other broker/agent shall not be Seller's agent nor the sub-agent of Agent but shall be the agent, if at all, of the Buyer.

10. **ADDENDA:** Any addendum attached hereto and either signed or initialed by the parties shall be deemed a part hereof. This Listing Agreement, including addenda if any, expresses the entire agreement of the parties. There are no other understandings, oral or written, which in any manner alter or enlarge its terms. This Listing Agreement supersedes any and all agreements between the parties hereto regarding the Property which are prior in time to this Listing Agreement.

11. **ASSIGNMENT:** This Listing Agreement may not be assigned by Agent without the express written consent of Seller.

12. **ARBITRATION:** If a controversy arises with respect to the subject matter of this Listing Agreement or any provision hereof, Seller and Agent agree that such controversy shall be settled by final, binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.



DocuSign Envelope ID: F89EBDEF-6B08-4C07-BB0B-92EC89C67787

WE, THE UNDERSIGNED, HAVE READ THIS DOCUMENT, UNDERSTAND THE SAME AND AGREE TO THE ABOVE TERMS AND CONDITIONS THEREOF, AND ACKNOWLEDGE RECEIPT THEREOF. THIS DOCUMENT CONSTITUTES A LEGAL CONTRACT. BEFORE EXECUTION HEREIN, *IT IS RECOMMENDED THAT SELLER HAVE THIS DOCUMENT REVIEWED BY AN ATTORNEY OF SELLER'S SELECTION.*

SELLER: J & M Investment Holdings Llc

By: *Dennis C Maynard*
　　A3C2D06E2B59499...
　　Dennis Maynard

Date: 7/20/2020

Address: 690　Welsh　Blvd,　Vassar,　MI　48768

Telephone: 304-617-1509
Email: den_is2c@yahoo.com


AGENT: Greystone Bel Real Estate Advisors

By: *Cary Belovicz*
　　Cary Scott Belovicz

Its: Managing Partner
252

Cell:　　　　　　734.564.3833

Date: 7/20/2020

Address: 7035 Orchard Lake Road Suite 150
West Bloomfield, MI 48322
Telephone:　　　　248.394.0000　　　　Ext.

Email: cary@greystonebel.com


AGENT: Greystone Bel Real Estate Advisors

By: *Austin Hull*
　　AE40C25AA1FA470...
　　Austin Hull

Its: Associate Director
254

Cell:　　　　　　734.812.4508

Date: 7/20/2020

Address: 7035 Orchard Lake Road Suite 150
West Bloomfield, MI 48322
Telephone:　　　　248.394.0000　　　　Ext.

Email: austin@greystonebel.com



**7 DAY NOTICE**
REC'D 5/17/22
DUE 5/24/22
RETURN TO CLERK

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF TUSCOLA

GREYSTONE BEL REAL ESTATE ADVISORS,

    Plaintiff,

Vs.

J & M INVESTMENT HOLDINGS, LLC.,

    Defendant.

No. 22-31854-CK
Hon. Amy Grace Gierhart

/

Philip A. Jaffe P25997
Attorney for Plaintiff
PO Box 250902
W Bloomfield, MI 48325
(248) 224-1463
Pjaff50@aol.com

Edward J. Gudeman P14454
Attorney for Defendant
1026 W Eleven Mile Rd
Royal Oak, MI 48067
(248) 546-2800
ecf@gudemanlaw.com

                        /

FILED
JODI FETTING
TUSCOLA COUNTY CLERK
2022 MAY 27 A 8: 50

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY DISPOSITION

At a session of the court held on   **05-26-22**

Present Hon. **Amy Grace Gierhart**
              Circuit Court Judge

    Upon hearing being held on Defendant's Motion for Summary Disposition on May 11, 2022, with both parties present;

    IT IS ORDERED that Defendant's Motion for Summary Disposition is granted pursuant to MCR 2.116(C)(7), with the court finding that their dispute is subject to an enforceable agreement to arbitrate.

    IT IS FURTHER ORDERED, that this case is dismissed without prejudice, the parties ordered to arbitrate their dispute and making no ruling regarding the merit or grounds of the claim.

Pg 9



2022031854CK

05/27/2022
Tuscola County Clerk
Jodi Fetting

_____
Circuit Court Judge

2062 Pa 10

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF TUSCOLA

**7 DAY NOTICE**

**REC'D** 5/17/22

**DUE** 5/24/22

**RETURN TO CLERK**

GREYSTONE BEL REAL ESTATE ADVISORS,

    Plaintiff,

Vs.

No. 22-31854-CK
Hon. Amy Grace Gierhart

J & M INVESTMENT HOLDINGS, LLC.,

    Defendant.

_____/

Philip A. Jaffe P25997
Attorney for Plaintiff
PO Box 250902
W Bloomfield, MI 48325
(248) 224-1463
Pjaff50@aol.com

Edward J. Gudeman P14454
Attorney for Defendant
1026 W Eleven Mile Rd
Royal Oak, MI 48067
(248) 546-2800
ecf@gudemanlaw.com

_____/

**NOTICE OF PRESENTMENT OF ORDER UNDER
THE SEVEN DAY RULE PURSUANT TO MCR 2.602(B)(3)**

    The attached proposed Order Granting Defendant's Motion for Summary Disposition against

Plaintiff, Greystone Bel Real Estate Advisors, in the absence of written objection being

filed within seven (7) days, please submit the Order to the Court for entry and provide the

undersigned counsel with true copies of same.

Dated: May 17, 2022

                              _____
                              Philip A. Jaffe P25997
                              Attorney for Plaintiff
                              P.O. Box 250902
                              W. Bloomfield, MI. 48325
                              (248) 224-1463
                              Pjaff50@aol.com



2022031854CK

05/20/2022
Tuscola County Clerk
Jodi Fetting

## PROOF OF SERVICE

The undersigned certifies that on May 17, 2022, he served Notice of Presentment of Order, Proposed Order Granting Defendant's Motion for Summary Disposition and Proof of Service upon Defendant counsel herein by use of email to Edward J Gudeman, Attorney for Defendant at ecf@gudemanlaw.com and Jon Silver, Attorney for Defendant at jsilver@gudemanlaw.com and by regular mail to their office address at 1026 W Eleven Mile Rd, Royal Oak, MI 48067.

/s/ Philip A. Jaffe

Philip A. Jaffe P25997

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF TUSCOLA

GREYSTONE BEL REAL ESTATE ADVISORS,

     Plaintiff,

Vs.

No. 22-31854-CK
Hon. Amy Grace Gierhart

J & M INVESTMENT HOLDINGS, LLC.,

     Defendant.

_____/

Philip A. Jaffe P25997
Attorney for Plaintiff
PO Box 250902
W Bloomfield, MI 48325
(248) 224-1463
Pjaff50@aol.com

Edward J. Gudeman P14454
Attorney for Defendant
1026 W Eleven Mile Rd
Royal Oak, MI 48067
(248) 546-2800
ecf@gudemanlaw.com

_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY DISPOSITION**

At a session of the court held on _____

Present Hon. _____
                              Circuit Court Judge

Upon hearing being held on Defendant's Motion for Summary Disposition on May 11,

2022, with both parties present;

IT IS ORDERED that Defendant's Motion for Summary Disposition is granted pursuant

to MCR 2.116(C)(7), with the court finding that their dispute is subject to an enforceable

agreement to arbitrate.

IT IS FURTHER ORDERED, that this case is dismissed without prejudice, the parties

ordered to arbitrate their dispute and making no ruling regarding the merit or grounds of the

claim.

_____

Circuit Court Judge



| STATE OF MICHIGAN<br>TUSCOLA COUNTY<br>TRIAL COURTS | REQUEST TO APPEAR<br>BY ZOOM OR TELEPHONE<br>AND ORDER GRANTING/DENYING | FILE NUMBER<br>22- 31854-CK<br>emailed 5-9-22 |
|---|---|---|

( ) People of the State of Michigan    v    Defendant/Respondent

(X) Greystone Bel Real      J'M Investment Holdings, LLC
Estate Advisors

( X) Civil    ( ) Criminal

( ) Probate   In the matter of: _____

I, _Philip A Jaffe_ _____ (name) request to appear by ( ) telephone or
by (X) Zoom for the hearing scheduled on _May 11, 2022_ at _9:30 AM_
in (X) Circuit Court ( ) District Court ( ) Family Court ( ) Probate Court ( ) Referee hearing

for the following reasons (please state specifically the reasons for this request to appear):
_My travel distance is 160 miles Round Trip and Could be_
_more conveniently handled via a Zoom Hearing._

I declare that the above statements are true to the best of my knowledge.

Dated: _May 5, 2022_ _____

_P Llg A9lh P23599_
Signature of petitioner

### ORDER

The request to appear by: ( ) telephone (X) Zoom is:

(X) Granted.
    (X) The petitioner must place the telephone call or Zoom in on or before the time scheduled for
    court. Telephone number is _____ with a meeting ID#/Zoom ID# _396964 9101_

( ) Denied.

Dated: _5-9-22_ _____

_Donald a Teeple_
Judge/Referee     **DONALD A. TEEPLE**
                                 **P24452**

Return this form to the proper Court. It is your responsibility to place the call by telephone or Zoom.
MCR 2.402 and MCR 2.407 control in this matter. The request must be provided to the Court at least 7 days
before the hearing. Further, the party wanting to appear by telephone/Zoom must serve a copy of this
request on the other party, unless good cause is shown.



1

2022031854CK

2022-05-05 10:53        Guderman & Associate 12486920355 >> 9896722169              P 2/2

| STATE OF MICHIGAN | REQUEST TO APPEAR | FILE NUMBER |
|---|---|---|
| TUSCOLA COUNTY | BY ZOOM OR TELEPHONE | 22- F7854-CK |
| TRIAL COURTS | AND ORDER GRANTING/DENYING | emailed 5-9-22 |

( ) People of the State of Michigan          v          Defendant/Respondent
(X) Greystone Rel Real                        J & M Investments Holdings, LLC
    Estate Advisors

   (X) Civil      ( ) Criminal

( ) Probate  In the matter of: _____

I, Edward J. Gudeman _____ (name)  request to appear by ( ) telephone or
by (X) Zoom for the hearing scheduled on ___May 11, 2022___ at __9:30 am__
in (X) Circuit Court  ( ) District Court  ( ) Family Court  ( ) Probate Court  ( ) Referee hearing

for the following reasons (please state specifically the reasons for this request to appear):
Counsel for both parties has agreed to appear via Zoom plue to
their distance from the Court, Mr. Jupte will also be filing
a request to appear by Zoom.

I declare that the above statements are true to the best of my knowledge.

Dated: 5/5/2022                                           _____
                                                          Signature of petitioner

### ORDER

The request to appear by:  ( ) telephone   (X) Zoom is:

(X)  Granted.
     (X) The petitioner must place the telephone call or Zoom in on or before the time scheduled for
     court. Telephone number is _____ with a meeting ID#/Zoom ID# 3969649101

( )  Denied.

Dated: 5-9-22 _____          _____
                                       Judge/Referee  DONALD A TEEPLE
                                                       P24402

Return this form to the proper Court. It is your responsibility to place the call by telephone or Zoom.
MCR 2.402 and MCR 2.407 control in this matter. The request must be provided to the Court at least 7 days
before the hearing. Further, the party wanting to appear by telephone/Zoom must serve a copy of this
request on the other party, unless good cause is shown.


2022031854CK

05/10/2022
Tuscola County Clerk
Jodi Fetting

Approved SCAO

JIS CODE POM

| STATE OF MICHIGAN<br>JUDICIAL DISTRICT<br>54th   JUDICIAL CIRCUIT<br>COUNTY PROBATE | PROOF OF MAILING | CASE NO<br>22-31854-CK |
|---|---|---|

| Court address | Court telephone no |
|---|---|
| Tuscola County Courthouse, 440 N State Street, Caro, Michigan 48723 | (989) 673-3330 |

| Plaintiff(s)<br>GREYSTONE BEL REAL ESTATE ADVISORS | v | Defendant(s)<br>J & M INVESTMENT HOLDINGS, LLC |
|---|---|---|

☐ Juvenile   In the matter of _____

☐ Probate   In the matter of _____

On the date below I sent by first-class mail a copy of   Substitution of Attorney

_____

_____

_____

to   List names and addresses

Edward J Gudeman
1026 W 11 Mile Road, Suite A
Royal Oak, MI 48067

Philip A Jaffe, Attorney for Plaintiff
P O Box 250902
West Bloomfield, MI 48325

2022 MAY -5 P 3: 10
TUSCOLA COUNTY CLERK
JODI FETTING
FILED

I declare that the statements above are true to the best of my information, knowledge, and belief

May 5, 2022
Date

Signature   Holly A. Davis

Holly A Davis
Name (type or print)

MC 302

2022031854CK

05/05/2022 MCR 2 107(C)(3) (D)
Tuscola County Clerk
Jodi Fetting



Approved, SCAO

Original - Court
1st copy - Plaintiff
2nd copy - Defendant

| STATE OF MICHIGAN | | |
|---|---|---|
| | JUDICIAL DISTRICT | SUBSTITUTION OF ATTORNEY |
| 54th | JUDICIAL CIRCUIT | |
| | COUNTY PROBATE | |

**CASE NO.**
22-31854-CK

**Court address**

Tuscola County Courthouse, 440 N. State Street, Caro, Michigan 48723

**Court telephone no.**
(989) 673-3330

| Plaintiff/Petitioner name, address, and telephone no. | | Defendant/Respondent/Minor name, address, and telephone no. |
|---|---|---|
| GREYSTONE BEL REAL ESTATE ADVISORS | v | J & M INVESTMENT HOLDINGS, LLC |

☐ Probate   In the matter of _____

**NOTICE**

TO:  Clerk of the Court, all attorneys of record, and unrepresented parties:  Specify names and addresses

Philip A. Jaffe
Attorney for Plaintiff
P.O. Box 250902
West Bloomfield, MI 48325

I replace attorney  James R. Abbey _____ on behalf of  Defendant

_____ and request copies of all papers filed in this case after this date.

The date of the next scheduled hearing is May 11, 2022 _____ .
Date

| Date | Firm |
|---|---|
| *See Attached* | 1026 W. 11 Mile Road, Suite A |
| Signature | Address |
| Edward J. Gudeman         P14454 | Royal Oak, Michigan 48067        (248) 546-2800 |
| Name (type or print)      Bar no. | City, state, zip        Telephone no. |

I consent to the substitution of the above attorney in this case.

| Date | |
|---|---|
| *See Attached* | *James R. Abbey (signature)* |
| Client's signature | Withdrawing attorney's signature |
| Dennis Maynard, Member of J&M Investment Holdings, LLC | James R. Abbey        P37945 |
| Name (type or print) | Name (type or print)      Bar no. |
| | Abbey, Abbey & Thomas, PLLC |
| | Firm |
| | 121 W. Grant Street, Suite 3 |
| | Address |
| | Caro, Michigan 48723        (989) 673-7761 |
| | City, state, zip        Telephone no. |

**EX PARTE ORDER**

IT IS SO ORDERED.

05.03.22

_____ OF ATTORNEY

2022031854CK

Judge                        Bar no.

MCR 2.117

05/03/2022
Tuscola County Clerk
Jodi Fetting

DocuSign Envelope ID: 1BF3628D-AF55-4F0F-BC24-F9F2AF8B0985

Approved, SCAO

Original - Court
1st copy - Plaintiff
2nd copy - Defendant

| STATE OF MICHIGAN<br>JUDICIAL DISTRICT<br>54th   JUDICIAL CIRCUIT<br>COUNTY PROBATE | SUBSTITUTION OF ATTORNEY | CASE NO.<br>22-31854-CK |
|---|---|---|

**Court address**                                                                        **Court telephone no.**

Tuscola County Courthouse, 440 N. State Street, Caro, Michigan 48723       (989) 673-3330

| Plaintiff/Petitioner name, address, and telephone no.<br>GREYSTONE BEL REAL ESTATE ADVISORS | v | Defendant/Respondent/Minor name, address, and telephone no.<br>J & M INVESTMENT HOLDINGS, LLC |
|---|---|---|

☐ Probate   In the matter of _____

**NOTICE**

TO: Clerk of the Court, all attorneys of record, and unrepresented parties: Specify names and addresses

Philip A. Jaffe
Attorney for Plaintiff
P.O. Box 250902
West Bloomfield, MI 48325

I replace attorney  James R. Abbey _____ on behalf of  Defendant _____

_____ and request copies of all papers filed in this case after this date.

The date of the next scheduled hearing is May 11, 2022 _____ .
                                           Date

4/29/22
Date

| Signature | Firm<br>1026 W. 11 Mile Road, Suite A |
|---|---|
| Edward J. Gudeman      P14454 | Address<br>Royal Oak, Michigan 48067     (248) 546-2800 |
| Name (type or print)      Bar no. | City, state, zip                Telephone no. |

I consent to the substitution of the above attorney in this case.

4/29/2022
Date

—DocuSigned by:

| Client's signature<br>Dennis Maynard, Member of J&M Investment Holdings, LL(<br>Name (type or print) | Withdrawing attorney's signature<br>James R. Abbey           P37945 |
|---|---|
| | Name (type or print)       Bar no.<br>Abbey, Abbey & Thomas, PLLC |
| | Firm<br>121 W. Grant Street, Suite 3 |
| | Address<br>Caro, Michigan 48723     (989) 673-7761 |
| | City, state, zip          Telephone no. |

**EX PARTE ORDER**

**IT IS SO ORDERED.**

_____           _____
Date                            Judge                       Bar no.

MC 306 (3/15) **SUBSTITUTION OF ATTORNEY**                          MCR 2.117

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF TUSCOLA

GREYSTONE BEL REAL ESTATE ADVISORS,

     Plaintiff,

Vs.

J & M INVESTMENT HOLDINGS, LLC.,

     Defendant.

No. 22-31854-CK
Hon. Amy Grace Gierhart

_____/

Philip A. Jaffe P25997
Attorney for Plaintiff
PO Box 250902
W Bloomfield, MI 48325
(248) 224-1463
Pjaff50@aol.com

Edward J. Gudeman P14454
Attorney for Defendant
1026 W Eleven Mile Rd
Royal Oak, MI 48067
(248) 546-2800
ecf@gudemanlaw.com

_____/



## ANSWER TO DEFENDANT'S MOTION FOR SUMMARY DISPOSITION

The Plaintiff, Greystone Bel Real Estate Advisors, by their attorney, Philip A. Jaffe, in

Answer to Defendant's Motion Motion for Summary Disposition, brought pursuant to MCR

2.116(C)(8), requests denial of Defendant's motion for the reasons set forth in the attached Brief:

Dated: May 2, 2022

_____
Philip A. Jaffe P25997
Attorney for Defendant
PO Box 250902
W Bloomfield, MI 48325
(248) 224-1463
Pjaff50@aol.com

-1-


2022031854CK

05/03/2022
Tuscola County Clerk
Jodi Fetting

### BRIEF IN SUPPORT OF PLAINTIFF'S ANSWER TO DEFENDANT'S MOTION FOR SUMMARY DISPOSITION

#### FACTS

Plaintiff is a licensed real estate broker and Defendant is the owner of a 32 unit apartment building located in Vassar, MI. On July 20, 2020, Defendant listed the apartment building for sale with Plaintiff and the parties entered into a written exclusive Listing Agreement. **(Exhibit 1).** The Listing Agreement provided, in part, that the seller would accept an offer in the amount of $1,275,000.00 for the sale of the property and would pay the real estate broker a commission equal to 8% of the purchase price, if the property sells on or before the first 60 days of the Listing Agreement. Following execution of the Listing Agreement, Plaintiff began to immediately use its best efforts to market the property.

On August 18, 2020, Plaintiff received a "full price" executed Letter of Intent from a buyer (LG Capital, LLC), to purchase the apartment building from Defendant for the sum of $1,275,000.00 and immediately conveyed such offer to Defendant. **(Exhibit 2).**

Rather than agreeing to the terms as provided for, both in the Letter of Intent as well as the Listing Agreement, Defendant countered with terms contrary to the Listing Agreement, making the buyer responsible for the broker's commission and $50,000 in buyer's funds towards payment of Defendant's capital gains tax, or some $152,000.00 in additional costs to the buyer. **(Exhibit 3).**

As a result of Defendant's refusal to honor the terms of sale as contained in the Listing Agreement, the sale of the apartment building was not able to proceed, resulting in a lost commission to Plaintiff in the amount of $102,000.00.

-2-



Defendant brings this Motion for Summary Disposition pursuant to *MCR 2.116(C)(8)*,

arguing, in part, that Plaintiff's claim should be dismissed, as the Listing Agreement contains a

binding arbitration clause, which both parties agreed to. Defendant also argues dismissal on other

grounds that go to the merits of Plaintiff's claim, that a commission was not earned by Plaintiff,

as the property was never "sold".

### ARGUMENT

As correctly pointed out by Defendant, the Listing Agreement contains a paragraph

entitled ARBITRATION. **(see Exhibit 1 paragraph 12).** That paragraph provides as follows:

> If a controversy arises with respect to the subject matter of this
> Listing Agreement or any provision hereof, Seller and Agent agree
> that such controversy shall be settled by final, binding arbitration in
> accordance with the Commercial Arbitration Rules of the American
> Arbitration Association, and judgment upon award rendered by the
> Arbitrator(s) may be entered in any Court having jurisdiction thereof.

In Michigan, under the terms of the state's version of the Uniform Arbitration Act, MCL

691.1681 et seq., it is generally the trial judge who decides "whether an agreement to arbitrate

exists or a controversy is subject to an agreement to arbitrate." MCL 691.1686(2). If there is a

question over whether a dispute is subject to arbitration, a court will decide that issue, and the

court will "order the parties to arbitrate unless it finds that there is no enforceable agreement."

MCL 691.1687 (1)(b).

Although brought as a 2.116(C)(8) motion, Defendant's motion to dismiss based upon a

binding arbitration clause in the Listing Agreement, is really a 2.116(C)(7) motion, which states

that summary disposition is appropriate if a claim is barred because of "an agreement to

arbitrate."

-3-



Plaintiff, after having this issue brought to its attention in this motion, agrees that there is

"an agreement to arbitrate" in the Listing Agreement, that the language is broad enough to cover

the claim raised by Plaintiff, and that this matter should be dismissed without prejudice, with the

parties ordered to arbitrate their dispute.

**MCL 691.1687 Order to compel or stay arbitration,** states that:

(1) On Motion of a person showing an agreement to arbitrate and alleging another person's
refusal to arbitrate under the agreement, the court shall do both of the following:
(a) If the refusing party does not appear or does not oppose the motion, order the parties to
   arbitrate.

(4) The court shall not refuse to order arbitration because the claim subject to arbitration
lacks merit or grounds for the claim have not been established.

Plaintiff does not oppose this motion seeking dismissal because of a binding arbitration

clause in the Listing Agreement and requests that the court order the parties to arbitrate. To the

extent that the court orders arbitration, there is no need to further address Defendant's motion, as

it pertains solely to the merits and grounds of Plaintiff's claim.

### CONCLUSION

Plaintiff requests that the court grant Defendant's Motion to Dismiss, without prejudice,

and order the parties to arbitrate their dispute.

Dated: May 2, 2022

Philip A. Jaffe P25997
Attorney for Plaintiff
PO Box 250902
W Bloomfield, MI 48325
(248) 224-1463
Pjaff50@aol.com

# EXHIBIT 1



DocuSign Envelope ID: F89EBDEF-6B08-4C07-BB0B-92EC89C67787



GREYSTONE BEL REAL ESTATE ADVISORS
7035 Orchard Lake Road, Suite 150
West Bloomfield, MI 48322
Phone: 248.394.0000
Fax: 734.471.0200
www.greystonebei.com

In consideration of the services to be rendered by Greystone Bel Real Estate Advisors ("Agent"), the undersigned ("Seller"), hereby employs Agent ("Listing Agreement") for the period of time beginning July 20th, 2020 and terminating at midnight on January 20th, 2021 (the "Termination Date"), subject to extension as provided in Paragraph 6 below, to obtain a purchaser ("Buyer") for the following real property, together with all improvements thereon, located in the City of **Vassar**, County of **Tuscola**, State of **Michigan**, more particularly described as follows (the "Property"):

**Manor Ridge Apartments - 32 units**
**690 Welsh Blvd, Vassar, MI 48768**

1. **AUTHORITY TO OFFER.** Seller hereby grants to Agent the sole, exclusive and irrevocable right and authority to offer the Property for sale during the Term defined herein for, and agrees to accept, an offer containing the following sales price (the "Purchase Price") upon the terms and conditions set forth in this Listing Agreement:

   **PURCHASE PRICE: $1,275,000 Terms:** cash or new mortgage.

2. **INSPECTION OF PREMISES:** It is agreed that Agent and/or its representatives shall have the right to enter upon the Property and all portions thereof (including exterior and interior) with prospective Buyers at all reasonable times.

3. **COMMISSION TO BE PAID:** If Agent, Seller, or anyone else obtains a Buyer for the Property during the Term of this Listing Agreement at the Purchase Price and on the terms stated in this Listing Agreement, or at any other price or terms acceptable to Seller, then Seller agrees to pay to Agent a commission (the "Commission") equal to **8%** of the Purchase Price if the property sells on or before the first 60 days of the executed listing agreement, the real estate commission will be reduced to 7% of the purchase price if the property sells in between the 61st day and 120th day of the executed listing agreement, if the property sells after 120 days of the executed listing agreement the real estate commission will be reduced to 6% of the sales price for the remainder of this lisitng agreement. Commission shall be due and payable whether the property be sold or whether the property be withdrawn from sale, or made unmarketable by Seller. Following the expiration of the Term in the event that (a) said Buyer, either directly or indirectly, is a person or entity with whom Agent negotiated in earnest for such sale or who received complete marketing information and (b) Agent has furnished Seller with a written list stating the names of any persons described in item (a) above by certified mail, facsimile, email transmission, or in person no later than ten business days after the expiration of the Term. Seller expressly acknowledges its obligation to pay Agent's Commission upon any such closing regardless whether any cash is available through escrow or otherwise in connection with said closing. During the Term, Seller agrees to refer to Agent all inquiries Seller may receive concerning the Property.

4. **PURCHASE DEPOSIT:** In the event a prospective Buyer's deposit is forfeited and retained by Seller fifty percent of the retained deposit shall be paid to Agent and fifty percent to Seller; provided, however, that Agent's share under this Paragraph 7 shall not exceed the amount of the Commission that would have been due to Agent pursuant to Paragraph 5 of this Listing Agreement

DocuSign Envelope ID: F89EBDEF-6B08-4C07-BB0B-92EC89C67787

if the sale had closed. Payment to Agent under this paragraph 7 is independent of any Commission due to Agent pursuant to Paragraph 5 of this Listing Agreement.

5. **TITLE:** Seller represents and warrants to Agent that fee simple indefeasible title to the property is fully vested in Seller, that Seller is duly authorized and empowered (either in Seller's individual capacity or on behalf of others) to execute this Listing Agreement, and that execution hereof will not result in any breach of, or constitute a default under, any contract or other agreement to which Seller is a party.

6. **PERSONAL PROPERTY:** Fixtures, furniture, furnishings and other personal property belonging to Seller located on the Property are included in the total purchase price and will be conveyed to Buyer free and clear of all liens and encumbrances by Bill of Sale at the close of escrow. Seller agrees to provide Buyer with a full and complete inventory of all personal property within five (5) business days after mutual acceptance of a written purchase agreement for the Property.

7. **DUE DILIGENCE:** Agent agrees to use due diligence in attempting to sell the Property.

8. **MARKETING:** In its efforts to best represent Seller, Agent reserves the right to cooperate or not cooperate with other licensed real estate agents. Agent reserves this right in an effort to minimize unnecessary disclosures and unauthorized showings of the Property. If Agent does elect to cooperate with other agents, it will work only with those agents that Agent believes are qualified to best represent the interests of Seller. Seller acknowledges that Agent may make marketing material created for Seller's property available for access from Agent's internet website (www.greystonebel.com).

9. **OTHER BROKERS/AGENTS:** Seller agrees that in the event there is any broker/agent involved in the disposition of the Property other than Agent, then said other broker/agent shall not be Seller's agent nor the sub-agent of Agent but shall be the agent, if at all, of the Buyer.

10. **ADDENDA:** Any addendum attached hereto and either signed or initialed by the parties shall be deemed a part hereof. This Listing Agreement, including addenda if any, expresses the entire agreement of the parties. There are no other understandings, oral or written, which in any manner alter or enlarge its terms. This Listing Agreement supersedes any and all agreements between the parties hereto regarding the Property which are prior in time to this Listing Agreement.

11. **ASSIGNMENT:** This Listing Agreement may not be assigned by Agent without the express written consent of Seller.

12. **ARBITRATION:** If a controversy arises with respect to the subject matter of this Listing Agreement or any provision hereof, Seller and Agent agree that such controversy shall be settled by final, binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.



DocuSign Envelope ID: F89EBDEF-6B06-4C07-8B06-92EC69C07767

WE, THE UNDERSIGNED, HAVE READ THIS DOCUMENT, UNDERSTAND THE SAME AND AGREE TO THE ABOVE TERMS AND CONDITIONS THEREOF, AND ACKNOWLEDGE RECEIPT THEREOF. THIS DOCUMENT CONSTITUTES A LEGAL CONTRACT. BEFORE EXECUTION HEREIN, *IT IS RECOMMENDED THAT SELLER HAVE THIS DOCUMENT REVIEWED BY AN ATTORNEY OF SELLER'S SELECTION.*

SELLER: n/a 3J Investment Holdings Llc

By: *Dennis C Maynard*
Dennis Maynard

Address: 690    Welsh    Blvd,    Vassar,    MI    48768

Date: 7/20/2020

Telephone: 304-617-1509
Email: den_is2c@yahoo.com


AGENT: Greystone Bel Real Estate Advisors

By: *Cary Belovicz*
Cary Scott Belovicz

Address: 7035 Orchard Lake Road Suite 150
West Bloomfield, MI 48322

Its: Managing Partner
252

Telephone:              248.394.0000              Ext.

Cell:                    734.564.3833

Date: 7/20/2020

Email: cary@greystonebel.com


AGENT: Greystone Bel Real Estate Advisors

By: *Austin Hull*
AE40C25AA1FA470...
Austin Hull

Address: 7035 Orchard Lake Road Suite 150
West Bloomfield, MI 48322

Its: Associate Director
254

Telephone:              248.394.0000              Ext.

Cell:                    734.812.4508

Date: 7/20/2020

Email: austin@greystonebel.com



# EXHIBIT 2

<u>LETTER OF INTENT</u>

8/18/2020


‾‾‾‾‾‾‾
Greystone Bel Real Estate Advisors
7035 Orchard Lake Road Suite 150
West Bloomfield, MI 48322

       RE: Manor Ridge- 690 Welsh Blvd Vassar, MI 48768- 32 Units

Dear Cary:

This letter outlines some of the terms and provisions under which we (the "<u>Buyer</u>") would be willing to consider the purchase of the Apartments from the existing owner (the "<u>Seller</u>"). The terms are as follows:

1.   <u>Purchase Price</u>. The purchase price shall be $1,275,000

2.   <u>Earnest Money</u>. Within 5 days after the execution and delivery of a written purchase agreement (the "<u>Contract</u>"), the Buyer will deposit **$12,500**, which shall be held by the escrow agent named in the Contract in accordance with the terms thereof. Earnest Money deposit shall be non-refundable after removal of due diligence and financing period.

3.   <u>Due Diligence</u>. Buyer shall have 30 days from the date of the executed purchase agreement to conduct its due diligence. Seller will provide buyer will all property inspection reports in their possession pertaining to subject property.

4.   <u>Financing</u>. Buyer shall have 45 days from the expiration of the due diligence period to obtain adequate financing.

5.   <u>Closing</u>. Closing will take place 15 days after expiration of the financing period.

6.   <u>Expenses and Prorations</u>. Seller shall bear the following: its legal counsel's fees, transfer taxes and title commitment issuance costs and premiums. Buyer shall bear the following: its legal counsel's fees, and its due diligence expenses. Property taxes will be prorated for their respective period. Water bills, assessments, and other similar customary items shall be paid by seller at closing.

7.   <u>Contract</u>. Upon execution of this letter by the buyer, the buyer's attorney will prepare the initial draft of the Contract unless otherwise agreed upon.


Sincerely,

BUYER: LG Capital, LLC

By: Steve Lyman
Its: Managing Member
Date:  08/18/20

SELLER: Dennis Maynard

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

By:‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

Date:‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾



----- Forwarded Message -----
From: Cary Belovicz <cary@greystonebel.com>
To: dennis maynard <den_is2c@yahoo.com>
Cc: BUB / MANOR - RIDGE@OUTLOOK> COM <manor-ridge@outlook.com>; Paul Russo <paul@greystonebel.com>;
Nick Kirby <nick@greystonebel.com>
Sent: Tuesday, August 18, 2020, 04:26:36 PM EDT
Subject: RE: MANOR RIDGE APARTMENTS

Dennis,

I have great news, we have a full price offer for Manor Ridge Apartments, see attached.

**Cary Belovicz| Executive Managing Director**

Greystone Bel | www.greystonebel.com

7035 Orchard Lake Rd, Suite 150, West Bloomfield, MI 48322

cary@greystonebel.com | o: 248.394.0000 x252 m: 734.564.3833



# EXHIBIT 3



J&M INVESTMENT HOLDINGS LLC.

Letter of Intent

Dear Cary:

Please find outlined below the general terms and provisions which I ( the Seller ) would be willing to accept for the purchase of Manor Ridge Apartments- 690 Welsh Blvd, Vassar Michigan 48768 - 32 Units. Please use in your negotiations on my behalf.

This is not a contract. Nor does this letter create any legally binding liability to ( the " Seller" ) , { " the Buyer" }, or any interested parties . This letter, though not binding, is intended to serve as a basis For negotiation a final written agreement, which will contain material terms not mentioned in this letter. This letter does not create an exclusive right to negotiate or an obligation to negotiate in good faith. Either party may terminate negotiations at any time in their sole discretion. Partial performance by either party of the terms of of this letter, or the efforts by either party to perform due diligence or carry out other acts in contemplation of consummating this transaction. shall not be deemed evidence of intent by either party to be bound by the terms of this letter. The subsequent approval or acknowledgment of an agreement by email, text, or any other electronic communication service shall not be binding upon either party. The parties will not be bound to an agreement unless and until they review, approve, execute and deliver a final and definitive written agreement.

1. As Is.

2. No Warranties.

3. PURCHASE PRICE $1,275,000

4. Manager in apt. 7, has 30 days after date of sell close to vacate. However the office will be available to Buyer after close.

5. There is some tools and equipment that will remain with " Seller".

6. The { " Buyer" } shall bear the following: Its legal counsel's fees, and its due diligence expenses transfer taxes and title commitment issuance costs and premiums, Property taxes, $50,000 toward the " Sellers " Capital Gains tax, Broker Realtor fees and commissions. Water and electric bills shall be pro rated. The assessments, and other similar customary items shall be paid by buyer at closing.

7. 1031 Exchange

SELLER: J&M INVESTMENT HOLDINGS LLC.
Dennis C. Maynard
Owner / Member



PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause by depositing a copy thereof in the U.S. Mail, postage prepaid, in envelopes addressed to each of the attorneys of record herein at their respective addresses disclosed on the pleadings, on _____ 05-05-2022

Dated: _____

By: _____

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF TUSCOLA

GREYSTONE BEL REAL ESTATE
ADVISORS,

           Plaintiff,

vs

J & M INVESTMENT HOLDINGS, LLC,

           Defendant
_____/

File No  22-31854-CK
Hon  Amy Grace Gierhart
(P51305) Circuit Judge

Philip A  Jaffe (P25997)
Attorney for Plaintiff
P O  Box 250902
West Bloomfield, Michigan 48325
(248) 224-1463
pjaff50@aol com

ABBEY, ABBEY & THOMAS
By  James R  Abbey  (P37945)
Attorneys for Defendant
121 W  Grant Street, Suite 3
Caro, Michigan 48723
(989) 673-7761
email  law@abbeyabbeythomas org
_____/

### PROOF OF SERVICE

On the date below I sent by first class mail a copy of Withdrawal of Motion for Summary Disposition and a copy of this Proof of Service

ABBEY, ABBEY
& THOMAS, PLLC
ATTORNEYS AT LAW
121 WEST GRANT STREET
SUITE 3
CARO  MICHIGAN 48723
(989) 673 7761
FAX (989) 673 7751

to    Philip A  Jaffe
       Attorney for Plaintiff
       P O  Box 150902
       West Bloomfield, MI 48325

Edward J  Gudeman
Attorney for Defendant
1026 W  11 Mile Road, Suite A
Royal Oak, MI 48067

I declare that the statements above are true to the best of my information, knowledge and belief

Dated  April 27 , 2022

Holly A  Davis

04/27/2022
Tuscola County Clerk
Jodi Fetting



2022031854CK

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF TUSCOLA

GREYSTONE BEL REAL ESTATE
ADVISORS,

      Plaintiff,

vs

J & M INVESTMENT HOLDINGS, LLC,

      Defendant

_____/

File No 22-31854-CK
Hon Amy Grace Gierhart
(P51305) Circuit Judge

Philip A Jaffe (P25997)
Attorney for Plaintiff
P O Box 250902
West Bloomfield, Michigan 48325
(248) 224-1463
pjaff50@aol com

ABBEY, ABBEY & THOMAS
By James R Abbey (P37945)
Attorneys for Defendant
121 W Grant Street, Suite 3
Caro, Michigan 48723
(989) 673-7761
email law@abbeyabbeythomas org

_____/



## WITHDRAWAL OF MOTION FOR SUMMARY DISPOSITION

    NOW COMES Defendant by and through his attorney Abbey, Abbey &
Thomas, PLLC, and hereby withdraws his Motion for Summary Disposition
filed with this Court on March 17, 2022

ABBEY, ABBEY
& THOMAS, PLLC
ATTORNEYS AT LAW
121 WEST GRANT STREET
SUITE 3
CARO MICHIGAN 48723

(989) 673 7761
FAX (989) 673 7751

Dated April __7__, 2022

James R Abbey (P37945)
Abbey, Abbey & Thomas, PLLC
Attorneys for Defendant

2022031854CK

04/27/2022
Tuscola County Clerk
Jodi Fetting



**PAGE 1**

COURT COPY.

| STATE OF MICHIGAN<br>54TH TUSCOLA<br>JUDICIAL CIRCUIT<br>TUSCOLA COUNTY | PROOF OF SERVICE FOR<br>NOTICE TO APPEAR | CASE NO.<br>2022 0000031854-CK |
|---|---|---|

440 NORTH STATE STREET,
CARO, MI 48723

(989)673-3330

Date issued: FRIDAY APRIL 08, 2022

| Plaintiff/Petitioner name<br>GREYSTONE BEL REAL EST ADV | | Defendant/Respondent name<br>J & M INVESTMENT HOLDINGS |
|---|---|---|

v

**YOU ARE DIRECTED TO APPEAR AS FOLLOWS:**

1) For:   MOTION HEARING
   Date:  **WEDNESDAY MAY 11, 2022**
   Time:  **9:30 AM**
   Jurist: AMY GRACE GIERHART

   Location:   440 N. STATE STREET
               CARO, MI  48723

   Courtroom: Courtroom #CC01

2) For:   PRETRIAL SETTLEMENT CONFERENCE
   Date:  **WEDNESDAY JANUARY 11, 2023**
   Time:  **9:30 AM**
   Jurist: AMY GRACE GIERHART

   Location:   440 N. STATE STREET
               CARO, MI  48723

   Courtroom: Courtroom #CC01

3) For:   FINAL PRETRIAL SETTLEMENT
   Date:  **MONDAY FEBRUARY 06, 2023**
   Time:  **2:00 PM**
   Jurist: AMY GRACE GIERHART

   CONFERENCE   440 N. STATE STREET
               CARO, MI  48723

   Courtroom: Courtroom #CC01

4) For:   NON-JURY TRIAL
   Date:  **THURSDAY FEBRUARY 09, 2023**
   Time:  **8:30 AM**
   Jurist: AMY GRACE GIERHART

   Location:   440 N. STATE STREET
               CARO, MI  48723

   Courtroom: Courtroom #CC01

---

**CERTIFICATE OF MAILING**

The following parties were served by mail:

| Name<br>EDWARD J. GUDEMAN | Complete address of service<br>1026 W 11 MILE RD<br>STE A<br>ROYAL OAK, MI  48067 |
|---|---|
| Name<br>PHILIP A. JAFFE | Complete address of service<br>PO BOX 250902<br>WEST BLOOMFIELD, MI  48325 |

4/8/22
Date

Clerk


CC    2022031854CK


04/11/2022
Tuscola County Clerk
Jodi Fetting

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF TUSCOLA

GREYSTONE BEL REAL ESTATE ADVISORS,
    Plaintiff,

                               File No: 22-31854-CK
vs.                               Hon. Amy Grace Gierhart

J&M INVESTMENT HOLDINGS, LLC,
    Defendant.

_____/

### *SCHEDULING CONFERENCE ORDER*
### *NOTICE OF CASE EVALUATION*
### *NOTICE OF PRETRIAL SETTLEMENT CONFERENCE*
### *NOTICE OF FINAL PRETRIAL SETTLEMENT CONFERENCE*
### *AND NOTICE OF TRIAL*

TO:   PHILIP JAFFE P25997           EDWARD GUDEMAN P14454
       Attorney for Plaintiff             Attorney for Defendant

## *DISCOVERY*

1. **Preliminary witness list:**
      Shall be filed no later than *June 15, 2022.*

2. **Plaintiff's expert witness**:
      Shall be filed no later than *June 15, 2022.*

3. **Defendant's expert witness**:
      Shall be filed no later than *July 15 2022.*

4. **Final Witness List** shall be filed no later than *August 15, 2022.*
      WITNESSES NOT SO NAMED SHALL NOT BE PERMITTED TO TESTIFY
      EXCEPT UPON MOTION FOR GOOD CAUSE.

5. ***COMPLETION OF DISCOVERY***:
      Discovery shall be completed on or before *October 13, 2022.*
      MUST BE COMPLETED BEFORE THE DEADLINE FOR MOTIONS
      PURSUANT TO MCR 2.116(C) AND BEFORE CASE EVALUATION.

6. ***AMENDMENTS TO PLEADINGS***:
      Motions to amend will be filed and heard on or before *October 13, 2022.*



2022031854CK

04/11/2022
Tuscola County Clerk
Jodi Fetting

7. ***MOTIONS PURSUANT TO MCR 2.116:***
   Shall be filed and heard on or before *October 13, 2022.*

   HEARINGS ON MOTIONS PURSUANT TO MCR 2.116(C) **MUST BE SCHEDULED THROUGH THE CIRCUIT COURT ASSIGNMENT CLERK – (989) 673-3330.**

   MOTIONS PURSUANT TO MCR 2.116(C) WHICH ARE NOT HEARD PRIOR TO CASE EVALUATION ARE WAIVED.

## *CASE EVALUATION*
***CASE EVALUATION*** will be scheduled for *December 9, 2022 @ TBD*

ADDITIONAL BLOCKS OF CASE EVALUATION TIME MAY BE REQUESTED BY CONTACTING THE ALTERNATIVE DISPUTE RESOLUTION CLERK AT LEAST 28 DAYS PRIOR TO THE CASE EVALUATION DATE WITH THE APPROPRIATE ADDITIONAL FEE.

   A. Adjournments of case evaluation are generally not favored. **Any request to adjourn a case evaluation date must be brought by a motion with the written concurrence of the party on whose behalf the motion is brought.** No adjournments will be granted without a specific replacement case evaluation date having been obtained from the Alternative Dispute Resolution Clerk.

   B. Any adjournments which are granted after the time when case evaluation fees or briefs are due under MCR 2.403 shall require the payment of the case evaluation fee and the late fee pursuant to MCR 2.403(H)(5)(b).

## *PRETRIAL SETTLEMENT CONFERENCE*
8. ***IN CHAMBERS PRETRIAL SETTLEMENT CONFERENCE*** has been scheduled for ***WEDNESDAY, January 11, 2023, at 9:30 AM.***

9. ***FINAL PRETRIAL SETTLEMENT CONFERENCE*** has been scheduled for ***MONDAY, February 6, 2023, at 2:00 PM.***

## *TRIAL*
10. The ***NON-JURY TRIAL (1-2 DAYS)*** has been scheduled for ***Thursday, February 9, 2023, at 8:30 AM.***



*Attorneys are to be present in the Courtroom at 8:15 a.m. on the above date.* **Clients, including representatives with authority to settle, shall be present at 8:15 a.m. unless expressly waived by the Judge.**

*IT IS FURTHER ORDERED* that counsel shall appear at settlement conference prepared to discuss settlement, trial procedures, proposed jury instructions, if applicable, and use of depositions and exhibits. Exhibits that are not on a list to be exchanged at the conclusion of the pretrial conference will not be admitted into evidence except upon motion for good cause shown. In Non-Jury cases, Counsel are to **provide a trial brief and proposed findings of fact and conclusions of law**, no later than 3 business days before the commencement of trial. In Jury cases, Counsel **must file proposed jury instructions** no later than 3 business days before commencement of trial with a copy emailed in "word document" format to **nfriday@tuscolacounty.org**.

> **CLIENTS, INCLUDING INSURANCE REPRESENTATIVES WITH AUTHORITY TO SETTLE, SHALL BE PRESENT AT THE SETTLEMENT PRETRIAL CONFERENCE AND FINAL SETTLEMENT CONFERENCE, unless expressly waived IN WRITING by order of the Judge**.

***IT IS FURTHER ORDERED THAT THE COURT WILL STRICTLY ENFORCE MCR 2.119 AS IT RELATES TO ALL FILING OF MOTIONS AND RESPONSES.***

THIS ORDER MAY BE AMENDED ONLY WITH THE EXPRESS PERMISSION OF THE COURT. ANY REQUESTS FOR ADJOURNMENTS OR EXTENSIONS MUST BE FOR GOOD CAUSE SHOWN AND TO A DATE CERTAIN OBTAINED FROM THE COURT AND INCLUDED IN ANY ORDER PRESENTED TO THE COURT.

Dated: _____04.08____, 2022

_____
HONORABLE AMY GRACE GIERHART
54TH Circuit Judge

**PROOF OF SERVICE**

*I certify that I delivered a true copy of the above SCHEDULING CONFERENCE ORDER upon all counsel of record or parties by placing said copy in the courthouse attorney mailbox or in the first class mail with postage prepaid from Caro, Michigan, on __4|8|22_____.*

_____
*Nicole Friday, Assignment Clerk*

## STATE OF MICHIGAN
### IN THE CIRCUIT COURT FOR THE COUNTY OF TUSCOLA

GREYSTONE BEL REAL ESTATE ADVISORS   )
   )
      Plaintiff,   )
   )
-vs-   )
   )  Case No. 22-31854-CK
J&M INVESTMENT HOLDINGS, LLC.,   )
   )  Hon.
      Defendant.   )
   )
   )
   )
   )

| | |
|---|---|
| Philip A. Jaffe P2597 | GUDEMAN & ASSOCIATES, P.C. |
| Attorney for Plaintiff | Edward J. Gudeman (P14454) |
| PO Box 250902 | Attorneys for the Defendant |
| W Bloomfield, MI 48325 | 1026 W Eleven Mile Rd. |
| (248) 224-1463 | Royal Oak, MI 48067 |
| Pjaff50@aol.com | (248) 546-2800 |
| | ecf@gudemanlaw.com |

### CERTIFICATE OF SERVICE

Sean Parent states that, on March 18, 2022, he served the Defendant's Motion for

Summary Disposition and this Certificate of Service via first class mail on counsel via the

address listed above and email:

Dated: Friday, March 18, 2022         Signed: */s/ Sean Parent*
                                  Sean Parent





03/18/2022
Tuscola County Clerk

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF TUSCOLA

GREYSTONE BEL REAL ESTATE ADVISORS )
)
      Plaintiff, )
)
-vs- )
) Case No. 22-31854-CK
J&M INVESTMENT HOLDINGS, LLC., )
) Hon.
      Defendant. )
)
)
)
)

| | |
|---|---|
| Philip A. Jaffe P2597 | GUDEMAN & ASSOCIATES, P.C. |
| Attorney for Plaintiff | Edward J. Gudeman (P14454) |
| PO Box 250902 | Attorneys for the Defendant |
| W Bloomfield, MI 48325 | 1026 W Eleven Mile Rd. |
| (248) 224-1463 | Royal Oak, MI 48067 |
| Pjaff50@aol.com | (248) 546-2800 |
| | ecf@gudemanlaw.com |

**DEFENDANT'S MOTION FOR SUMMARY**
**DISPOSITON PURSUANT TO MCR 2.116 (C)(8)**

    NOW COMES Defendant, J&M INVESTMENT HOLDINGS, LLC., by and through

counsel, and moves for summary disposition on Plaintiff's complaint pursuant to MCR

2.116(C)(8). In support of their Motion, Defendant relies on the attached Brief in support of

the Motion. The undersigned hereby certifies that he made personal contact with Plaintiff's

counsel Philip A. Jaffe, on March 16, 2022, requesting concurrence in the relief sought in this

Motion and concurrence was denied.

      WHEREFORE, Defendant requests that the Court: (i) grant their Motion; (ii) enter

an order dismissing Plaintiff's complaint in its entirety with prejudice; and (iii) award

Defendant their costs and attorney fees and such further relief as the Court considers



2022031854CK

03/18/2022
Tuscola County Clerk

appropriate.

Respectfully Submitted,

By: _____

Edward J. Gudeman (P14454)
Attorneys for Plaintiff
*Gudeman and Associates P.C.,*
1026 W. Eleven Mile Rd.,
Royal Oak, MI 48067
ecf@gudemanlaw.com
(248) 546-2800

Dated: March 18, 2022

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF TUSCOLA

GREYSTONE BEL REAL ESTATE ADVISORS )
                                                 )
         Plaintiff, )
                                                   )
-vs- )  Case No. 22-F31854-CK
                                                   )
J&M INVESTMENT HOLDINGS, LLC., )  Hon.
                                                   )
         Defendant. )
                                                   )

| | |
|---|---|
| Philip A. Jaffe P2597 | GUDEMAN & ASSOCIATES, P.C. |
| Attorney for Plaintiff | Edward J. Gudeman (P14454) |
| PO Box 250902 | Attorneys for the Defendant |
| W Bloomfield, MI 48325 | 1026 W Eleven Mile Rd. |
| (248) 224-1463 | Royal Oak, MI 48067 |
| Pjaff50@aol.com | (248) 546-2800 |
| | ecf@gudemanlaw.com |

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARYDISPOSITON PURSUANT TO MCR 2.116 (C)(8)

### I. INTRODUCTION

Plaintiff's complaint is based solely on an alleged breach of a contract drafted by the Plaintiff. As outlined below, Plaintiff will be unable to prove a breach of any term within the contract, or that they ever produced a willing, ready, and able buyer. Plaintiff's claim should be dismissed for failure state a claim upon which relief may be granted for attempting to forgo their own binding arbitration clause, which both parties agreed to.

Under the parties' July 20, 2020, Agreement, (the "Agreement"), Plaintiff was contracted by Defendant to secure a bona-fide purchaser for Defendant's 32-unit apartment complex (the "Property"). Under the terms of the Agreement, if the property was sold, Plaintiff was entitled to a tiered percentage commission tied to the sale date. However, as a condition precedent, Plaintiff



was only entitled to a commission *if* the property was sold, or other conditions precedent in the contract were met.

The Agreement did contain an additional provision that the commission would be owed whether the (1) property be sold, or whether (2) the property be withdrawn from sale, or (3) the property be made unmarketable by the Defendant. The Property was never sold, and Plaintiff neither withdrew the Property from sale, nor made the Property unmarketable. As such, there was no satisfaction of either condition precedent necessary to activate Defendant's duty to tender any commission.

As explained below, the Court should grant summary disposition under MCR 2.116(C)(8) and dismiss Plaintiff's complaint with prejudice in its entirety because Plaintiff's claim is barred because none of the condition precedents outlined in the contract ever occurred.

## II. STATEMENT OF FACTS

1. In Spring of 2020, Plaintiff and Defendant negotiated the Agreement. Ultimately, there were several changes made before the parties executed the Agreement.

2. The original, unexecuted agreement contained the following term which Defendant wanted removed, specifically with regard to furnishing rent statements:

> Seller agrees to furnish and make available to prospective Buyers all financial data and rent statements concerning the Property. Seller represents and warrants that Seller shall hold Agent harmless from any and all liability, damages, causes of action and any other claims arising from or asserted in connection with any incorrect or inaccurate information supplied by Seller, or any information which Seller has failed to supply. **See Exhibit A: Original Listing Agreement.**

3. Plaintiff removed this term and confirmed that in an email containing the Agreement. See

**Exhibit B: Austin Hull Email Dated July 16, 2020**



**4.** On July 20, 2020, the Parties executed the Agreement, under which Plaintiff would act as

Defendant's agent in obtaining purchasers for the Property for a Purchase Price of $1,275,000.

The Agreement had a term of 6 months, terminating on January 20, 2021. **Exhibit C: Listing**

**Agreement**

5. That agreement stated, in relevant part, as follows:

> If Agent, Seller, or anyone else obtains a Buyer for the Property
> during the Term of this Listing Agreement at the Purchase Price and
> on the terms stated in this Listing Agreement, or at any other price
> or terms acceptable to Seller, then Seller agrees to pay to Agent a
> commission (the "Commission") equal to 8% of the Purchase Price
> *if the property sells* on or before the first 60 days of the executed
> listing agreement, the real estate commission will be reduced to 7%
> of the purchase price *if the property sells* in between the 61st day and
> the 120th day of the executed listing agreement, *if the property sells*
> after 120 days of the executed listing agreement the real estate
> commission will be reduced to 6% of the sales price for the
> remainder of this listing agreement. Commission shall be due and
> payable *whether the property be sold or whether the property be*
> *withdrawn from sale, or made unmarketable by Seller.* [Emphasis
> added]. *Id* at para. 3.

6. To date, the Property has not been sold, nor has Defendant withdrawn the Property from sale

or otherwise made the Property unmarketable.

7. In fact, Defendant is still interested in selling the Property, and, on information and belief,

Plaintiff withdrew the property from sale at the expiration of the Agreement.

8. Further, Plaintiff does not allege that the Property has been sold, nor that Defendant withdrew

the Property from sale or otherwise made the Property unmarketable.

9. Instead, Plaintiff states that "the Defendant refused to execute The Listing Agreement or

otherwise agree to sell the property." However, this is untrue.

10. On July 22, 2020, almost immediately after executing the Agreement, Plaintiff found a willing

purchaser who offered $1,075,000 for the Property. **See Exhibit D: LG Capital, LLC July**



**Letter of Intent**

11. At that time, Defendant became concerned that the Property was undervalued, and reached out to Plaintiff to request that the numbers be reevaluated. **See Exhibit E: Dennis Maynard Email Dated July 29, 2020**

12. Defendant sent a second email the following day, stating that he wished to review the numbers with Plaintiff. **See Exhibit F: Dennis Maynard Email Dated July 30, 2020**

13. Without addressing Plaintiff's concern or even attempting to gain clarification, Plaintiff sent another, slightly larger offer in response to Defendant's concerns.

14. After receiving no reply, Defendant called Plaintiff, who advised Defendant that they would not change the price in the Agreement, as the contract had already been executed.

15. Further, Plaintiff began asking Defendant to furnish documents for potential buyers, ignoring Defendants clear wishes that were communicated by removing the term requiring he produce the requested documents from in the Agreement. **See Exhibit G: Emails Requesting Documents and Rent Statements**

16. Defendant again advised that he wanted to reevaluate the acceptable terms of any potential Purchase Agreement. Again, Defendant was ignored.

17. Naturally, Defendant was concerned that Plaintiff did not have his best interest in mind, but felt that he was unable to do anything but attempt to get a better deal through negotiations with any potential buyers.

18. Nearly 3 weeks later, on August 18, 2020, Plaintiff's advised Defendant they had received a full price offer from LG Capital, LLC ("LG"). **See Exhibit H: Cary Belovicz Email Dated August 18, 2020, and Exhibit I: LG Capital, LLC Letter of Intent.**

19. Importantly, LG's letter of intent does not affirmatively offer to purchase the property, but

rather states, in relevant part, "This letter outlines *some* of the terms and provisions under which we (the "Buyer") would be *willing to consider* the purchase of the Apartments from the existing owner" [Emphasis Added].

20. Defendant countered on September 18, 2020, accepting the offered price, with the added condition that the buyer pay the property taxes, and $50,000 to be applied to Defendant's capital gains tax and Plaintiff's commission. **See Exhibit J: Mannor Ridge Letter of Intent**

21. Plaintiff replied to the Defendant, stating that the Agreement makes Defendant responsible for the commission, and they did not understand his attempt to add that into any potential purchase agreement. **See Exhibit K: Cary Belovicz Email Dated September 18, 2020.**

22. No future communication between the parties ever addressed Defendant's counteroffer.

23. On information and belief, Plaintiff never communicated the counteroffer to LG, and as such, Plaintiff breached their fiduciary duty and their responsibilities as Defendant's agent.

24. Despite the allegations in Plaintiff's complaint, there is no provision guaranteeing a commission for Defendant's simply locating a *potential* buyer, and certainly no provision guaranteeing a commission for locating a buyer who only provides "some of the terms" under which they would "be willing to consider" purchasing the Property.

25. As Plaintiff's own complaint shows, they never received an affirmative statement from LG stating they were ready, willing, and able to purchase the Property, but rather LG was, at best, willing to consider purchasing the Property. As such, Plaintiff's complaint should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

### III. ARGUMENT

It is well settled in Michigan that contracts are to be construed against the drafter. Further, a contract is to be construed as a whole, and all parts are to be harmonized as far as possible. *Czapp*



*v Cox*, 179 Mich App 216, 219; 445 NW2d 218 (1989). A plain reading of the Agreement makes it clear that Plaintiff was only entitled to be paid if certain conditions were met.

In Michigan, "a condition precedent is a fact or event that the parties intend must exist or take place before there is a right to performance." *MacDonald v. Perry,* 342 Mich 578, 586 (1955) (quoting *Knox v. Knox,* 337 Mich. 109, 118 (1953)). "If the condition is not fulfilled, the right to enforce the contract does not come into existence." *Knox,* 337 Mich. at 118 (citation omitted). "[O]ne who sues for performance of a contractual obligation must prove that all contractual conditions prerequisite to performance have been satisfied." *Koski v Allstate Ins* Co, 456 Mich 439, 444 (1998).The "[f]ailure to satisfy a condition precedent prevents a cause of action for failure of performance." *Berkel* Co *Contractors v Christman* Co, 210 Mich App 416, 420 (1995). And, the party claiming a breach of contract has the burden to show that the condition precedent has been satisfied. *Valley Nat'l Bank of Arizona v Kline,* 108 Mich App 133, 137-138 (1981).

In order to earn a commission, as stated in the Agreement, the Property needed to either be sold, or, after finding a willing buyer, Defendant would have had to withdraw from sale, or otherwise have made the title unmarketable. (Ex. C). Here, no such condition precedent was ever met and Plaintiff does not claim that any such condition precedent was met. Therefore, Plaintiff was never entitled to compensation. While Plaintiff clearly intended to include stronger guarantees on their entitlement to commission, no such guarantees exist.

Further, Plaintiff's complaint purports that Plaintiff secured a purchaser; however, as their own exhibit shows, the LG letter of intent does not offer to purchase the property, but at best expresses a potential interest, outlining "some" of the terms under which LG "would be willing to consider purchase" of the Property. (Ex. I). Not only is it clear no condition precedent was ever met, but Plaintiff's breach of contract claim also contains no allegation that any condition



precedent was ever met as required under *Valley National. Id.* Instead, Plaintiff's complaint contains blatantly false statements, asserting that the identification of a potential buyer entitled them to payment. No such entitlement exists.

### IV: CONCLUSION

For the foregoing reasons, Defendant requests that their motion be granted and that Plaintiff's claims be dismissed with prejudice, and that Defendant be awarded their costs and attorney fees.

Respectfully Submitted,

By: _____

Edward S. Gudeman (P14454)
Attorneys for Plaintiff
*Gudeman and Associates P.C.,*
1026 W. Eleven Mile Rd.,
Royal Oak, MI 48067
ecf@gudemanlaw.com
(248) 546-2800

Dated: March 18, 2022

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF TUSCOLA

GREYSTONE BEL REAL ESTATE
ADVISORS,

        Plaintiff,

vs.

J & M INVESTMENT HOLDINGS, LLC,

        Defendant.

_____/

File No. 22-31854-CK
Hon. Amy Grace Gierhart
(P51305) Circuit Judge

Philip A. Jaffe (P25997)
Attorney for Plaintiff
P.O. Box 250902
West Bloomfield, Michigan 48325
(248) 224-1463
pjaff50@aol.com

ABBEY, ABBEY & THOMAS
By: James R. Abbey (P37945)
Attorneys for Defendant
121 W. Grant Street, Suite 3
Caro, Michigan 48723
(989) 673-7761
email: law@abbeyabbeythomas.org

_____/

FILED
JODI FETTING
TUSCOLA COUNTY CLERK
2022 MAR 17 P 4: 00

## MOTION FOR SUMMARY DISPOSITION

NOW COMES the Defendant, J & M Investment Holdings, LLC, by and through its attorneys Abbey, Abbey & Thomas, PLLC, and for its motion states:

1. That Plaintiff filed a Complaint with the Court on or about January 10, 2022, which alleged breach of contract and enforcement of commercial real estate broker's lien.

2. Plaintiff's Complaint was based on alleged contract attached to Plaintiff's Complaint and marked Exhibit 1. Said document having provided in paragraph 12 as follows:

ABBEY, ABBEY
& THOMAS, PLLC
ATTORNEYS AT LAW
121 WEST GRANT STREET
SUITE 3
CARO, MICHIGAN 48723

(989) 673-7761
FAX (989) 673-7751



2022031854CK

03/17/2022
Tuscola County Clerk
Jodi Fetting

12. **ARBITRATION:** if a controversy arises with respect to the subject matter of this Listing Agreement or any provision hereof, Seller and Agent agree that such controversy shall be settled by final, binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof."

3. That this Motion is brought pursuant to MCR 2.116(C)(7).

4. That Defendant is entitled to summary disposition.

5. That Defendant relies on its Brief in Support of Motion for Summary Disposition.

WHEREFORE Defendant prays this Honorable Court grant summary disposition on Plaintiff's Complaint and issue an Order removing the lien wrongfully filed by Plaintiff.

Dated: March 15, 2022

James R. Abbey (P37945)
Abbey, Abbey & Thomas, PLLC
Attorneys for Defendant

ABBEY, ABBEY
& THOMAS, PLLC
ATTORNEYS AT LAW
121 WEST GRANT STREET
SUITE 3
CARO, MICHIGAN 48723

(989) 673-7761
FAX (989) 673-7751

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF TUSCOLA

GREYSTONE BEL REAL ESTATE
ADVISORS,

          Plaintiff,

vs.

J & M INVESTMENT HOLDINGS, LLC,

          Defendant.

_____/

File No. 22-31854-CK
Hon. Amy Grace Gierhart
(P51305) Circuit Judge

Philip A. Jaffe (P25997)
Attorney for Plaintiff
P.O. Box 250902
West Bloomfield, Michigan 48325
(248) 224-1463
pjaff50@aol.com

ABBEY, ABBEY & THOMAS
By: James R. Abbey (P37945)
Attorneys for Defendant
121 W. Grant Street, Suite 3
Caro, Michigan 48723
(989) 673-7761
email: law@abbeyabbeythomas.org

_____/

FILED
JODI FETTING
TUSCOLA COUNTY CLERK
2022 MAR 17 P 4: 00

# BRIEF IN SUPPORT OF MOTION
# FOR SUMMARY DISPOSITION

ABBEY, ABBEY
& THOMAS, PLLC
ATTORNEYS AT LAW
121 WEST GRANT STREET
SUITE 3
CARO, MICHIGAN 48723
(989) 673-7761
FAX (989) 673-7751



2022031854CK

03/17/2022
Tuscola County Clerk
Jodi Fetting

## FACTS

Defendant J & M Investment Holds, LLC is a Michigan Limited Liability Company. The company owns an apartment complex located at 690 Welsh Boulevard, Vassar, Michigan in Tuscola County. Defendant was interested in selling the apartment building and came into contact with Terry Belovicz, a managing partner of Greystone Bel Real Estate Advisors. Mr. Belovicz had an agreement prepared for Greystone Bel Real Estate Advisors to offer the property in Vassar, Michigan for sale; a copy of that agreement is attached hereto and marked Exhibit A.

Paragraph 12 of the sales agreement provides as follows:

12. **ARBITRATION:** if a controversy arises with respect to the subject matter of this Listing Agreement or any provision hereof, Seller and Agent agree that such controversy shall be settled by final, binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof."

Plaintiff filed a Complaint alleging Count I - Breach of Contract and Count II - Enforcement of Commercial Real Estate Broker's Lien. Defendant has filed its Motion for Summary Disposition in response to the Complaint.

## ARGUMENT

Plaintiff, in preparing the agreement to offer the property for sale, chose its remedy in paragraph 12 of the document; that remedy is  binding arbitration. In so choosing the remedy of arbitration, Plaintiff has waived all other remedies available through legal process other than seeking to enforce an arbitration judgment through the Courts. Specifically, in this case

ABBEY, ABBEY
& THOMAS, PLLC
ATTORNEYS AT LAW
121 WEST GRANT STREET
SUITE 3
CARO, MICHIGAN 48723

(989) 673-7761
FAX (989) 673-7751



Defendant would argue that Plaintiff has waived its right to seek legal remedy for breach of contract and waived its right to seek legal remedy for enforcement of commercial real estate broker's lien.

Michigan law provides that summary disposition is the appropriate remedy where an agreement to arbitration prevents the filing of a Complaint seeking legal relief for contract claims. See *Abela v GMC*, 469 Mich 603 (2004). Also see *Watts v Polaczyk*, 240 Mich App 600 (2000). Because the document drafted by Plaintiff provides that "such controversy shall be settled by final, binding arbitration..." the remedy sought through that agreement as set forth is an exclusive remedy. For that reason the Court should grant summary disposition to the Defendant. If the Plaintiff wishes to seek arbitration pursuant to the agreement they can file the appropriate claim.

In addition to an Order of summary disposition, because the Plaintiff drafted the document requiring arbitration and knew that final, binding arbitration was the remedy they had elected. By filing the Complaint with this Court they have caused the Defendant to incur unnecessary attorneys' fees and the Defendant is requesting that the Court award appropriate attorneys' fees for having to file this Motion.

## RELIEF REQUESTED

Defendant requests this Honorable Court enter an Order of summary disposition in favor of Defendant as to Plaintiff's Complaint and order that the real estate broker's lien be released as it impairs the Defendant's title to the

ABBEY, ABBEY
& THOMAS, PLLC
ATTORNEYS AT LAW
121 WEST GRANT STREET
SUITE 3
CARO, MICHIGAN 48723

(989) 673-7761
FAX (989) 673-7751



real estate. Defendant further requests that the Court award the Defendant costs and reasonable attorneys' fees.

Dated: March __/5__, 2022                     Respectfully submitted,


_____
James R. Abbey (P37945)
Abbey, Abbey & Thomas, PLLC
Attorneys for Defendant

ABBEY, ABBEY
& THOMAS, PLLC
ATTORNEYS AT LAW
121 WEST GRANT STREET
SUITE 3
CARO, MICHIGAN 48723
_____
(989) 673-7761
FAX (989) 673-7751

DocuSign Envelope ID: F6BEBDEF-6B08-4C07-BB0B-92EC89C57787



**GREYSTONE BEL REAL ESTATE ADVISORS**
7035 Orchard Lake Road, Suite 150
West Bloomfield, MI 48322
Phone: 248.394.0000
Fax: 734.471.0200
www.greystonebel.com

In consideration of the services to be rendered by Greystone Bel Real Estate Advisors ("Agent"), the undersigned ("Seller"), hereby employs Agent ("Listing Agreement") for the period of time beginning July 20th, 2020 and terminating at midnight on January 20th, 2021 (the "Termination Date"), subject to extension as provided in Paragraph 6 below, to obtain a purchaser ("Buyer") for the following real property, together with all improvements thereon, located in the City of **Vassar**, County of **Tuscola**, State of **Michigan**, more particularly described as follows (the "Property"):

**Manor Ridge Apartments - 32 units**
**690 Welsh Blvd, Vassar, MI 48768**

1. **AUTHORITY TO OFFER.** Seller hereby grants to Agent the sole, exclusive and irrevocable right and authority to offer the Property for sale during the Term defined herein for, and agrees to accept, an offer containing the following sales price (the "Purchase Price") upon the terms and conditions set forth in this Listing Agreement:

   **PURCHASE PRICE: $1,275,000 Terms:** cash or new mortgage.

2. **INSPECTION OF PREMISES:** It is agreed that Agent and/or its representatives shall have the right to enter upon the Property and all portions thereof (including exterior and interior) with prospective Buyers at all reasonable times.

3. **COMMISSION TO BE PAID:** If Agent, Seller, or anyone else obtains a Buyer for the Property during the Term of this Listing Agreement at the Purchase Price and on the terms stated in this Listing Agreement, or at any other price or terms acceptable to Seller, then Seller agrees to pay to Agent a commission (the "Commission") equal to 8% of the Purchase Price if the property sells on or before the first 60 days of the executed listing agreement, the real estate commission will be reduced to 7% of the purchase price if the property sells in between the 61st day and 120th day of the executed listing agreement, if the property sells after 120 days of the executed listing agreement the real estate commission will be reduced to 6% of the sales price for the remainder of this lisitng agreement. Commission shall be due and payable whether the property be sold or whether the property be withdrawn from sale, or made unmarketable by Seller. Following the expiration of the Term in the event that (a) said Buyer, either directly or indirectly, is a person or entity with whom Agent negotiated in earnest for such sale or who received complete marketing information and (b) Agent has furnished Seller with a written list stating the names of any persons described in item (a) above by certified mail, facsimile, email transmission, or in person no later than ten business days after the expiration of the Term. Seller expressly acknowledges its obligation to pay Agent's Commission upon any such closing regardless whether any cash is available through escrow or otherwise in connection with said closing. During the Term, Seller agrees to refer to Agent all inquiries Seller may receive concerning the Property.

4. **PURCHASE DEPOSIT:** In the event a prospective Buyer's deposit is forfeited and retained by Seller fifty percent of the retained deposit shall be paid to Agent and fifty percent to Seller; provided, however, that Agent's share under this Paragraph 7 shall not exceed the amount of Commission that would have been due to Agent pursuant to Paragraph 5 of this Listing Agreem

DEFENDANT'S EXHIBIT
A

DocuSign Envelope ID: F89EBDEF-6B08-4C07-BB0B-92EC89C67787

if the sale had closed. Payment to Agent under this paragraph 7 is independent of any Commission due to Agent pursuant to Paragraph 5 of this Listing Agreement.

5. **TITLE:** Seller represents and warrants to Agent that fee simple indefeasible title to the property is fully vested in Seller, that Seller is duly authorized and empowered (either in Seller's individual capacity or on behalf of others) to execute this Listing Agreement, and that execution hereof will not result in any breach of, or constitute a default under, any contract or other agreement to which Seller is a party.

6. **PERSONAL PROPERTY:** Fixtures, furniture, furnishings and other personal property belonging to Seller located on the Property are included in the total purchase price and will be conveyed to Buyer free and clear of all liens and encumbrances by Bill of Sale at the close of escrow. Seller agrees to provide Buyer with a full and complete inventory of all personal property within five (5) business days after mutual acceptance of a written purchase agreement for the Property.

7. **DUE DILIGENCE:** Agent agrees to use due diligence in attempting to sell the Property.

8. **MARKETING:** In its efforts to best represent Seller, Agent reserves the right to cooperate or not cooperate with other licensed real estate agents. Agent reserves this right in an effort to minimize unnecessary disclosures and unauthorized showings of the Property. If Agent does elect to cooperate with other agents, it will work only with those agents that Agent believes are qualified to best represent the interests of Seller. Seller acknowledges that Agent may make marketing material created for Seller's property available for access from Agent's internet website (www.greystonebel.com).

9. **OTHER BROKERS/AGENTS:** Seller agrees that in the event there is any broker/agent involved in the disposition of the Property other than Agent, then said other broker/agent shall not be Seller's agent nor the sub-agent of Agent but shall be the agent, if at all, of the Buyer.

10. **ADDENDA:** Any addendum attached hereto and either signed or initialed by the parties shall be deemed a part hereof. This Listing Agreement, including addenda if any, expresses the entire agreement of the parties. There are no other understandings, oral or written, which in any manner alter or enlarge its terms. This Listing Agreement supersedes any and all agreements between the parties hereto regarding the Property which are prior in time to this Listing Agreement.

11. **ASSIGNMENT:** This Listing Agreement may not be assigned by Agent without the express written consent of Seller.

12. **ARBITRATION:** If a controversy arises with respect to the subject matter of this Listing Agreement or any provision hereof, Seller and Agent agree that such controversy shall be settled by final, binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.

Pg 57

DocuSign Envelope ID: F89EBDEF-6B08-4C07-BB0B-92EC89C67787

WE, THE UNDERSIGNED, HAVE READ THIS DOCUMENT, UNDERSTAND THE SAME AND AGREE TO THE ABOVE TERMS AND CONDITIONS THEREOF, AND ACKNOWLEDGE RECEIPT THEREOF. THIS DOCUMENT CONSTITUTES A LEGAL CONTRACT. BEFORE EXECUTION HEREIN, *IT IS RECOMMENDED THAT SELLER HAVE THIS DOCUMENT REVIEWED BY AN ATTORNEY OF SELLER'S SELECTION.*

SELLER: Jobi Media Investment Holdings Llc

By: *Dennis C Maynard*
Dennis Maynard

Address: 690    Welsh    Blvd,    Vassar,    MI    48768

Date: 7/20/2020

Telephone: 304-617-1509
Email: den_is2c@yahoo.com


AGENT: Greystone Bel Real Estate Advisors

By: *Cary Belovicz*
Cary Scott Belovicz

Its: Managing Partner
252

Address: 7035 Orchard Lake Road Suite 150
West Bloomfield, MI 48322
Telephone:    248.394.0000    Ext.

Cell:    734.564.3833

Date: 7/20/2020

Email: cary@greystonebel.com


AGENT: Greystone Bel Real Estate Advisors

By: *Austin Hull*
Austin Hull

Its: Associate Director
254

Address: 7035 Orchard Lake Road Suite 150
West Bloomfield, MI 48322
Telephone:    248.394.0000    Ext.

Cell:    734.812.4508

Date: 7/20/2020

Email: austin@greystonebel.com

**STATE OF MICHIGAN**

**IN THE CIRCUIT COURT FOR THE COUNTY OF TUSCOLA**

GREYSTONE BEL REAL ESTATE
ADVISORS,

            Plaintiff,

vs.

**J & M INVESTMENT HOLDINGS, LLC,**

            Defendant.

_____/

File No. 22-31854-CK
Hon. Amy Grace Gierhart
(P51305) Circuit Judge

Philip A. Jaffe (P25997)
Attorney for Plaintiff
P.O. Box 250902
West Bloomfield, Michigan 48325
(248) 224-1463
pjaff50@aol.com

ABBEY, ABBEY & THOMAS
By: James R. Abbey (P37945)
Attorneys for Defendant
121 W. Grant Street, Suite 3
Caro, Michigan 48723
(989) 673-7761
email: law@abbeyabbeythomas.org

_____/

**NOTICE OF HEARING**

TO:    Clerk of Said Court
        Philip A. Jaffe, Attorney for Plaintiff

    PLEASE TAKE NOTICE that Defendant's Motion for Summary
Disposition will be brought for hearing on **Wednesday, May 11, 2022**, at **9:30
a.m.**, or as soon thereafter as counsel can be heard, in the Circuit Court for
Tuscola County.

Dated: March _15_, 2022

                           _James R. Abbey_
                           James R. Abbey   (P37945)
                           Abbey, Abbey & Thomas, PLLC
                           Attorneys for Defendant

ABBEY, ABBEY
& THOMAS, PLLC
ATTORNEYS AT LAW
121 WEST GRANT STREET
SUITE 3
CARO, MICHIGAN 48723
(989) 673-7761
FAX (989) 673-7751

FILED
JODI FETTING
TUSCOLA COUNTY CLERK
2022 MAR 17 P 4:00

2022031854CK

03/17/2022
Tuscola County Clerk
Jodi Fetting

**STATE OF MICHIGAN**

**IN THE CIRCUIT COURT FOR THE COUNTY OF TUSCOLA**

**GREYSTONE BEL REAL ESTATE
ADVISORS,**

        Plaintiff,

vs.

**J & M INVESTMENT HOLDINGS, LLC,**

        Defendant.

_____/

File No. 22-31854-CK
Hon. Amy Grace Gierhart
(P51305) Circuit Judge

Philip A. Jaffe (P25997)
Attorney for Plaintiff
P.O. Box 250902
West Bloomfield, Michigan 48325
(248) 224-1463
pjaff50@aol.com

ABBEY, ABBEY & THOMAS
By: James R. Abbey (P37945)
Attorneys for Defendant
121 W. Grant Street, Suite 3
Caro, Michigan 48723
(989) 673-7761
email: law@abbeyabbeythomas.org

_____/

FILED
TUSCOLA COUNTY CLERK
JODI FETTING
2022 MAR 17 P 4: 01

## PROOF OF SERVICE

On the date below I sent by first class mail a copy of Appearance of Counsel,
Notice of Hearing, Motion for Summary Disposition, Brief in Support of Motion
for Summary Disposition and a copy of this Proof of Service

ABBEY, ABBEY
& THOMAS, PLLC
ATTORNEYS AT LAW
121 WEST GRANT STREET
SUITE 3
CARO, MICHIGAN 48723

(989) 673-7761
FAX (989) 673-7751

to:    Philip A. Jaffe
       Attorney for Plaintiff
       P.O. Box 250902
       West Bloomfield, MI 48325

I declare that the statements above are true to the best of my information,
knowledge and belief.

Dated: March 15, 2022

Holly A. Davis
Holly A. Davis

03/17/2022
Tuscola County Clerk
Jodi Fetting

2022031854CK

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF TUSCOLA

GREYSTONE BEL REAL ESTATE
ADVISORS,

         Plaintiff,

vs.

J & M INVESTMENT HOLDINGS, LLC,

         Defendant.

_____/

File No. 22-31854-CK
Hon. Amy Grace Gierhart
(P51305) Circuit Judge

Philip A. Jaffe (P25997)
Attorney for Plaintiff
P.O. Box 250902
West Bloomfield, Michigan 48325
(248) 224-1463
pjaff50@aol.com

ABBEY, ABBEY & THOMAS
By:  James R. Abbey  (P37945)
Attorneys for Defendant
121 W. Grant Street, Suite 3
Caro, Michigan 48723
(989) 673-7761
email: law@abbeyabbeythomas.org

_____/

FILED
JODI FETTING
TUSCOLA COUNTY CLERK
2022 MAR 17  P 3: 58

## APPEARANCE OF COUNSEL

TO:    Clerk of the Court
        Philip A. Jaffe, Attorney for Plaintiff

      TAKE NOTICE that the firm of Abbey, Abbey & Thomas, PLLC hereby enters an appearance on behalf of Defendant, J & M Investment Holdings, LLC, and requests copies of all pleadings filed in this matter.

ABBEY, ABBEY
& THOMAS, PLLC
ATTORNEYS AT LAW
121 WEST GRANT STREET
SUITE 3
CARO, MICHIGAN 48723
——
(989) 673-7761
FAX (989) 673-7751

Dated: March _15_, 2022

_____
James R. Abbey (P37945)
Abbey, Abbey & Thomas, PLLC
Attorneys for Defendant



2022031854CK

03/17/2022
Tuscola County Clerk
Jodi Fetting

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF TUSCOLA

GREYSTONE BEL REAL ESTATE ADVISORS,

     Plaintiff,

                       22-31854

Vs.

                       Case No.        CK

J & M INVESTMENT HOLDINGS, LLC.,

     Defendant.

_____/

Philip A. Jaffe P25997
Attorney for Plaintiff
PO Box 250902
W Bloomfield, MI 48325
(248) 224-1463
Pjaff50@aol.com

_____/

THERE IS NO OTHER PENDING OR RESOLVED CIVIL
ACTION ARISING OUT OF THE TRANSACTION OR
OCCURRENCE ALLEGED IN THE COMPLAINT.
/s/ Philip A Jaffe P25997

### COMPLAINT

The Plaintiff, Greystone Bel Real Estate Advisors, by its attorney, Philip A. Jaffe, for its

Complaint, states as follows:

### COMMON ALLEGATIONS

1.  Plaintiff, Greystone Bel Real Estate Advisors is an assumed name for Bel Real Estate

Advisors, LLC, a Michigan limited liability company, with offices located at 7035 Orchard Lake

Road, Suite 150, West Bloomfield, MI. 48322.

2.  Defendant, J & M Investment Holdings, LLC is a Michigan limited liability company,

with offices located at 690 Welsh Blvd., # 7, Vassar, MI 48768, with Dan Maynard as its

Resident Agent.

-1-



2022031854CK

01/10/2022
Tuscola County Clerk
Jodi Fetting

3. Venue is proper in this court pursuant to MCL 600.1621, as the registered office of Defendant is located in Tuscola County, MI., as well as the property that is the subject of this action.

4. Jurisdiction is proper in this court pursuant to MCL 600.601 et seq. as the amount in dispute exceeds $25,000, exclusive of attorney's fees and costs and Plaintiff seeks equitable relief as well.

5. Plaintiff was, and is a Michigan licensed commercial real estate broker under the provisions of MCL 339.2505, et seq.

6. At all relevant times hereto, Defendant, J & M Investment Holdings, LLC was the owner of real property that is the subject of this action and commonly known as 690 Welsh Blvd., Vassar, MI 48768 (the "Property").

7. At all relevant times hereto, Dan Maynard, was acting as an agent for and on behalf of J & M Investment Holdings, LLC and had authority to bind Defendant entity.

COUNT 1-BREACH OF CONTRACT

8. Plaintiff, incorporates by reference all of the allegations contained in paragraphs 1-7, as though fully restated herein.

9. On July 20, 2020, Plaintiff and Defendant entered into a Listing Agreement for the period of time beginning on July 20, 2020 and terminating on January 20, 2021, employing Plaintiff in the capacity as real estate broker and agent, to find a purchaser for the subject property. Defendant agreed to pay to Plaintiff for its services as appears from the Listing Agreement. **(Exhibit 1).**

-2-



10. Pursuant to the Listing Agreement **(see Exhibit 1)**, if Agent, Seller, or anyone else obtains a Buyer for the subject property during the term of the agreement on terms stated in the Listing Agreement, then Seller agrees to pay to Agent a commission equal to 8% of the purchase price if the property sells on or before the first 60 days of the executed Listing Agreement.

11. Plaintiff, pursuant to and in reliance on that agreement proceeded to substantially perform its duties and responsibilities and expended substantial time and effort to procure a purchaser pursuant to the terms of the Listing Agreement and was continuing to do so at all times mentioned.

12. On or about August 18, 2020, Plaintiff secured a purchaser for the property on terms consistent with the Listing Agreement and presented an executed Letter of Intent to Defendant. **(Exhibit 2).**

13. Following presentation of the Letter of Intent, the Defendant failed and refused to execute the Listing Agreement or otherwise agree to sell the property, contrary to the terms contained in the Listing Agreement

14. Pursuant to the terms of the Listing Agreement, upon failing and refusing to sell the property upon terms consistent with the Letter of Intent, Defendant became indebted to Plaintiff for a broker's commission of 8% of the purchase price of $1,275,000.00, or $102,000.00, in accordance with the agreement.

15. Notwithstanding the Listing Agreement with Plaintiff, Defendant, though often requested, failed and refused and still fails and refuses, to pay Plaintiff the agreed commission for its services.

-3-



WHEREFORE, Plaintiff requests that the court enter judgment in its favor and against Defendant in the amount of $102,000.00, plus costs incurred in this action and a reasonable attorney fee.

COUNT 11-ENFORCEMENT OF COMMERCIAL REAL ESTATE BROKER'S LIEN

16. Plaintiff, incorporates by reference, all prior allegations contained in paragraphs 1-15, as though fully restated herein.

17. Pursuant to the Commercial Real Estate Broker's Lien Act, MCL 570.581, et seq, on January 15, 2021, Plaintiff filed/recorded a Claim of Lien on the subject property regarding the unpaid commission in the amount of $102,000.00. **(Exhibit 3).**

18. Plaintiff has complied with all provisions of law relating to the filing/recording and perfecting of a commercial real estate broker's lien and by this action, seeks to enforce its lien. **(Exhibit 4).**

WHEREFORE, Plaintiff requests the following relief:

1. That a judgment enter in favor of Plaintiff and against Defendant, that Defendant's property located at 690 Welsh Blvd., Vassar, MI 48768 be ordered sold and the proceeds applied to discharge Plaintiff's lien;

2. That Plaintiff be awarded costs of suit; and

3. That the court grant such other and further relief as the nature of this may require.

Dated: January 4, 2022

Philip A. Jaffe P25997
Attorney for Plaintiff
P.O. Box 250902
W. Bloomfield, MI. 48325
(248) 224-1463
Pjaff50@aol.com





# EXHIBIT 1



DocuSign Envelope ID: F89EBDEF-6B08-4C07-BB0B-92EC89C87787



GREYSTONE BEL REAL ESTATE ADVISORS
7035 Orchard Lake Road, Suite 150
West Bloomfield, MI 48322
Phone: 248.394.0000
Fax: 734.471.0200
www.greystonebel.com

In consideration of the services to be rendered by Greystone Bel Real Estate Advisors ("Agent"), the undersigned ("Seller"), hereby employs Agent ("Listing Agreement") for the period of time beginning July 20th, 2020 and terminating at midnight on January 20th, 2021 (the "Termination Date"), subject to extension as provided in Paragraph 6 below, to obtain a purchaser ("Buyer") for the following real property, together with all improvements thereon, located in the City of **Vassar**, County of **Tuscola**, State of **Michigan**, more particularly described as follows (the "Property"):

### Manor Ridge Apartments - 32 units
### 690 Welsh Blvd, Vassar, MI 48768

1. **AUTHORITY TO OFFER.** Seller hereby grants to Agent the sole, exclusive and irrevocable right and authority to offer the Property for sale during the Term defined herein for, and agrees to accept, an offer containing the following sales price (the "Purchase Price") upon the terms and conditions set forth in this Listing Agreement:

   **PURCHASE PRICE: $1,275,000 Terms:** cash or new mortgage.

2. **INSPECTION OF PREMISES:** It is agreed that Agent and/or its representatives shall have the right to enter upon the Property and all portions thereof (including exterior and interior) with prospective Buyers at all reasonable times.

3. **COMMISSION TO BE PAID:** If Agent, Seller, or anyone else obtains a Buyer for the Property during the Term of this Listing Agreement at the Purchase Price and on the terms stated in this Listing Agreement, or at any other price or terms acceptable to Seller, then Seller agrees to pay to Agent a commission (the "Commission") equal to 8% of the Purchase Price if the property sells on or before the first 60 days of the executed listing agreement, the real estate commission will be reduced to 7% of the purchase price if the property sells in between the 61st day and 120th day of the executed listing agreement, if the property sells after 120 days of the executed listing agreement the real estate commission will be reduced to 6% of the sales price for the remainder of this lisitng agreement. Commission shall be due and payable whether the property be sold or whether the property be withdrawn from sale, or made unmarketable by Seller. Following the expiration of the Term in the event that (a) said Buyer, either directly or indirectly, is a person or entity with whom Agent negotiated in earnest for such sale or who received complete marketing information and (b) Agent has furnished Seller with a written list stating the names of any persons described in item (a) above by certified mail, facsimile, email transmission, or in person no later than ten business days after the expiration of the Term. Seller expressly acknowledges its obligation to pay Agent's Commission upon any such closing regardless whether any cash is available through escrow or otherwise in connection with said closing. During the Term, Seller agrees to refer to Agent all inquiries Seller may receive concerning the Property.

4. **PURCHASE DEPOSIT:** In the event a prospective Buyer's deposit is forfeited and retained by Seller fifty percent of the retained deposit shall be paid to Agent and fifty percent to Seller; provided, however, that Agent's share under this Paragraph 7 shall not exceed the amount of the Commission that would have been due to Agent pursuant to Paragraph 5 of this Listing Agreement

DocuSign Envelope ID: F89EBDEF-8B08-4C07-BB0B-92EC89C67787

if the sale had closed. Payment to Agent under this paragraph 7 is independent of any Commission due to Agent pursuant to Paragraph 5 of this Listing Agreement.

5. **TITLE:** Seller represents and warrants to Agent that fee simple indefeasible title to the property is fully vested in Seller, that Seller is duly authorized and empowered (either in Seller's individual capacity or on behalf of others) to execute this Listing Agreement, and that execution hereof will not result in any breach of, or constitute a default under, any contract or other agreement to which Seller is a party.

6. **PERSONAL PROPERTY:** Fixtures, furniture, furnishings and other personal property belonging to Seller located on the Property are included in the total purchase price and will be conveyed to Buyer free and clear of all liens and encumbrances by Bill of Sale at the close of escrow. Seller agrees to provide Buyer with a full and complete inventory of all personal property within five (5) business days after mutual acceptance of a written purchase agreement for the Property.

7. **DUE DILIGENCE:** Agent agrees to use due diligence in attempting to sell the Property.

8. **MARKETING:** In its efforts to best represent Seller, Agent reserves the right to cooperate or not cooperate with other licensed real estate agents. Agent reserves this right in an effort to minimize unnecessary disclosures and unauthorized showings of the Property. If Agent does elect to cooperate with other agents, it will work only with those agents that Agent believes are qualified to best represent the interests of Seller. Seller acknowledges that Agent may make marketing material created for Seller's property available for access from Agent's internet website (www.greystonebel.com).

9. **OTHER BROKERS/AGENTS:** Seller agrees that in the event there is any broker/agent involved in the disposition of the Property other than Agent, then said other broker/agent shall not be Seller's agent nor the sub-agent of Agent but shall be the agent, if at all, of the Buyer.

10. **ADDENDA:** Any addendum attached hereto and either signed or initialed by the parties shall be deemed a part hereof. This Listing Agreement, including addenda if any, expresses the entire agreement of the parties. There are no other understandings, oral or written, which in any manner alter or enlarge its terms. This Listing Agreement supersedes any and all agreements between the parties hereto regarding the Property which are prior in time to this Listing Agreement.

11. **ASSIGNMENT:** This Listing Agreement may not be assigned by Agent without the express written consent of Seller.

12. **ARBITRATION:** If a controversy arises with respect to the subject matter of this Listing Agreement or any provision hereof, Seller and Agent agree that such controversy shall be settled by final, binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.

DocuSign Envelope ID: F89EBDEF-6B08-4C07-BB0B-92EC89C67787

WE, THE UNDERSIGNED, HAVE READ THIS DOCUMENT, UNDERSTAND THE SAME AND AGREE TO THE ABOVE TERMS AND CONDITIONS THEREOF, AND ACKNOWLEDGE RECEIPT THEREOF. THIS DOCUMENT CONSTITUTES A LEGAL CONTRACT. BEFORE EXECUTION HEREIN, *IT IS RECOMMENDED THAT SELLER HAVE THIS DOCUMENT REVIEWED BY AN ATTORNEY OF SELLER'S SELECTION.*

SELLER: ~ucduMd~ Investment Holdings Llc

By: *Dennis C Maynard*
Dennis Maynard

Address:690     Welsh     Blvd,     Vassar,     MI     48768

Date: 7/20/2020

Telephone: 304-617-1509
Email: den_is2c@yahoo.com


AGENT: Greystone Bel Real Estate Advisors

By: *Cary Belovicz*
Cary Scott Belovicz

Its: Managing Partner
252

Address: 7035 Orchard Lake Road Suite 150
West Bloomfield, MI 48322
Telephone:          248.394.0000          Ext.

Cell:                                    734.564.3833

Date: 7/20/2020

Email: cary@greystonebel.com


AGENT: Greystone Bel Real Estate Advisors

By: *Austin Hull*
AE40C256A1FA470
Austin Hull

Its: Associate Director
254

Address: 7035 Orchard Lake Road Suite 150
West Bloomfield, MI 48322
Telephone:          248.394.0000          Ext.

Cell:                                    734.812.4508

Date: 7/20/2020

Email: austin@greystonebel.com

pg 69

# EXHIBIT 2

## LETTER OF INTENT

8/18/2020


Greystone Bel Real Estate Advisors
7035 Orchard Lake Road Suite 150
West Bloomfield, MI 48322

      **RE:** Manor Ridge- 690 Welsh Blvd Vassar, MI 48768- 32 Units

Dear Cary:

This letter outlines some of the terms and provisions under which we (the "Buyer") would be willing to consider the purchase of the Apartments from the existing owner (the "Seller"). The terms are as follows:

1.    Purchase Price. The purchase **price shall be $1,275,000**

2.    Earnest Money. Within 5 days after the execution and delivery of a written purchase agreement (the "Contract"), the Buyer will deposit **$12,500,** which shall be held by the escrow agent named in the Contract in accordance with the terms thereof. Earnest Money deposit shall be non-refundable after removal of due diligence and financing period.

3.    Due Diligence. Buyer shall have 30 days from the date of the executed purchase agreement to conduct its due diligence. Seller will provide buyer will all property inspection reports in their possession pertaining to subject property.

4.    Financing. Buyer shall have 45 days from the expiration of the due diligence period to obtain adequate financing.

5.    Closing. Closing will take place 15 days after expiration of the financing period.

6.    Expenses and Prorations. Seller shall bear the following: its legal counsel's fees, transfer taxes and title commitment issuance costs and premiums. Buyer shall bear the following: its legal counsel's fees, and its due diligence expenses. Property taxes will be prorated for their respective period. Water bills, assessments, and other similar customary items shall be paid by seller at closing.

7.    Contract. Upon execution of this letter by the buyer, the buyer's attorney will prepare the initial draft of the Contract unless otherwise agreed upon.

Sincerely,

BUYER: LG Capital, LLC

By: Steve Lyman
Its: Managing Member
Date: 08/18/20

SELLER: Dennis Maynard

By:_____

Date:_____

# EXHIBIT 3

pg 72



Recorded 1/15/2021  3:08:24 PM
Tuscola County   John Bishop
(Register of Deeds)
Receipt: 41264   Fee:$30.00

L- 01467  P- 01367 - 01373 (7)

RECEIVED IN TUSCOLA COUNTY
JANUARY 15, 2021 10:17:31 AM

## CLAIM OF COMMERCIAL REAL ESTATE BROKER'S LIEN

GREYSTONE BEL REAL ESTATE ADVISORS, *Broker-Claimant*

The Broker-Claimant named above, whose real estate license number is

___6505405934___, and whose business address is 7035 Orchard Lake Road,

Ste. 150, West Bloomfield, MI. 48322, Oakland County, MI., claims a commercial

real estate broker's lien under section 4 of the commercial real estate broker's lien act

and states:

1. The real property ("property") against which the lien is claimed is located at 690
Welsh Blvd., Vassar, MI. 48768, Tuscola County, MI., and is legally described on
**Exhibit A** attached to this claim. The record owner ("owner") of the property is J & M
Investment Holdings, LLC.

2. On July 20, 2020, the broker-claimant entered into a written agreement with the owner
obligating the owner to pay a commission to the broker-claimant. A legible copy of the
agreement is attached as **Exhibit B**.

3. The broker-claimant, by its agents, provided services for the owner and is in compliance
with the broker-claimant's obligations under the written agreement referred to in paragraph 2.

-1-

4. The amount of the commission or fee to which the broker-claimant is entitled is $102,000.00.

5. The broker-claimant now claims a lien on the property and all improvements to the property and against all persons interested in the property in the amount of $102,000.00.

6. The information contained in this Claim of Lien is true and accurate to the best knowledge of the signer.

Dated: January /4, 2021

Greystone Bel Real Estate Advisors

By: Cary Belovicz, Managing Partner

Signed and sworn to before me in Oakland County, MI
on _Ianuary 14_, 2021

Notary Public

Oakland County, MI
My commission expires: May 8, 2024

MICHELE K BRIKHO
Notary Public – State of Michigan
County of Oakland
My Commission Expires May 8, 2024
Acting in the County of _Oakland_

Prepared by: Philip A. Jaffe, Attorney
PO Box 250902
W. Bloomfield, MI. 48325
(248) 224-1463

Return to: Greystone Bel Real Estate
7035 Orchard Lake Rd. Ste 150
W Bloomfield, MI. 48322

-2-

**EXHIBIT A**
*(Legal Description)*

*T11n R8e Com At Ne Cor Of Lot 2 Blk 1 (Sd Pt Also Nw Cor Of Merritt's Add) Th S 00 Deg 39'
21" Cor Of Welsh Est, Th N 90 Deg W 191.94 Ft, Th N 00 Deg 33' 30" Est, Th N 90 Deg W 128
Ft, Th N 00 Deg 40' 41" 529.86 Ft To N Ln Of Blk 1, Th N 88 Deg 54' 24" 32 0 Ft To Pob. (Part
Of Lots 2 & 3 Blk 1) T North's Add To City Of Vassar*

# EXHIBIT 4

| Approved, SCAO | Original – Court<br>1st copy – Defendant | 2nd copy – Plaintiff<br>3rd copy – Return |
|---|---|---|

| **STATE OF MICHIGAN** | | **CASE NO.** |
|---|---|---|
| **54th** | JUDICIAL DISTRICT<br>JUDICIAL CIRCUIT<br>COUNTY PROBATE | **SUMMONS** | 31854 - CK |

**Court address**
440 N State Street, Caro, MI 48723          (989) 673-3330          **Court telephone no.**

| Plaintiff's name(s), address(es), and telephone no(s).<br>GREYSTONE BEL REAL ESTATE ADVISORS | v | Defendant's name(s), address(es), and telephone no(s).<br>J & M INVESTMENT HOLDINGS, LLC<br>c/o Resident Agent:Dan Maynard<br>690 Welsh Blvd #7<br>Vassar, MI 48768 |
|---|---|---|
| Plaintiff's attorney, bar no., address, and telephone no.<br>PHILIP JAFFE P25997<br>PO BOX 250902<br>W BLOOMFIELD, MI 48325<br>(248) 224-1463<br>PJAFF50@AOL.COM | | |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

## Civil Case

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____ .

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk.          **SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date | Expiration date* | Court clerk | |
|---|---|---|---|
| | 4/1/22 | Jodi A Cakil | |

*on or before its expiration date. This document must be sealed by the seal of the court.

2022031854CK

MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105
01/10/2022
Tuscola County Clerk
Jodi Fetting

